ORAL ARGUMENT NOT YET SCHEDULED

No. 13-7165

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

DANIEL BRINK, et al.,

*Plaintiffs-Appellants,*

v.

CONTINENTAL INSURANCE COMPANY, et al.,

*Defendants-Appellees.*
_____

On Appeal From The United States District Court For The District Of Columbia
No. 11-CV-01733 Before The Honorable Emmet G. Sullivan
_____

**CORRECTED JOINT BRIEF FOR DEFENDANTS-APPELLEES**
_____

Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7038

Geoffrey M. Sigler
   *Counsel of Record*
Thomas M. Johnson
Alexander K. Cox
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8500

*Counsel for Appellee American International Group, Inc.*
[*additional counsel listed on inside*]

David I. Ackerman
Kenneth Pfaehler
DENTONS US LLP
1301 K Street, N.W., Suite 600, East Tower
Washington, DC 20005
(202) 408-6400

Avi Schick
Sandra D. Hauser
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6800

*Counsel for Appellee Continental Insurance Company*

Leslie Paul Machado
LECLAIR RYAN, A PROFESSIONAL CORPORATION
2318 Mill Road, Suite 1100
Alexandria, VA 22310
(703) 647-5928

*Counsel for Appellee Academi, LLC*

Robert B. Wallace
David M. Ross
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
700 11th Street, N.W., Suite 400
Washington, DC 20001
(202) 626-7660

*Counsel for Appellee DynCorp International, LLC*

Holly P. Smith
Molly S. Carella
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

Christopher E. Appel
SHOOK, HARDY & BACON, L.L.P.
1155 F Street, N.W., Suite 200
Washington, DC 20004
(202) 783-8400

*Counsel for Appellee ACE American Insurance Company*

Roderick L. Thomas
Mark B. Sweet
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-7000

*Counsel for Appellees Global Linguist Solutions, LLC; AECOM Government Services, Inc.; and Combat Support Associates (CSA)*

Lawrence S. Ebner
Raymond B. Biagini
Tami L. Azorsky
Alejandro L. Sarria
MCKENNA LONG & ALDRIDGE, LLP
1900 K Street, N.W., Suite 100
Washington, DC 20006
(202) 496-7687

*Counsel for Appellees Kellogg Brown & Root Services, Inc., and Halliburton Company*

i

John B. Rudolph
WINSTEAD PC
2000 Pennsylvania Ave., N.W., Suite 3350
Washington, DC 20006
(202) 572-8000

Brannon C. Dillard
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis
Houston, TX 77002
(713) 650-8400

*Counsel for Appellee Khudairi Group Incorporated d/b/a Khudairi Trading and Contracting Company*

Tara M. Lee
Joseph C. Davis
DLA PIPER LLP (US)
One Fountain Square
11911 Freedom Drive, Suite 300
Reston, VA 20190
(703) 773-4000

Sara Z. Moghadam
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, DC 20004
(202) 799-4000

*Counsel for Appellees Northrop Grumman Corporation and Exelis Systems Corporation*

Matthew W. Carlson
THOMPSON O'DONNELL, LLP
4100 N. Fairfax Drive, Suite 740
Arlington, VA 22203
(202) 289-1133

*Counsel for Appellees Ronco Consulting and Wackenhut Services International*

F. Greg Bowman
David Randall J. Riskin
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
(202) 434-5000

*Counsel for Appellees US Investigations Services, LLC; USIS International, Inc.; and Engility Corporation*

Charles C. Platt
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Dina B. Mishra
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
(202) 663-6000

*Counsel for Appellee Zurich American Insurance Company*

ii

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28, Appellees respectfully submit this Certificate as to Parties, Rulings, and Related Cases:

## A.    Parties and Amici.

Plaintiffs before the district court and Appellants in this Court are a putative class of persons who were allegedly affected in different ways by denials of benefits under the Defense Base Act ("DBA"). The named Plaintiffs before the district court and the named Appellants in this Court are the following individuals: Daniel Brink; Ronald Bell; Merlin Clark; Marcie Clark; C.J. Mercadante; Johann Steenberg; Steven Thompsen; Jack Jones; Fred Busse; Mark Griffin; Mark McLean; Mbusi Cele; Cody McAnally; Robert Biddle; Allen Porch, III; Patrick J. Brewer; Christine Holguin-Luge; Desire Tablai; Wallace Byars; Nicky Pool; Surita Swart; Marlene Gericke; Catharina Louw; Mohsen Alsaleh; Antonio Ambrose; Conrad Theunissen; Harbee Kreesha; Margaretha Bezuidenhout; Gisela Maria Fourie; Christo Engelbrecht; Jafar Joseph Bayatafshar; and Malik Hadi.

Defendants before the district court and Appellees in this Court are the following entities:

- **American International Group, Inc. ("AIG").**  AIG is a publicly traded holding corporation.  No parent entity or publicly held entity owns 10% or more of the stock of AIG.

- **Continental Insurance Company.** The Continental Insurance Company offers insurance, including coverage under the Defense Base Act. The Continental Insurance Company is a wholly-owned subsidiary of Continental Casualty Company, which is a wholly-owned subsidiary of The Continental Corporation, which is a wholly-owned subsidiary of CNA Financial Corporation, which is publicly traded and is majority owned by Loews Corporation.

- **ACE American Insurance Company.** ACE American Insurance Company offers insurance, including coverage under the Defense Base Act. ACE American Insurance Company is a Pennsylvania corporation and is an indirect, wholly owned subsidiary of ACE Limited (NYSE: ACE), a public entity. No other publicly held entity holds more than a 10% interest in ACE American Insurance Company.

- **Zurich American Insurance Company.** Zurich American Insurance Company offers insurance, including coverage under the Defense Base Act. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware tion. Zurich Holding Company of America, Inc. is 99.8711% owned directly by Zurich Insurance Company Ltd, a Swiss corporation, with the remaining shares indirectly owned by Zurich Insurance Company

Ltd.  Zurich Insurance Company Ltd is directly owned by Zurich Insur-
ance Group Ltd, a Swiss corporation.  Zurich Insurance Group Ltd is the
only publicly traded parent company, with a listing on the Swiss stock
exchange, and a further trading of American Depositary Receipts.

- **DynCorp International, LLC.**  The general nature and purpose of Dyn-
Corp International, LLC, as relevant to this litigation, is providing service
to the United States Government, and in particular to the United States
Department of Defense and Department of State.  DynCorp International,
Inc. is the sole member and manager of Defendant DynCorp Internation-
al, LLC.  No publicly held entity owns more than 10 percent of DynCorp
International, LLC's stock.  DynCorp International, Inc. owns all of the
stock of Defendant DynCorp International, LLC.

- **Halliburton Company.**  The general nature and purpose of Halliburton,
as relevant to this litigation, is that Halliburton is the former parent com-
pany of Defendant-Appellee Kellogg Brown & Root Services, Inc.
("KBRSI").  KBRSI, in turn, provides services to the United States Gov-
ernment and, in particular, to the United States Department of Defense.
Halliburton is a publicly traded corporation and has no parent company.
No publicly held corporation owns 10% or more of Halliburton's stock.

v

- **Ronco Consulting Corporation.**  The general nature and purpose of Ronco Consulting Corporation's business as related to this appeal is the removal of unexploded ordinances and the training related thereto.  G4S, PLC is the only publicly held entity that owns 10% or more of Ronco Consulting Corporation's stock.

- **Wackenhut Services International.**  Appellee asserts that there is no entity by this name.

- **Global Linguist Solutions, LLC.**  The general nature and purpose of Global Linguist Solutions, LLC, as relevant to this litigation, is providing translation and interpretation services to the United States Government. Global Linguist Solutions, LLC is a joint venture between DynCorp International, LLC and AECOM National Securities Programs, Inc.  Dyn-Corp International, Inc. is the sole member and manager of DynCorp International, LLC.  No publicly held entity owns more than 10 percent of DynCorp International, LLC's stock.  AECOM National Securities Programs, Inc. is a wholly-owned subsidiary of AECOM Technology Corporation, a publicly traded company.

- **Combat Support Associates ("CSA").**  The general nature and purpose of CSA, as relevant to this litigation, is providing services to the United States Government.  CSA is a joint venture between AECOM Govern-

ment Services, Inc., Research Analysis and Maintenance, Inc., and The Aleut Management Services LLC. AECOM Government Services, Inc. is a wholly-owned subsidiary of AECOM Technology Corporation, which is publicly traded. Research Analysis and Maintenance, Inc. is not publicly traded. The Aleut Management Services LLC is a subsidiary of Aleut Corporation, shares of which are held by Alaskan Natives and subject to transfer restrictions.

- **AECOM Government Services, Inc.** The general nature and purpose of AECOM Government Services, Inc., as relevant to this litigation, is that AECOM Government Services, Inc. is the majority owner of Defendant Combat Support Associates. Combat Support Associates provides services to the United States Government. AECOM Government Services, Inc. is 100% owned by AECOM Technology Corporation, which is publicly traded.

- **Khudairi Group Incorporated d/b/a Khudairi Trading and Contracting Company ("KGI").** KGI was set up solely for oil and gas projects and contracts with Iraq's Ministry of Oil and supplies equipment, materials, and turnkey services for those projects. KGI is a Texas corporation and wholly-owned subsidiary of Azku, Inc. No publicly-held corporation owns 10% or more of KGI's stock.

vii

- **Exelis Systems Corporation.**  The general nature and purpose of Exelis Systems Corporation as relevant to this litigation, is providing service to the United States Government, and in particular to the United States Department of Defense.  Exelis Systems Corporation is a wholly-owned subsidiary of publicly-held Exelis Inc.  No other publicly-held company owns 10% or more of Exelis Systems Corporation's stock.

- **US Investigations Services, LLC, and USIS International, Inc.**  The general nature and purpose of US Investigations Services, LLC and USIS International, Inc., as relevant to this litigation, is providing services to the United States Government and, in particular, to the United States Department of Defense.  US Investigations Services, LLC, and USIS International, Inc. are wholly owned direct or indirect subsidies of Altegrity, Inc.  Altegrity, Inc. is a wholly owned subsidiary of Altegrity Acquisition Corp., which in turn is wholly owned by Altegrity Holding Corp.  None of the entities identified above these entities have issued stock or debt securities to the public.  Altegrity, Inc. does have outstanding debt securities that were issued to investors in private placement transactions exempt from the registration requirements of the U.S. securities laws.  No publicly held entity owns more than 10% of the stock of any of the entities identified above.

- **Engility Corporation.** The general nature and purpose of Engility Corporation, as relevant to this litigation, is providing services to the United States Government and, in particular, to the United States Department of Defense. Engility Corporation is wholly owned by Engility Holdings Inc. No publicly traded company has a 10% or greater ownership interest in Engility Holdings Inc.

- **Kellogg Brown & Root Services, Inc. ("KBRSI").** The general nature and purpose of KBRSI, as relevant to this litigation, is providing services to the United States Government and, in particular, to the United States Department of Defense. KBRSI is wholly-owned by KBR Holdings, LLC, which in turn, is wholly-owned by KBR, Inc. KBR, Inc. is a publicly traded corporation and has no parent company. No publicly held corporation owns 10% or more of KBR, Inc.'s stock.

- **ACADEMI LLC.** The general nature and purpose of ACADEMI LLC and its subsidiaries, as relevant to this litigation, is providing services to the United States Government. ACADEMI LLC is owned by ACADEMI Holdings, LLC. No publicly traded company has a 10% or greater ownership interest in ACADEMI LLC or ACADEMI Holdings, LLC.

ix

- **Northrop Grumman Corporation.**  The general nature and purpose of Northrop Grumman Corporation is providing services to the United States Government, and in particular to the United States Department of Defense.  Northrop Grumman Corporation has no parent company.  According to publicly available documents, as of December 31, 2013, State Street Corp. and BlackRock, Inc., two publicly-traded investment management corporations, reported that they owned shares comprising 11% and 10%, respectively, of the outstanding common stock of Northrop Grumman Corporation.

Tacticor International, Lear Siegler, Inc., and Erinys Ltd. were Defendants in the district court and are Appellees in this Court but have not entered an appearance in either court.  Lear Siegler, Inc. and Erinys Ltd. were not served below, and undersigned counsel are not aware whether Tacticor International has been served.  Parsons Group was a Defendant before the district court but is not an Appellee before this Court pursuant to a stipulated dismissal entered in the district court on August 27, 2012.  *See* District Court Docket Entry ("D.E.") 108.

There were no intervenors or *amici curiae* before the district court, and undersigned counsel is aware of no *amici curiae* before this Court.

**B.     Rulings Under Review.**

Appellants seek review of the September 26, 2013 Minute Order by Judge
Emmet G. Sullivan that (1) denied Plaintiffs' Motion for Reconsideration (D.E.
145) of the December 21, 2012 Memorandum Opinion and Order by Judge Emmet
G. Sullivan (D.E. 143, 144) that dismissed all claims in the Second Amended
Complaint and (2) denied Plaintiffs' Motion for Leave To Amend the Second
Amended Complaint (D.E. 146).

There is no official citation for the minute order.  The Court's December 21,
2012 Memorandum Opinion is published at *Brink v. Xe Holdings, LLC*, 910 F.
Supp. 2d 242 (D.D.C. 2012) ("Op.").

**C.     Related Cases.**

Undersigned counsel are not aware of any related cases.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........... iii

TABLE OF AUTHORITIES ................................................................. xiv

GLOSSARY OF ABBREVIATIONS AND ACRONYMS .............................. xxiii

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................4

STATUTES AND REGULATIONS.........................................................4

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................4

STATEMENT OF THE CASE..................................................................6

STATEMENT OF FACTS ........................................................................7

I.     The Defense Base Act .................................................................7

II.    Plaintiffs' Second Amended Complaint......................................13

III.   The District Court's Dismissal Of Plaintiffs' Claims ..................16

SUMMARY OF ARGUMENT ................................................................18

STANDARD OF REVIEW .....................................................................21

ARGUMENT .........................................................................................21

I.     The District Court Correctly Held That The Defense Base Act Bars
       Plaintiffs' Claims ........................................................................21

       A.     Plaintiffs' State Claims Are Preempted ..............................23

       B.     Plaintiffs' Federal Claims Are Barred.................................40

II.    Plaintiffs' RICO Claims Fail For Additional Reasons..................44

      A.     Plaintiffs Fail To Allege RICO's Essential Elements .........................44

      B.     Plaintiffs Lack Standing Under RICO ................................48

III.   Plaintiffs Have Not Alleged Facts Sufficient To Support Their State-Law Claims .......................................................................50

IV.   The District Court Properly Dismissed Plaintiffs' ADA Claims For Failure To State A Claim For Relief Under Rule 12(b)(6) ..........................52

V.    The District Court Did Not Abuse Its Discretion In Denying Plaintiffs' Motion For Leave To Amend ........................................................54

CONCLUSION ....................................................................57

RULE ECF-3(B) ATTESTATION

CERTIFICATE OF COMPLIANCE

STATUTORY ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Al-Bihani v. Obama*,
   619 F.3d 1 (D.C. Cir. 2010)...............................................................24

*Am. Wildlands v. Kempthorne*,
   530 F.3d 991 (D.C. Cir. 2008) ...........................................................43

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ...........................................................................47

*Arizona v. United States*,
   132 S. Ct. 2492 (2012) .......................................................................29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................45

*\*Atkinson v. Gates*,
   838 F.2d 808 (5th Cir. 1988)............................................ 9, 23, 25, 27, 32, 35, 37

*Ayres v. Gen. Motors Corp.*,
   234 F.3d 514 (11th Cir. 2000).............................................................42

*\*Barnard v. Zapata Haynie Corp.*,
   975 F.2d 919 (1st Cir. 1992) .................................................. 23, 25, 32

*Bast v. Cohen, Dunn & Sinclair, PC*,
   59 F.3d 492 (4th Cir. 1995) ................................................................49

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................52

*Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*,
   903 F.2d 480 (7th Cir. 1990)...............................................................42

*Bowen v. Aetna Life & Cas. Co.*,
   512 So. 2d 248 (Fla. Dist. Ct. App. 1987)...........................................32

*Boyle v. United States*,
   556 U.S. 938 (2009) ...........................................................................45

*Breen v. Dep't of Transp.*,
282 F.3d 839 (D.C. Cir. 2002) ...............................................................53

*Bridges v. BCBS Ass'n*,
935 F. Supp. 37 (D.D.C. 1996) ...............................................................42

*Brink v. Xe Holdings, LLC*,
910 F. Supp. 2d 242 (D.D.C. 2012) .................................................... xi

*Brown v. Cassens Transport Co.*,
675 F.2d 946 (6th Cir. 2012) ...............................................................50

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
274 F. Supp. 2d 86 (D.D.C. 2003) ................................................. 48, 49

*Carter v. Wash. Metro. Area Transit Auth.*,
503 F.3d 143 (D.C. Cir. 2007) ...............................................................21

*Ciralsky v. Cent. Intelligence Agency*,
355 F.3d 661 (D.C. Cir. 2004) ...............................................................55

*Confederate Mem'l Ass'n, Inc. v. Hines*,
995 F.2d 295 (D.C. Cir. 1993) ...............................................................57

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ...............................................................28

*Daley v. Aetna Cas. & Sur. Co.*,
573 N.E.2d 1128 (Ohio 1988) ...............................................................26

*Danielsen v. Burnside-Ott Aviation Training Center, Inc.*,
941 F.2d 1220 (D.C. Cir. 1991) ........................................... 3, 17, 19, 41

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
438 U.S. 59 (1978) ...............................................................38

*Duncan v. Wash. Metro. Area Transit Auth.*,
240 F.3d 1110 (D.C. Cir. 2011) ................................................. 20, 53

*Elgin v. Dep't of Treasury*,
132 S. Ct. 2126 (2012) ...............................................................42

*Elkins v. District of Columbia*,
   690 F.3d 554 (D.C. Cir. 2012) ...............................................................21

*English v. Gen. Elec. Co.*,
   496 U.S. 72 (1990) ...............................................................................26

*Ex parte Bender Shipbuilding & Repair Co.*,
   879 So. 2d 577 (Ala. 2003) ..................................................................26

*Findlay v. CitiMortgage, Inc.*,
   813 F. Supp. 2d 108 (D.D.C. 2011) .......................................................52

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) ...............................................................55

*Fisher v. Halliburton*,
   667 F.3d 602 (5th Cir. 2012) ......................................................... 33, 34

*Flemmings v. Howard Univ.*,
   198 F.3d 857 (D.C. Cir. 1999) ...............................................................53

*Flynn v. Dick Corp.*,
   481 F.3d 824 (D.C. Cir. 2007) ...............................................................21

*Foman v. Davis*,
   371 U.S. 178 (1962) ...............................................................................56

*Hall v. C&P Tel. Co.*,
   793 F.2d 1354 (D.C. Cir. 1986) .............................................................24

*\*Hall v. C&P Tel. Co.*,
   809 F.2d 924 (D.C. Cir. 1987) ................................ 3, 8, 17, 19, 23, 24, 31, 33, 38

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
   187 F.3d 941 (8th Cir. 1999) .................................................................49

*Henthorn v. Dep't of Navy*,
   29 F.3d 682 (D.C. Cir. 1994) .................................................................54

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992) ...............................................................................47

*Houston v. Bechtel Assocs. Prof'l Corp.*,
  522 F. Supp. 1094 (D.D.C. 1981) ............................................................ 33, 34

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ...................................................................46

*In re Series 7 Broker Qualifications Exam Scoring Litig.*,
  548 F.3d 110 (D.C. Cir. 2008) ...............................................................29

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
  731 F.3d 556 (6th Cir. 2013)), *cert. denied*, __ S. Ct. __ (May 5, 2014) ..... 49, 50

*Johnson v. Am. Mut. Liab. Ins. Co.*,
  559 F.2d 382 (5th Cir. 1977) .................................................................27

*Jung v. Ass'n of Am. Med. Colls.*,
  184 F. App'x 9 (D.C. Cir. 2006) .............................................................55

*Kuhlman v. Crawford & Co.*,
  No. 01-6036-CIV, 2002 WL 34368089 (S.D. Fla. Jan. 23, 2002) ......................33

*Livingston v. Shore Slurry Seal, Inc.*,
  98 F. Supp. 2d 594 (D.N.J. 2000) ...........................................................42

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) .............................................................................28

*Magluta v. Samples*,
  256 F.3d 1284 (11th Cir. 2001) ..............................................................51

*Martin v. Travelers Insurance Co.*,
  497 F.2d 328 (1st Cir. 1974) .................................................................31

*McCulloch v. PNC Bank Inc.*,
  298 F.3d 1217 (11th Cir. 2002) ..............................................................42

*Morrison-Knudsen Constr. Co. v. Office of Dir., Office of Workers' Comp.
  Programs*,
  461 U.S. 624 (1983) ..............................................................................8

*\*Nadheer v. Ins. Co. of Pa.*,
  506 F. App'x 297 (5th Cir. 2013).......................................................... 23, 25, 38

*Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*,
   216 F.3d 1180 (D.C. Cir. 2000) .............................................................24

*Nauert v. Ace Prop. & Cas. Ins. Co.*,
   No. 04-cv-2547, 2005 WL 2085544 (D. Colo. Aug. 27, 2005) ................... 26, 35

*Ne. Marine Terminal Co. v. Caputo*,
   432 U.S. 249 (1977) ..............................................................................9

*Norman v. Niagara Mohawk Power Corp.*,
   873 F.2d 634 (2d Cir. 1989) .................................................................42

*Okusami v. Psychiatric Inst. of Wash., Inc.*,
   959 F.2d 1062 (D.C. Cir. 1992) ...........................................................55

*Rollins v. Wackenhut Servs., Inc.*,
   703 F.3d 122 (D.C. Cir. 2012) .............................................................57

*Ross v. Dyncorp*,
   362 F. Supp. 2d 344 (D.D.C. 2005) ................................................. 33, 34

*Rustin v. District of Columbia*,
   491 A.2d 496 (D.C. 1985) ...................................................................34

*Sample v. Johnson*,
   771 F.2d 1335 (9th Cir. 1985) ........................................... 23, 26, 32, 38

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ...................................................................... 44, 48

*Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*,
   249 F.3d 1068 (D.C. Cir. 2001) ...........................................................48

*Singleton v. Wulff*,
   428 U.S. 106 (1976) ...................................................................... 16, 57

*Slightom v. Nat'l Maint. & Repair, Inc.*,
   747 F. Supp. 2d 1032 (S.D. Ill. 2010) ...................................................43

*Smith v. Lanier*,
   726 F.3d 166 (D.C. Cir. 2013) ........................................................ 18, 51

*Swanks v. Wash. Metro. Area Transit Auth.*,
    179 F.3d 929 (D.C. Cir. 1999) ...........................................................53

*Talik v. Fed. Marine Terminals, Inc.*,
    885 N.E.2d 204 (Ohio 2008) ................................................ 28, 33, 34

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*,
    389 F.3d 1251 (D.C. Cir. 2004) .................................................. 46, 47

*United States v. Philip Morris USA Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009) ......................................................45

*Vilanova v. United States*,
    851 F.2d 1 (1st Cir. 1988) ..............................................................42

*Wash. Metro. Area Transit Auth. v. Johnson*,
    467 U.S. 925 (1984) .......................................................................27

*Willoughby v. Potomac Elec. Power Co.*,
    100 F.3d 999 (D.C. Cir. 1996) ........................................................56

## Statutes

5 U.S.C. § 8901–8914 .....................................................................41

18 U.S.C. § 1961 .............................................................................15

18 U.S.C. § 1962(d) .........................................................................44

18 U.S.C. § 1964 .......................................................... 4, 5, 19, 48, 49

28 U.S.C. § 1291 ...............................................................................4

28 U.S.C. § 1331 ...............................................................................4

28 U.S.C. § 1332 ...............................................................................4

33 U.S.C. § 902(2) ............................................................................7

*33 U.S.C. § 905(a) ................................................................ 3, 8, 26

33 U.S.C. § 912(b) ...........................................................................10

33 U.S.C. § 914 ................................................................. 10, 11, 37

33 U.S.C. § 919 ......................................................................... 10, 12

33 U.S.C. § 921 ..................................................................... 11, 12, 37

33 U.S.C. § 928 ...............................................................................11

33 U.S.C. § 930 ......................................................................... 10, 11

33 U.S.C. § 931(c) ...................................................................... 11, 38

33 U.S.C. § 935 ...............................................................................10

33 U.S.C. § 938 ......................................................................... 12, 37

33 U.S.C. § 948a ................................................... 12, 15, 38, 42, 43

41 U.S.C. § 351–358 .......................................................................41

42 U.S.C. § 12102 ..................................................................... 53, 56

42 U.S.C. § 12111(8) .....................................................................53

*42 U.S.C. § 1651 ............................................... 3, 7, 8, 9, 26, 27

## Regulations

20 C.F.R. § 702.134 ........................................................................11

20 C.F.R. § 702.201 ........................................................................10

20 C.F.R. § 702.204 ................................................................. 11, 12, 38

20 C.F.R. § 702.212(a) ...................................................................10

20 C.F.R. § 702.217(b) ...................................................................11

20 C.F.R. § 702.221–.225 ..............................................................12

20 C.F.R. § 702.231 ........................................................................10

20 C.F.R. § 702.233 ........................................................................11

20 C.F.R. § 702.234 ........................................................................10

20 C.F.R. § 702.251 ........................................................................10

20 C.F.R. § 702.252 .................................................................11

20 C.F.R. § 702.261 ........................................................ 10, 11, 12

20 C.F.R. § 702.262 ............................................................ 11, 12

20 C.F.R. § 702.271 .................................................................43

20 C.F.R. § 702.271–.274 .........................................................12

20 C.F.R. § 702.301 .................................................................11

20 C.F.R. § 702.311–.319 .........................................................11

20 C.F.R. § 702.331–.351 .........................................................11

20 C.F.R. § 702.350 .................................................................11

20 C.F.R. § 702.371–.373 .........................................................11

20 C.F.R. § 702.391–.394 .........................................................11

20 C.F.R. § 703.101 .................................................................46

20 C.F.R. § 703.115 .................................................................10

## Rules

Fed. R. App. P. 3(c)(1)(B) ..........................................................4

Fed. R. Civ. P. 9(b) ........................................................ 5, 19, 46

Fed. R. Civ. P. 12(b)(1).............................................................6

Fed. R. Civ. P. 12(b)(6)........................................... 6, 52, 54, 55

Fed. R. Civ. P. 15(a)................................................................55

Fed. R. Civ. P. 15(a)(2)...........................................................55

Fed. R. Civ. P. 59(e)................................................................55

**Other Authorities**

2A Arthur Larson, *The Law of Workmen's Compensation* (1987).........................30

6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*
  (M.B., rev. ed. 2010) ..................................................................................34

68 Cong. Rec. 5289 (daily ed. Mar. 2, 1927) ..........................................................13

H.R. Rep. No. 77-1070 (1941).................................................................................7

H.R. Rep. No. 98-570 (1984), 1984 U.S.C.C.A.N. 2734 .......................................28

\* Authorities upon which we chiefly rely are marked with an asterisk.

## GLOSSARY OF ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| Americans with Disabilities Act | ADA |
| Defense Base Act | DBA |
| Department of Labor | DOL |
| Longshore and Harbor Workers' Compensation Act | Longshore Act |
| Racketeer Influenced and Corrupt Organizations Act | RICO |
| Second Amended Complaint | SAC |

## INTRODUCTION

The Defense Base Act ("DBA") is a comprehensive and exclusive workers' compensation program, enacted by Congress and administered by the Department of Labor ("DOL"), under which U.S. government contractors are required to purchase insurance that provides specified benefits to their employees for injuries sustained while working overseas in war zones.  In this case, Plaintiffs are individuals who allege that they "have or had rights to benefits under the DBA" (Second Amended Complaint ("SAC") ¶ 14) and that Defendants (government contractors and insurers) improperly denied or delayed such benefits, which resulted in various individualized physical and emotional injuries.

Plaintiffs cannot seek redress of these claims in court.  Several courts of appeals, including this one, have affirmed the dismissal of claims similar to those asserted here, as preempted and barred by the DBA or by the Longshore and Harbor Workers' Compensation Act, which the DBA incorporates in relevant part.  The DBA provides the comprehensive and exclusive statutory framework for addressing Plaintiffs' claims.  This framework includes remedies and penalties administered by the DOL, whose orders are ultimately reviewable by federal courts of appeals.

In a straightforward application of these authorities, the district court dismissed this action.  All of Plaintiffs' claims in this case are rooted in the provision

1

of DBA benefits to which they allegedly are entitled as a result of an underlying DBA-covered injury.  On appeal, Plaintiffs effectively concede that *all* of their claims stem from DBA-covered benefits:  Plaintiffs allege that Defendants "failed or refused to provide medical benefits owed to Plaintiffs under the DBA"; "cut off" DBA benefits; "delayed provision" of DBA benefits; "made false statements or representations regarding payment of DBA benefits"; and failed to comply with orders to pay DBA benefits, among other things.  *See* Plaintiffs' Brief ("Br.") 1.

Plaintiffs argue that the district court erred in dismissing these claims because, in their view, the statutory and regulatory remedies provided by Congress are inadequate.  Instead of following the DOL's administrative remedial process—as mandated by the DBA—Plaintiffs seek to supplement the purportedly "minuscule" remedies provided by the DBA's exclusive statutory scheme by demanding damages from Defendants *outside* of the DBA's framework, based on claims ranging from conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO") to state-law tort theories.  *See* SAC ¶ 58; *id.* ¶¶ 72, 245, 311, 562 (seeking damages "exclusive of any amounts compensable under the DBA.").  Whether the statutory remedies under the DBA are adequate is for the political branches to decide.  The district court correctly dismissed Plaintiffs' claims because the system enacted by Congress is comprehensive and exclusive.  The Court

2

should decline Plaintiffs' invitation to upset the legislated compromise enacted by Congress.

This is the inescapable conclusion of *Hall v. C&P Telephone Co.*, 809 F.2d 924 (D.C. Cir. 1987) (per curiam) (state-law claims), and *Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220 (D.C. Cir. 1991) (RICO claims), decisions by this Court that Plaintiffs failed to address in opposing Defendants' motions to dismiss. And it is a conclusion supported by express statutory provisions stating that the DBA's administrative scheme is "exclusive," *see* 42 U.S.C. § 1651(c); 33 U.S.C. § 905(a), as well as its comprehensive remedial process backing up these provisions.

Even if this Court were to look beyond the exclusivity and preemption bases for dismissal, Plaintiffs' claims suffer from other fundamental pleading deficiencies. Plaintiffs' RICO claims fail because they do not and cannot allege any facts to support the existence of a RICO enterprise; they fail to allege any predicate acts of mail or wire fraud with particularity under Federal Rule 9(b); and they seek relief for personal injuries rather than injuries to "business or property." Plaintiffs' state-law claims, too, suffer from numerous pleading deficiencies. And Plaintiffs' claims under the Americans with Disabilities Act ("ADA") also fail because Plaintiffs did not adequately allege that they were qualified persons with disabilities or that they were denied reasonable accommodation.

3

For all of these reasons, the Court should affirm the district court's judgment dismissing the Second Amended Complaint with prejudice.

## JURISDICTIONAL STATEMENT

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1332 and 18 U.S.C. § 1964.  The district court dismissed Plaintiffs' Second Amended Complaint with prejudice on December 21, 2012, and denied Plaintiffs' motions for reconsideration and leave to amend on September 26, 2013.  Plaintiffs filed a notice of appeal of the district court's September 26, 2013 order on October 22, 2013.  This Court has jurisdiction over Plaintiffs' appeal of the September 26, 2013 order under 28 U.S.C. § 1291.  Plaintiffs did not notice the December 21, 2012 order for appeal.  *See* Fed. R. App. P. 3(c)(1)(B).

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are set forth in the Addendum to this brief.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**I.**     The DBA requires U.S. government contractors to purchase insurance to pay certain benefits to employees who are injured while working overseas and provides a comprehensive and exclusive remedial and penalty system.  Plaintiffs' claims center on an alleged conspiracy between U.S. government contractors and their insurers to deny or delay payment of benefits covered by the DBA through this administrative process.  Are Plaintiffs' claims precluded by the DBA's comprehensive and exclusive statutory scheme?

4

**II.**     RICO requires Plaintiffs to allege, among other things, injuries to "business or property," the existence of a criminal "enterprise" among defendants, and specific predicate acts of fraud, pleaded with particularity.  *See* 18 U.S.C. § 1964(a), (c); Fed. R. Civ. P. 9(b).

*A.*     Plaintiffs make only conclusory allegations that Defendants participated in a common enterprise, and do not identify any specific acts that could qualify as predicate acts of fraud.  Have Plaintiffs failed to adequately plead the existence of a criminal enterprise and specific predicate acts of fraud?

*B.*     Plaintiffs allege only that they have suffered personal injuries, and economic losses resulting therefrom, rather than injuries to business or property.  Do Plaintiffs lack standing to sue under RICO?

**III.**     Plaintiffs do not identify which facts supposedly support each of their state-law causes of action, which claims apply to each Plaintiff, or what elements must be proved in each state where Plaintiffs reside.  Have Plaintiffs adequately alleged a claim for relief under state law?

**IV.**     Three Plaintiffs claim that they were denied reasonable accommodations or were terminated on account of a disability, in violation of the ADA.  These Plaintiffs do not allege facts that could establish that they have a qualified disability or that they were ever denied a specific accommodation.

*A.*     Have these Plaintiffs stated claims for relief under the ADA?

5

**B.**     Did the district court abuse its discretion in denying Plaintiffs leave to amend their ADA claims?

## STATEMENT OF THE CASE

In 2011, thirty-two individual Plaintiffs brought this putative class action in the U.S. District Court for the District of Columbia against numerous federal contractors and their insurance companies.  D.E. 1.  Plaintiffs alleged violations of the Longshore Act, RICO, and the ADA, and also asserted various state-law tort claims.  *Id*.  On November 22, 2011, Plaintiffs filed an Amended Complaint (D.E. 2), and on April 23, 2012, Plaintiffs filed a Second Amended Complaint (D.E. 50).

Defendants filed motions to dismiss the Second Amended Complaint.  *See* D.E. 80, 82–83, 85, 87–91, 93–95, 99–100.  On December 21, 2012, the district court dismissed the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  D.E. 144 ("Op.").  On September 26, 2013, the district court denied Plaintiffs' motions for reconsideration and leave to amend.

On October 22, 2013, Plaintiffs noticed this appeal from "the final judgment (Minute Order) entered in this action on the 26th day of September, 2013 that denied Plaintiffs' Motion for Reconsideration of the earlier order dated December 21, 2012 that dismissed all claims in the Second Amended Complaint as well as denied Plaintiffs' Motion to Amend the Second Amended Complaint."  D.E. 159.  Plaintiffs did not also identify the district court's December 21, 2012 order dismissing

6

the Second Amended Complaint as an order under appeal in that notice. Neverthe-

less, Plaintiffs' appellate brief focuses on the district court's order dismissing their

Second Amended Complaint and does not address the district court's denial of

Plaintiffs' motion for reconsideration.

## STATEMENT OF FACTS

### I.    The Defense Base Act

Plaintiffs' claims concern the DBA, which was enacted in 1941 to provide

workers' compensation coverage to employees of U.S. government contractors

who are injured in connection with national-defense related activities performed

outside the United States. *See* 42 U.S.C. § 1651(a), (a)(4), (b)(1). The Secretary

of War requested this extension of the Longshore Act, an existing federal workers'

compensation program for maritime workers, to eliminate the heavy expense of

providing the government's contractors with full accident and tort liability insur-

ance. *See* H.R. Rep. No. 77-1070, at 4, 7 (1941).

The DBA builds upon and incorporates by reference provisions of the Long-

shore Act, which provide benefits for "accidental injury or death arising out of and

in the course of employment . . . includ[ing] an injury caused by the willful act of a

third person directed against an employee because of his employment." 33 U.S.C.

§ 902(2); *see also* 42 U.S.C. § 1651(a) (incorporating all non-conflicting provi-

sions of the Longshore Act into the DBA). These statutes represent a legislative

compromise balancing the competing interests of employers and their employees. *See Morrison-Knudsen Constr. Co. v. Office of Dir., Office of Workers' Comp. Programs*, 461 U.S. 624, 636 (1983).  Employers and their insurers are strictly liable for compensating workers' losses according to the terms of the statute, and employees are barred from pursuing tort actions arising out of covered injuries.  *Id.*; *see also Hall v. C&P Tel.*, 809 F.2d 924, 926 (D.C. Cir. 1987) (per curiam) ("In return for the [Act's] guarantee of a practical and expeditious statutory remedy, employees relinquish their common-law tort remedies against employers for work-related injuries.").

Congress made clear in both the Longshore Act and the DBA that their statutory remedies were exclusive.  The Longshore Act provides that:

> The liability of an employer[,] prescribed [in the Longshore Act] *shall be exclusive and in place of all other liability* of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a) (emphasis added).  The Longshore Act does not specifically address relief under state workers' compensation statutes—instead limiting its scope to claims "at law or in admiralty."  *Id.*  In addition to incorporating this provision, the DBA expanded upon it by including a second, additional exclusivity provision.  *See* 42 U.S.C. § 1651(a), (c).  The DBA's additional exclusivity provi-

sion reaches beyond recovery "at law" to also bar recovery under state workers'

compensation statutes.  The DBA exclusivity provision provides:

> Liability as exclusive:  The liability of an employer, contractor (or any subcontractor . . .) under this chapter *shall be exclusive and in place of all other liability* of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction . . . .

*Id*. § 1651(c) (emphasis added).

In 1972 and 1984 Congress amended the statutory scheme to strengthen its

exclusivity and the comprehensiveness of its remedial and penalty provisions.  *See*

*Ne. Marine Terminal Co. v. Caputo*, 432 U.S. 249, 261–262 (1977) (1972 amend-

ments strengthened "intended exclusivity of the compensation remedy"); *Atkinson*

*v. Gates*, 838 F.2d 808, 811 (5th Cir. 1988) (1984 amendments increased penalties

for false statements made to reduce, deny, or terminate compensation in response

to complaints that employers wrongly refused to pay compensation).

Many substantive provisions of the DBA are set forth in the Longshore Act,

including a comprehensive set of remedial, penalty, and enforcement provisions to

ensure that claims are investigated and processed as required by federal law.  The-

se provisions cover the entire claims process—from initial notice through adjudica-

tion and appeal.  They also provide penalties for delays or mishandling of DBA

claims within this process.

9

The DBA process is set out in various statutory and regulatory provisions. The claims process is initiated when an employee provides notice of an injury. *See* 33 U.S.C. § 912(b); 20 C.F.R. § 702.212(a). Within ten days of learning that an employee has been injured, an employer must investigate and report to the DOL district director and its DBA insurance carrier. *See* 33 U.S.C. § 930(a); 20 C.F.R. §§ 702.201, 703.115. Unless the employer is self-insured, the employer's insurance carrier is responsible for processing and payment of an injured employee's DBA claim. *See* 33 U.S.C. § 935; 20 C.F.R. § 703.115.

Employers may make voluntary payment of DBA benefits. 33 U.S.C. § 914; 20 C.F.R. §§ 702.231, 702.251. The district director must be notified when payments commence and if voluntary payment is suspended for any reason. 20 C.F.R. § 702.234. If the right to compensation is controverted by the employer, 33 U.S.C. § 914(d); 20 C.F.R. § 702.251, no benefits are due until a compensation award is made by the district director, *see* 33 U.S.C. § 914(a); 20 C.F.R. § 702.251. An employee also may file an independent claim for benefits with the DOL directly. *See* 33 U.S.C. § 919.

At any time, an employee may formally contest an "action by the employer or carrier reducing, suspending, or terminating benefits, including medical care" by notifying the district director. *See* 20 C.F.R. § 702.261. Upon receiving an employee's challenge to the reduction, suspension, or termination of benefits or an

10

employer's notice of controversion, the district director investigates the claim and commences adjudication proceedings. *See* 20 C.F.R. §§ 702.252, 702.261, 702.262, 702.301. There is a mandatory three-tier process for adjudicating claims: (1) informal mediation before the district director; (2) formal hearings and fact-finding proceedings before an administrative law judge; and (3) appellate review by the DOL "Benefits Review Board," which is subject to further review by a court of competent jurisdiction. *See* 33 U.S.C. § 921; 20 C.F.R. §§ 702.311–.319; 702.331–.351; 702.371–.373; 702.391–.394. Attorney's fees are available to an employee who successfully prosecutes a controverted claim. *See* 33 U.S.C. § 928; 20 C.F.R. § 702.134.

In addition to providing specific benefits for specific types of injuries, and an agency-administered process for workers to obtain these benefits, the statute also provides additional protections for workers, including penalties and damages for wrongfully delayed or denied benefits. These penalties include:

- Penalties paid directly to the employee for failure to timely pay pre-award or post-award compensation. *See* 33 U.S.C. § 914(e), (f); 20 C.F.R. §§ 702.233, 702.350.

- Penalties for failing to timely report employee injuries. *See* 33 U.S.C. § 930(e); 20 C.F.R. § 702.204.

- Criminal penalties and imprisonment for false statements or mis-representations made to reduce, deny, or terminate benefits. *See* 33 U.S.C. § 931(c); 20 C.F.R. § 702.217(b).

11

- Penalties for making false statements or misrepresentations when reporting employee injuries. *See* 20 C.F.R. § 702.204.

- Criminal penalties, imprisonment, and other remedies for failure to pay compensation. *See* 33 U.S.C. § 938.

- Penalties allowing the DOL to assess 10% additional compensation for late benefits payments. *Id*. § 919.

- Reinstatement with back pay, and punitive damages, for claimants who can show unlawful retaliation or discrimination. *Id.* § 948a.

- A civil cause of action by the DOL to remedy a failure to pay a penalty assessed pursuant to § 948(a). *See id*. § 948a; 20 C.F.R. § 702.274.

- Judicial enforcement of a final compensation order. *See* 33 U.S.C. § 921(d).

These penalties for wrongfully denied benefits are available to workers through the same framework described above (including a DOL-administered dispute resolution forum, with appeals and other steps). *See* 20 C.F.R. § 702.221–.225 (regulating claims for compensation); *id.* § 702.261–.262 (regulating claimant's contest of actions taken by employer or carrier with respect to payment of claims); *id*. § 702.271–.274 (regulating discrimination claims). And like other aspects of the DBA's administrative scheme, final orders by the DOL are ultimately reviewable by a federal court of appeals.

In originally enacting this statutory framework through the Longshore Act in 1927, Congress specifically sought to address the concern that such litigation had resulted in "crowded dockets," inconsistent and unpredictable results, and recover-

ies by workers that were "unfairly divided with attorneys." 68 Cong. Rec. 5289, 5412–5413 (daily ed. Mar. 2, 1927) (statements of Rep. Underhill & Rep. O'Connor). By "transfer[ring] from society and from the courts the expense of taking care of those injured in industry and transfer[ring] [that expense] to the industry itself," Congress aimed to cut "congestion in the courts," to "g[i]ve the worker a square deal," and to "eliminate the ambulance chase." *Id*. at 5412 (statement of Rep. Underhill).

## II.    Plaintiffs' Second Amended Complaint

Plaintiffs' claims challenge various aspects of the foregoing administrative process and how their own claims were handled within that process. Plaintiffs allege that Defendants—over a dozen different contractors and insurance companies—"conspired" with each other to delay, deny, or otherwise defeat Plaintiffs' "benefits and compensation under the Defense Base Act," SAC ¶ 2, and that "the claims of Plaintiffs are typical of the complaints of the class concerning misconduct and malfeasance with regard to the DBA," SAC ¶ 563.

The first 71 paragraphs of the SAC are presented as common allegations of all Plaintiffs. These paragraphs set forth general grievances regarding the DBA compensation system, the DOL's supervision of the system, and the purported failure of government regulators and Congress to address alleged misconduct by administrative law judges, doctors, third party administrators, employers, insurers,

and attorneys. Plaintiffs allege that the DBA financially motivates insurers to reduce, deny, or terminate benefits and that government officials supposedly turn a blind eye to, and even participate in, these alleged abuses and violations of law. SAC ¶¶ 10, 42–52. They further allege that "it is sometimes very difficult for Claimants to get relief, have hearings, or their attorneys to obtain fees when they are disputed" under the DOL's administrative scheme. *Id*. ¶ 58. According to Plaintiffs, "[c]laimants are often lost in a system that is sometimes indifferent to their plight," and "the Department of Labor will sometimes enable the employers and carriers to get away with egregious violations of law." *Id*. The DBA, Plaintiffs further contend, authorizes only "minuscule penalties" against employers and insurers, and such penalties are "often not even lev[ied] or enforced at the administrative level." *Id*.

Beyond these allegations about failures of the system, Plaintiffs make common allegations that Defendants interfered with their receipt of DBA benefits by wrongfully disputing their claims or refusing to provide benefits owed under the DBA (SAC ¶¶ 12, 63–71); making false statements or misrepresentations during the claims process to reduce, deny, or terminate benefits (*id*. ¶¶ 6, 59); cutting off or delaying the provision of medical benefits or compensation owed under the DBA (*id*. ¶¶ 59, 61, 62); and threatening workers who made DBA claims (*id*. ¶¶ 54, 55).

14

These purportedly common experiences also track the individual allegations

of the named Plaintiffs, who allege that specific Defendants

- failed to provide or cut off the payment of DBA benefits, *see*, *e.g.*, *id*. ¶¶ 81, 83, 103, 106, 123, 133, 153, 158, 175, 178, 186, 200, 205, 210, 214, 225, 227, 240, 260, 273, 276, 282, 311, 315–316, 343, 351, 366, 375, 377, 382, 384, 394, 401, 422–424, 450, 458, 495, 533, 542, 546–547;

- delayed in providing payment for DBA claims, which exacerbated the harm from the injuries for which they sought coverage, *see*, *e.g.*, *id*. ¶¶ 87, 117–126, 145, 262, 276, 284–292, 320, 361, 376–380, 408, 423, 451–455, 540, 545;

- made false statements or representations to the DOL and Plaintiffs, which resulted in reduced or denied DBA benefits, *see*, *e.g.*, *id*. ¶¶ 103, 109–110, 122, 135, 146, 150, 154, 163, 179, 188–192, 202, 214, 244, 273–274, 277, 283, 351, 357, 378, 461–462, 474;

- failed to comply with DOL orders to pay DBA benefits, *see*, *e.g.*, *id*. ¶¶ 82, 242, 261, 316, 357, 384; and

- terminated Plaintiffs after they were disabled by their DBA-covered injuries, *see*, *e.g.*, *id*. ¶¶ 62, 84, 111, 203, 215, 253–254, 260, 420.

Based on these allegations, Plaintiffs bring eight distinct claims, all predicat-

ed upon their right to DBA benefits:

- In **Count I** (Retaliatory Discharge and Discrimination, 33 U.S.C. § 948a), Plaintiffs allege they were "discriminated against . . . due to their accessing or attempting to access the DBA system or medical and disability benefits." SAC ¶¶ 564–570.

- In **Count II** (RICO, 18 U.S.C. § 1961 *et seq*.), Plaintiffs allege that Defendants conspired to "delay payments to providers or to claim-ants" through misrepresentations made in connection with pro-cessing and adjudicating their DBA claims. *Id*. ¶¶ 571–586.

15

- In **Count III** (Bad Faith and Tortious Breach of Covenant of Good Faith), Plaintiffs allege that Defendants engaged in "bad faith denial of claims" and breach "of good faith and fair dealing" by "unreasonably denying claims . . . , failing to properly and adequately investigate claims, delaying payments for medical bills and disability." *Id.* ¶¶ 587–592.

- In **Count IV** (Unconscionable, Fraudulent and Deceptive Trade Practices), Plaintiffs allege that Defendants "misrepresented and deceived Plaintiffs" to "prevent them from obtaining benefits." *Id.* ¶¶ 593–601.

- In **Count V** (Civil Conspiracy), Plaintiffs allege that Defendants conspired to delay and deprive them of "DBA benefits in violation of the DBA." *Id.* ¶¶ 602–607.

- In **Count VI** (Americans with Disabilities Act), Plaintiffs allege that certain contractor Defendants failed to accommodate their DBA injuries. *Id.* ¶¶ 608–618.

- In **Count VII** (Outrage), Plaintiffs allege that Defendants intentionally inflicted emotional distress by "malicious[ly]" delaying and denying DBA benefits. *Id.* ¶¶ 619–625.

- In **Count VIII** (Wrongful Death), Plaintiffs allege that certain Defendants' actions caused the death of some DBA claimants through their "neglect[ful] and intentional misconduct" in delaying and denying DBA benefits. *Id.* ¶¶ 626–631.[1]

## III.  The District Court's Dismissal Of Plaintiffs' Claims

On December 21, 2012, the district court dismissed the SAC. Op. The district court observed that the claims in the case are predicated on Plaintiffs' alleged entitlement to, and Defendants' alleged intentional interference with, Plaintiffs'

---

[1] Throughout their opening brief, Plaintiffs also refer to purported state-law claims for "wrongful discharge" and "breach of contract." *See, e.g.*, Br. 31, 36–38. These claims are not contained in Plaintiffs' SAC and cannot be added on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

DBA benefits and compensation. The district court reviewed the statutory text, structure, and history; closely examined Plaintiffs' allegations; and carefully considered Plaintiffs' arguments.

The district court concluded that the DBA preempts all of Plaintiffs' state-law claims. The court relied in part on this Court's decision in *Hall*, 809 F.2d at 926, which held that tort claims for intentional refusal to make timely payments "with an intent to injure" "fall within the [Longshore] Act's exclusivity provisions." *Id.* The district court also noted that Plaintiffs failed to address this circuit precedent and that numerous other courts of appeals had followed *Hall*. The court noted that the single decision from another jurisdiction upon which Plaintiffs relied did not create an exception to *Hall*, and at any rate, Plaintiffs' authority likely did not survive subsequent developments, including the 1984 Amendments to the statutory scheme.

The district court also found that the comprehensive statutory scheme bars Plaintiffs' federal claims. The district court relied on *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220 (D.C. Cir. 1991), as well as numerous decisions of other courts of appeals. The court noted that Plaintiffs also did not address *Danielsen*.

In addition, the district court held that Plaintiffs failed to state a claim under RICO because they had failed to allege: (1) the existence of a RICO enterprise,

17

(2) predicate acts with sufficient particularity, and (3) facts demonstrating any agreement among Defendants to commit the predicate acts. Op. at 27–29 n.12.

Finally, the district court held that the Plaintiffs failed to state claims under the ADA.

The district court denied Plaintiffs' motion for reconsideration because it simply reargued the same points they made in the voluminous briefing on the motions to dismiss. Minute Order of Sept. 26, 2013. The district court also denied Plaintiffs' request for leave to amend their ADA claims against two Defendants. *Id.*[2]

## SUMMARY OF ARGUMENT

**I.**    The DBA contains a comprehensive and exclusive remedial scheme for employees to bring claims for unpaid benefits and to pursue penalties for allegedly late or wrongfully denied payments. Plaintiffs in this case assert claims based on a variety of legal theories, but each of them seeks damages allegedly caused by a conspiracy among Defendant contractors and insurers to "defeat the[ir] right . . . to receive their lawful benefits and compensation" under the DBA. SAC ¶ 2.

_____

[2]   Defendants filed numerous motions to dismiss asserting other reasons that the claims fail, including lack of standing, lack of personal jurisdiction or subject matter jurisdiction, failure to sue the proper party, and other individual arguments by specific Defendants. *See* Op. 12–13. The district court did not reach Defendants' other arguments for dismissal. These arguments, which are preserved and supported by the record, present independent bases for dismissal. *Smith v. Lanier*, 726 F.3d 166, 169 (D.C. Cir. 2013).

Plaintiffs, in other words, seek to circumvent the DBA's comprehensive and exclusive remedial and penalty scheme.

The district court correctly concluded that Plaintiffs' DBA-based claims fail as a matter of law. The DBA bars a plaintiff from filing claims related to covered injuries outside of the administrative remedial process, regardless of the plaintiff's legal theory. *See*, *e.g.*, *Hall v. C&P Tel. Co.*, 809 F.2d 924, 926 (D.C. Cir. 1987) (per curiam); *see also Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220 (D.C. Cir. 1991). This Court should follow its decision in *Hall* and other decisions like it and conclude that the DBA bars Plaintiffs' claims.

**II.** Plaintiffs' RICO claims suffer from multiple other pleading deficiencies. Plaintiffs have failed to adequately allege that the several contractor and insurer Defendants participated in a common enterprise to defraud Plaintiffs of their DBA-covered benefits. Plaintiffs have likewise failed to allege predicate acts of fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiffs also seek relief for personal injuries—*i.e.*, emotional and physical harms—rather than injuries to "business or property," and therefore lack standing under RICO. *See* 18 U.S.C. § 1964(c). For all these reasons, the district court correctly dismissed Plaintiffs' RICO claims.

**III.** Plaintiffs' state-law tort claims also should be dismissed even if they are not preempted, because they are supported only by inadequate and conclusory

19

allegations, not factual allegations corresponding to the essential elements of these claims. Plaintiffs do not identify who is alleging each of the torts asserted, on what basis, or under what state's law. Plaintiffs cannot lump together thirty-two individual claimants, and allege in conclusory fashion that Defendants are liable to each of them under a multitude of potential causes of action.

IV.    The district court also correctly concluded that three Plaintiffs failed to state a claim for relief against two contractor Defendants under the ADA. To establish a *prima facie* case of unlawful failure to reasonably accommodate under the ADA, a plaintiff must show, among other things, that his or her injuries substantially limited one or more major life activities, and that he or she requested and was denied a reasonable accommodation. *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2011). Here, while Plaintiffs generally describe their alleged injuries, *see*, *e.g.*, SAC ¶¶ 192–195, 209–210, 212–213, they do not allege facts demonstrating that these injuries substantially limited a major life activity. Furthermore, Plaintiffs completely fail to allege that they requested an accommodation for their purported disabilities from their employers. Thus, the district court properly dismissed these claims.

The district court also acted well within its discretion in denying Plaintiffs' request for leave to amend their ADA claims. That request was made too late, and

in any event, the proposed amendment was futile, as it consisted primarily of boilerplate recitations of the types of major life activities described in the ADA.

## STANDARD OF REVIEW

The Court reviews *de novo* a district court's grant of a motion to dismiss. *Carter v. Wash. Metro. Area Transit Auth.*, 503 F.3d 143, 145 (D.C. Cir. 2007). The Court reviews both a denial of a motion for reconsideration and a denial of leave to amend for an abuse of discretion. *See Flynn v. Dick Corp.*, 481 F.3d 824, 829 (D.C. Cir. 2007); *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012).

## ARGUMENT

### I.    The District Court Correctly Held That The Defense Base Act Bars Plaintiffs' Claims

This case arises out of Defendants' administration of workers' compensation claims submitted for work-related injuries and deaths under the DBA. *See*, *e.g.*, SAC ¶¶ 587–592 (alleging "denial," "refusal," and "delay" of Plaintiffs' DBA claims); *see also supra* pp. 13–17. Plaintiffs summarize their claims as challenging various aspects of how their DBA claims were handled and adjudicated within the DBA's statutory remedial process:

> Defendants, after accepting claims as covered and legally valid, failed or refused to provide medical benefits owed to Plaintiffs under the DBA; cut off medical benefits owed under the DBA; delayed provision of medical benefits or compensation owed under the DBA, made false statements and misrepresentations regarding payment of DBA benefits while reducing, denying or ignoring Plaintiffs' medical

21

> needs; failed to comply with DOL orders to pay DBA benefits;  [and] threatened or discouraged workers from making DBA claims[.]

Br. 1; *see also id*. at 8 (identifying the "overall objective" of Defendants' purported conspiracy as "depriving Plaintiffs of benefits").  Plaintiffs further argue that the remedies and penalties enacted by Congress are insufficient and that this Court should therefore permit Plaintiffs to pursue damages claims.  By Plaintiffs' own description, their claims in this lawsuit flow directly and entirely from their claims for DBA benefits.

Plaintiffs' claims fail for the fundamental reason that Congress has provided comprehensive and exclusive rules for administering DBA claims—including remedies and penalties for failing to properly administer claims—in lieu of authorizing tort claims.  In seeking to circumvent this legislative barrier, Plaintiffs contend their administration-of-benefits claims are outside or external to the DBA system.  But these labels do not transform Plaintiffs' claims for wrongful administration of benefits that must be handled within the DBA system into claims that can be litigated in court.  This Court, three other circuits, and several other courts have consistently rejected attempts, like this one, to circumvent the exclusive remedies that Congress incorporated into the DBA.  The Court should reach the same conclusion and affirm the district court's dismissal of this action.

### A.     Plaintiffs' State Claims Are Preempted

**1.**     Every circuit to address the issue—including the D.C. Circuit—has held that covered workers cannot bring claims, like those raised by Plaintiffs here, based on their dissatisfaction with their statutory remedies or the process by which they obtain these statutory remedies.  *See*, *e.g.*, *Hall v. C&P Tel. Co.*, 809 F.2d 924, 926 (D.C. Cir. 1987); *accord Nadheer v. Ins. Co. of Pa.*, 506 F. App'x 297 (5th Cir. 2013) (per curiam); *Barnard v. Zapata Haynie Corp.*, 975 F.2d 919, 920–921 (1st Cir. 1992); *Atkinson v. Gates*, 838 F.2d 808, 811 (5th Cir. 1988); *Sample v. Johnson*, 771 F.2d 1335, 1347 (9th Cir. 1985).  The district court correctly relied on this consistent authority to dismiss the Second Amended Complaint.

In *Hall*, this Court ruled that the Longshore Act's exclusivity provision barred state tort law claims indistinguishable in relevant respects from those asserted by Plaintiffs here.  In that case, the plaintiff alleged that his employer had acted in bad faith and had intentionally inflicted emotional distress by delaying and denying workers' compensation claims under the D.C. Workers' Compensation Act, which at the time incorporated the Longshore Act's statutory framework (as does the DBA today).  *Hall*, 809 F.2d at 925.  These actions allegedly resulted in the employer's failure "to reimburse [the plaintiff] on a timely basis for the bulk of his injury-related medical expenses due under the ALJ's award," which caused a

23

"threat of credit action," "financial strain," and suffering to the plaintiff's marriage. *Hall v. C&P Tel. Co.*, 793 F.2d 1354, 1356 (D.C. Cir. 1986).

Like Plaintiffs here, the *Hall* plaintiff was "[u]nsatisfied with the [Longshore Act's] statutory *quid pro quo*" and contended that "employees should be permitted to bring tort claims when [an] employer refuses to make timely compensation payments with an intent to injure." 809 F.2d at 926. Allowing the *Hall* plaintiff to seek tort damages outside of this statutory framework, the Court ruled, would have "und[one] the 'legislated compromise between the interests of employees and the concerns of employers'" because the Longshore Act "provides a *comprehensive* scheme for compensating employees." *Id.* The Longshore Act "[n]ot only . . . provide[s] general immunity to employers from employee tort suits, but it also provides a specific remedy for an employer's late payment of claims." *Id.* (internal citation omitted). Therefore, "the sort of tort claims advanced [by the *Hall* plaintiffs]"—*i.e.*, those alleging intentional harm from delayed or denied benefits—"fall within the Act's exclusivity provisions." *Id.*[3]

Similarly, in *Atkinson*, the Fifth Circuit affirmed dismissal of a claim for intentional infliction of emotional distress based on allegations that the plaintiffs'

---

[3] Although this Court's analysis of the Longshore Act's exclusive statutory framework in *Hall* was an alternative holding, it remains precedential. *See Al-Bihani v. Obama*, 619 F.3d 1, 2–3 (D.C. Cir. 2010) (Brown, J., concurring in denial of rehearing en banc) ("It is a longstanding principle that alternative holdings each possess precedential effect."); *Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1189 (D.C. Cir. 2000).

employers and insurers "arbitrarily, callously, intentionally, [and] capriciously  . . . [and] without any reasonably legitimate or reasonably arguable reason" failed to make timely benefit payments under the Longshore Act. *Atkinson*, 838 F.2d at 809 (internal quotation marks omitted).   "[T]he apparent intent of the [Longshore Act]," the court reasoned, "is that [its] penalty provisions provide the exclusive remedy for late payment or nonpayment of benefits." *Id*. at 812 (internal quotation marks omitted).  Allowing a "separate tort action" in court would "open[] the possibility of inconsistent results between the resolution of the compensation claim [in the DOL-administered forum] and . . . the separate tort claim." *Id*. at 814–815. And the Fifth Circuit recently reaffirmed *Atkinson* in *Nadheer*—relying on *Atkinson* in reaching the same conclusion as to claims for intentional misrepresentation and misadministration of benefits under the DBA.  *Nadheer*, 506 F. App'x at 298–301 (barring "common law claims for breach of contract, breach of fiduciary duty, fraud, and conspiracy to defraud" brought against employer and insurer).

Likewise, in *Barnard* the First Circuit affirmed the dismissal of tort claims for "intentional, willful, and malicious refusal to pay" Longshore Act benefits, on the ground that statutory penalties provided the "exclusive remedy for defendants' failure to make timely payments, irrespective of defendants' reasons for nonpayment."  975 F.2d at 920; *see also id.* at 920–921 (recognizing Congress's intent "that the remedy for delay, even vexatious delay, shall remain within the system in

25

the form of some kind of [statutory] penalty" (emphasis added and internal citation and quotation marks omitted)).  The Ninth Circuit reached the same conclusion in *Sample*, where it found tort claims for intentional and wrongful controversion of Longshore Act claims preempted by the statute's exclusive remedies.  771 F.2d at 1347.[4]

    **2.**    All of these cases recognize that Congress, as evidenced by the DBA's comprehensive and exclusive federal statutory scheme, intended for the DBA to preempt the state-law claims brought by Plaintiffs.  Because Congress has "made its intent known" regarding the remedies available under the DBA, this Court's task is "an easy one."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) ("Pre-emption fundamentally is a question of congressional intent.") (internal citations omitted).  Congress's intent could not be more clear:  Congress expressly stated that the DBA's comprehensive statutory scheme would be exclusive and therefore preempt state-law claims like those asserted here.

    The DBA contains express language, 42 U.S.C. § 1651(c); 33 U.S.C. § 905(a), providing that its remedies are intended to be exclusive and in place of all other liability.  The Longshore Act's exclusivity provision, 33 U.S.C. § 905(a), entitled "Employer liability," which the DBA incorporates by reference, states that

---

[4] *See also Nauert v. Ace Prop. & Cas. Ins. Co.*, No. 04-cv-2547, 2005 WL 2085544, at *3–5 (D. Colo. Aug. 27, 2005); *Ex parte Bender Shipbuilding & Repair Co.*, 879 So. 2d 577, 584–586 (Ala. 2003); *Daley v. Aetna Cas. & Sur. Co.*, 573 N.E.2d 1128, 1130 (Ohio 1988).

"[t]he liability of an employer . . . shall be exclusive and in place of all other liability of such employer to the employee . . . on account of such injury or death." The DBA's exclusivity provision, 42 U.S.C. § 1651(c), entitled "Liability as exclusive," which supplements the Longshore Act's exclusivity provision, states that "[t]he liability of an employer *. . . under this chapter* shall be exclusive and in place of all other liability of such employer . . . under the workmen's compensation law of any State, Territory, or other jurisdiction" (emphasis added). Both exclusivity provisions apply equally to bar claims against government contractors and their insurance companies. *See*, *e.g.*, *Nadheer*, 506 F. App'x at 301; *Atkinson*, 838 F.2d at 811.[5]

These express provisions leave no doubt that Congress intended the DBA's comprehensive statutory framework to bar claims, like those asserted by Plaintiffs here, that are predicated upon, and derivative of, the war-zone injuries that Plaintiffs *necessarily concede* are covered by the DBA workers' compensation program. *See Atkinson*, 838 F.2d at 811.

---

5  The Longshore Act "equat[es] the insurer with the employer, negat[ing] any intent to hold the insurer liable to suit for damages as a third person," *Johnson v. Am. Mut. Liab. Ins. Co.*, 559 F.2d 382, 388 & n.10 (5th Cir. 1977), particularly since insurance costs are ultimately "borne by the employer," *Atkinson*, 838 F.2d at 811. *See generally Wash. Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 933–934 (1984) (holding that "employer" in the Longshore Act has a statutory definition "broader than that word's ordinary meaning"). Indeed, to deny this treatment to insurers would completely undermine the purpose of DBA exclusivity.

Not only did Congress include express exclusivity provisions in the DBA, but also it enacted a comprehensive remedial and penalty scheme, confirming its intent that the DBA be exclusive. It is well settled that state law is preempted when it would stand as an obstacle to the accomplishment of the purpose of a federal statute. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000); *see also Talik v. Fed. Marine Terminals, Inc.*, 885 N.E.2d 204, 210–212 (Ohio 2008) (holding that Longshore Act preempts intentional tort claims under conflict preemption). Plaintiffs' claims would do precisely that—by supplanting the comprehensive and exclusive remedial framework with other, conflicting theories of liability that would undermine the DBA enforcement and penalty scheme and stand as an obstacle to the accomplishment of the statute's purpose. Indeed, Plaintiffs' stated goal is to obtain remedies in excess of those that Congress saw fit to enact—remedies that Congress chose to enhance (rather than supplement by permitting tort suits) when in 1984 it considered the same policy arguments that Plaintiffs make here. *See* H.R. Rep. No. 98-570, at 17 (1984), 1984 U.S.C.C.A.N. 2734, 2750.

Plaintiffs' claims are also preempted because they invite the Court, under the auspices of state tort law, to wade into a legislative field occupied by the DBA's comprehensive and exclusive remedial scheme. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (explaining that field preemption bars state-law

28

claims when "the depth and breadth of a congressional scheme that occupies the legislative field" implies preclusion); *In re Series 7 Broker Qualifications Exam Scoring Litig.*, 548 F.3d 110, 115 (D.C. Cir. 2008) ("The comprehensive structure set up by Congress," which includes "'an integrated system of procedures for en-forcement,'" "is suggestive . . . of an intent to preempt state common law causes of action"); *see also Tex. Emp'rs' Ins. Ass'n v. Jackson*, 820 F.2d 1406, 1412 (5th Cir. 1987) ("it is difficult to imagine a more comprehensive scheme of federal reg-ulation . . . than that contained in the [Longshore Act]"), *rev'd en banc on other grounds*, 862 F.2d 491 (5th Cir. 1988).[6]

Plaintiffs' contention that the district court committed "obvious error" by "relying on a truncated quotation of the [DBA exclusivity] provision omitting" the language regarding state workers' compensation laws, Br. 18, therefore misses the broader point:  it is not just the DBA's exclusivity provision, but also the Long-shore Act's exclusivity provision, which Plaintiffs concede is incorporated into the DBA, Br. 12, 19–20, as well as the comprehensive nature of the remedial scheme adopted by Congress, that support dismissal of Plaintiffs' claims here.  All of these aspects of the DBA's statutory framework point to the same conclusion: Plaintiffs'

---

[6] Plaintiffs suggest that field preemption only applies when the federal statute al-so conflicts with state law (Br. 29–30), but this misunderstands federal preemp-tion principles.  Field preemption applies even where state law "has the same aim as federal law and adopts its substantive standards."  *Arizona v. United States*, 132 S. Ct. 2492, 2502 (2012).

state-law claims are preempted.  That was the conclusion of the district court, and is the inescapable logic of *Hall* and the many other decisions dismissing similar claims.

In short, the DBA specifies how the program is to be administered, how claims are to be adjudicated and paid, and the penalties for failure to comply with the requirements of the Act and its implementing regulations.   This comprehensive—and by its own terms "exclusive"—system bars Plaintiffs' damages claims.

**3.**     Contrary to Plaintiffs' assertions, they cannot plead their way around DBA exclusivity just by asserting that "there is an intentional act."  Br. 27; *see id.* 32–33.  Plaintiffs' claims stem from alleged denials and delays of their DBA benefits, regardless of whether they "invoke[e] the magic words 'fraudulent, deceitful and intentional' or 'intentional infliction of emotional distress' or 'outrageous' conduct in [their] complaint."  2A Arthur Larson, *The Law of Workmen's Compensation* § 68.34(c), at 13-145 (1987).  When the alleged intentional conduct arises in the course of the administration of DBA benefits, as is the case here, the DBA bars recovery outside of the statutory scheme.  Any other rule would allow disappointed claimants simply to plead around the DBA's exclusivity provisions.  It is thus not surprising that all of Plaintiffs' arguments for this purported exception to DBA exclusivity have been explicitly rejected by this Court and others, or are plainly distinguishable or inapposite.

30

Plaintiffs primarily rely on *Martin v. Travelers Insurance Co.*, 497 F.2d 328 (1st Cir. 1974), in arguing for an exception to DBA exclusivity. *See* Br. 26, 43. Yet that case has been widely criticized as an outlier, has been significantly narrowed by subsequent circuit authority in the intervening forty years, and in any event does not support Plaintiffs' arguments. In *Martin*, the First Circuit permitted a narrow exception to exclusivity under the Longshore Act where "the crux of the complaint [was an] insurer's callous stopping of payment without warning when it should have realized that acute harm might follow." 497 F.2d at 331. According to Plaintiffs, *Martin* shows there is an exception for claims of intentional infliction of emotional distress and other intentional torts. *See* Br. 44. Even if *Martin* could be read as broadly as Plaintiffs contend (it cannot), Plaintiffs' reliance on it is misplaced. This Court expressly rejected the *Martin* decision in *Hall*, holding that the Longshore Act's exclusivity provision bars employees from bringing tort claims based on allegations that their workers' compensation claims were intentionally delayed, improperly denied, or otherwise mishandled. *See* 809 F.2d at 926. Plaintiffs suggest that this Court actually recognized the *Martin* exception in *Hall*, *see* Br. 43–44, but this Court, as evidenced by its use of the "but see" signal in citing to *Martin*, explicitly recognized that its decision was contrary to—not consistent with—*Martin*. *See* 809 F.2d at 926.

31

*Martin* also has been discredited by other courts, including its own. The First Circuit in *Barnard*—a case Plaintiffs ignore—found that the refusal to pay timely benefits, regardless of intent, was the type of claim that fell under the exclusive remedies of the Longshore Act, thereby limiting *Martin*'s scope to its unique facts. *Barnard*, 975 F.2d at 921. Other courts have recognized that there is no statutory basis for *Martin*'s purported exception. *See Sample*, 771 F.2d at 1347 (criticizing *Martin* as an "opinion free of citation to authority" and stating that the "bulk of authority" contradicts *Martin*); *Atkinson*, 838 F.2d at 813 n.6 (electing "to follow *Sample* and *Hall*" instead of *Martin* to "the extent that the result or rationale of *Martin* is inconsistent herewith"); *Tex. Emp'rs' Ins. Ass'n*, 820 F. 2d at 1414 (declining to follow *Martin*).

Finally, *Martin* was decided before Congress passed extensive amendments to the Longshore Act, including enhanced penalties for not paying benefits. *See* Op. 18 n.7 (citing *Barnard*, 975 F.2d at 921 n.4). These amendments bolster the case for exclusivity here, given that they indicate that Congress occupied the field with respect to the type of allegations that Plaintiffs make in this case.[7]

---

[7] This Court should likewise refuse to follow the state and lower court cases cited by Plaintiffs that rely on *Martin* in permitting tort claims to proceed despite Longshore Act's exclusivity provision. *See*, *e.g.*, *Bowen v. Aetna Life & Cas. Co.*, 512 So. 2d 248, 249 (Fla. Dist. Ct. App. 1987).

Plaintiffs also rely extensively on a handful of cases involving Longshore Act or DBA exclusivity that Plaintiffs claim support an exception to exclusivity for intentional torts, such as intentional infliction of emotional distress. *See* Br. 20, 31–33, 47 n.35 (citing *Houston v. Bechtel Assocs. Prof'l Corp.*, 522 F. Supp. 1094, 1096 (D.D.C. 1981); *Ross v. Dyncorp*, 362 F. Supp. 2d 344, 364–365 (D.D.C. 2005); *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012); and *Talik*, 885 N.E.2d 204). They are inapposite. Those cases concern whether the injury claimed to give rise to statutory benefits in the first instance is covered by the statute. *See Fisher*, 667 F.3d at 618; *Ross*, 362 F. Supp. 2d at 358–59; *Houston*, 522 F. Supp. at 1095; *Talik*, 885 N.E.2d at 205–206. That is a separate issue from whether, once a plaintiff has suffered a statutorily-covered injury—as Plaintiffs concede they have here—claims for alleged interference with the entitlement to statutory benefits are compensable in tort. On the latter question, *Hall* and the decisions of other courts of appeals within the last 40 years are clear: such claims are only compensable through the DBA or Longshore Act.[8]

---

8  Plaintiffs' reliance on *Houston* is puzzling given this Court's subsequent conclusion in *Hall* that the Longshore Act bars tort claims relating to the intentional interference of Longshore Act benefits. *Hall*, 809 F.2d at 926. So too is their citation to *Kuhlman v. Crawford & Co.*, No. 01-6036-CIV, 2002 WL 34368089, at *2 (S.D. Fla. Jan. 23, 2002), which held that a tort claim based "on an intentional refusal to pay or termination of benefits already owed" is barred by the Longshore Act.

Moreover, even if the foregoing cases were applicable (they are not), the language on which Plaintiffs rely is *dicta*. Although the court in *Talik* stated that it "cannot say that Congress has *expressly preempted* the [Ohio] intentional tort standard," it actually held that the DBA nevertheless preempts intentional torts under the doctrine of conflict preemption. 885 N.E.2d at 210–212. Similarly, in *Fisher* the court expressly *declined* to find an "intentional tort" exception applicable to that case. 667 F.3d at 620. And the remaining cases were resolved on grounds other than exclusivity. *Houston*, 522 F. Supp. at 1096; *Ross*, 362 F. Supp. 2d at 364–365; *see also Rustin v. District of Columbia*, 491 A.2d 496, 501 (D.C. 1985).

Beyond these cases, Plaintiffs heavily rely on cases interpreting *state* workers' compensation statutes, not the Longshore Act or DBA. *See*, *e.g.*, Br. 19, 37, 40, 46–47 & nn.30, 35. These cases, which turn on interpretations of state law, have no bearing on the exclusivity issues implicated by the Longshore Act and DBA, are inapposite on their facts, and are contradicted by *Hall* and other authorities interpreting the scope of Longshore Act and DBA exclusivity. These citations also comprise the *minority view* among the states, even if they were relevant in the first place. *See* 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 104.05[3], at 104–130 (M.B., rev. ed. 2010).

34

**4.**     Plaintiffs' remaining arguments fare no better.  First, some Plaintiffs contend that because their injuries allegedly occurred during the DBA claims process, as opposed to during their employment, their claims are not barred.  *See* Br. 16, 24, 42.  This misses the point.  The DBA's statutory scheme comprehensively regulates all matters of Plaintiffs' benefits claims, including alleged wrongful denial and delay of those benefits and purported false statements and misrepresentations made in connection with those benefits, and the DBA mandates that this scheme is the "exclusive" mechanism for seeking relief.  Moreover, each of Plaintiffs' claims, by Plaintiffs' own admission, presupposes an obligation to pay DBA benefits, *see* Br. 1, which necessarily arise from overseas employment by one of the Defendant-Contractors.  If Plaintiffs were not entitled to receive benefits, they could not possibly contend that such benefits were unlawfully denied or delayed, or that Defendants intentionally interfered with that entitlement.  Plaintiffs in other cases have made this same argument, and the courts in those cases correctly rejected it.  *See Atkinson*, 838 F.2d at 811; *Nauert v. Ace Prop. & Cas. Ins. Co.*, No. 04-cv-2547, 2005 WL 2085544, at **3–5 (D. Colo. Aug. 27, 2005). The district court was correct to do so here as well.  Op. 22.

Second, Plaintiffs argue that the DBA's and Longshore Act's exclusive remedy provisions do not apply to at least one Plaintiff who was never employed by any of the Defendants and who instead was a healthcare provider for another Plain-

35

tiff (who was an employee and DBA claimant).  Br. 16, 23.  That argument fails

for the same reasons detailed above, because it too relies on the DBA claimant's

underlying entitlement to DBA benefits; without that underlying entitlement, the

claimant would have no claim for benefits, and the Plaintiff provider would have

no entitlement to be paid those benefits and would not be part of this lawsuit.  The

same is true of the argument that certain Plaintiffs' claims are excluded from DBA

coverage because some of the "Defendants are the parent companies of the em-

ployers and insurance carriers, not the employers and insurance carriers them-

selves."  Br. 21; *see also supra* n.6.  In rejecting Plaintiffs' arguments that their

claims were not preempted because they were suing certain Defendants who were

not their actual employers or insurers, the district court described these "quite per-

plexing[]" arguments as "undermin[ing] the premise of the claims set forth in the

Complaint, all of which allege that Plaintiffs were harmed by Defendants' refusal

or failure to timely provide the DBA benefits to which Plaintiffs were entitled."

Op. 23.

Third, because Plaintiffs' claims expressly challenge the DBA claims pro-

cess, their concerns about supposedly unlimited exclusivity are unfounded.  Plain-

tiffs argue that under the district court's decision, "it is difficult to imagine what

limits there would be to wrongs employers or carriers could commit and suffer no

liability."  Br. 21.  For example, Plaintiffs posit a scenario whereby "a nurse case

36

manager retained by the carrier were to run over a DBA claimant's child with her vehicle, while visiting at the claimant's home," and the child would have no civil cause of action. *Id*. But the "obvious difference" between this hypothetical and the claims in this case is that the fictional child's entitlement to recover would be "in no way dependent on his having been entitled to compensation benefits or to the defendant's having violated the compensation statute." *Atkinson*, 838 F.2d at 814–815. On the other hand, in order for Plaintiffs to recover in this case, as in *Atkinson*, "there must have been an entitlement to [DBA] benefits or a violation of the compensation statute in the failure to pay them." *Id*. The DBA expressly addresses the latter scenario via a comprehensive adjudicatory, enforcement, and penalty process. *Id.* Plaintiffs' hypothetical, and their related concerns about limitless DBA exclusivity, therefore are irrelevant and unfounded.

Fourth, Plaintiffs' argument that they are left without remedies for their claims is unfounded given the extensive remedial process provided by the DBA that addresses the purported misconduct alleged by Plaintiffs. *See supra* pp. 11–13. For their allegations that Defendants failed to pay (or to pay timely) DBA benefits, the DBA provides for a penalty payable to plaintiffs, 33 U.S.C. § 914(e), (f), judicial enforcement of the DOL's final compensation order, 33 U.S.C. § 921(d), and criminal penalties, 33 U.S.C. § 938. The DBA also provides criminal penalties for misrepresentations or false statements made to "reduce, deny, or terminate"

37

benefits, 33 U.S.C. § 931(c); *see also* 20 C.F.R. § 702.204, and punitive damages and reinstatement with back pay for unlawful retaliation or discrimination, 33 U.S.C. § 948a. That some of these remedies may "sound in criminal law and not in tort" does not leave Plaintiffs without an opportunity for legal recourse against Defendants. *Nadheer*, 506 F. App'x at 300. And to the extent the DBA does not provide the precise relief Plaintiffs seek, this is only because Congress designed the DBA's remedies to be exclusive as part of its "legislated compromise between the interests of employees and the concerns of employers." *Hall*, 809 F.2d at 926.

Plaintiffs' belief that the remedies supplied by Congress in the DBA are insufficient—in their words, too "minuscule," SAC ¶ 58—does not justify supplementing those remedies through tort law. Congressionally-enacted compensation schemes are not necessarily intended to be—and need not be—full substitutes for tort recoveries. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 88 (1978). As numerous courts have recognized in enforcing these statutory exclusivity provisions, any disagreements that Plaintiffs may have with the sufficiency of this legislative bargain are properly addressed to Congress, not the courts. *See*, *e.g.*, *Sample*, 771 F.2d at 1347 ("While it may be that the penalty provisions are inadequate to fully compensate a worker who has been harmed by an employer's refusal to pay when due, the problem requires a political solution.").

**5.**    Plaintiffs' brief highlights several Plaintiff-specific factual allegations in an attempt to suggest that the claims based on those allegations are not preempted.  *See* Br. 8–11, 22–24, 38–39.  But all of these allegations are necessarily rooted in the administration of DBA benefits and therefore are preempted.  Indeed, these Plaintiffs purport to have claims that are typical of those of thousands of putative class members who have allegedly faced similar barriers to the payment of DBA benefits.  Plaintiff Christine Holguin-Luge, for example, alleges that, following a sexual assault, Defendants caused her further injury because they refused to pay her benefits.  SAC ¶¶ 343–344; *see* Br. 10, 23.  She does not bring a tort claim for sexual assault, but rather for alleged interference with benefits she was allegedly due as a result of her underlying injury.

Similarly, Plaintiff Daniel Brink alleges that he was entitled to benefits for injuries he suffered as a result of an IED explosion in Iraq, and that Defendants refused to pay these benefits and misrepresented to him and the DOL that it had paid them.  *See* SAC ¶ 351–375; *see also* Br. 8–9, 22–23.  The alleged interference with his attempt to obtain benefits purportedly caused the injuries for which Brink is seeking damages in this lawsuit.  *See* SAC ¶¶ 359–364.

Plaintiff C.J. Mercadante alleges that he was "refused" and "denied" treatment and benefits, despite the fact that "[a]ll of the injuries he sustained are covered by the DBA."  *See id*. ¶¶ 132, 133, 136, 145, 147; *see also* Br. 9.  He also al-

39

leges that certain Defendants made misrepresentations to the DOL regarding his injuries and the benefits they had provided. *See id*. ¶¶ 135, 146, 150; Br. 9. Other individual allegations are of the same nature. *See*, *e.g.*, *id*. ¶¶ 478–480 (Nicky Pool); ¶¶ 103–110, 114–115 (Merlin Clark); ¶¶ 282–283 (Robert Biddle); ¶¶ 187–192 (Steven Thompsen); ¶¶ 260–268 (Fred Busse); ¶¶ 408–412 (Catharina Louw); ¶¶ 81–83 (Ronald Bell); ¶¶ 202 (Harbee Kreesha); ¶¶ 211, 214 (Mohsen Alsaleh).

In short, Plaintiffs' Second Amended Complaint is directly rooted in the DBA claims process, which is central to all of their claims. And all of their claims depend on an entitlement to DBA benefits. Plaintiffs' particular allegations of various individualized physical and emotional injuries allegedly flowing from their experiences in the DBA claims process (including a new allegation on appeal of harm from a murder threat that was not in the Complaint) do not alter the analysis. *See* Br. 3. As pleaded in the Second Amended Complaint, all of Plaintiffs' claims stem from the wrongful delay or denial of benefits under the DBA, *see* SAC ¶¶ 564–639; *see also* Br. 1, which is the purported "commonality" shared by all Plaintiffs and their claims, *see* SAC ¶¶ 7, 563. These claims are preempted.

## B.    Plaintiffs' Federal Claims Are Barred

In addition to preempting state-law claims, the DBA also bars federal causes of action, such as Plaintiffs' RICO claims.

40

1.     Where federal enabling statutes provide exclusive administrative remedies, this Court and others routinely hold that these comprehensive federal schemes bar RICO actions for alleged violations of the schemes.  This Court in *Danielsen v. Burnside–Ott Aviation Training Center, Inc*. made clear that a comprehensive federal statutory scheme, with exclusive administrative remedies, "leaves no room" for a federal RICO action.  941 F.2d at 1226.  In *Danielsen*, defense contractor employees brought RICO claims alleging that their employers misclassified them as "technicians" instead of "aircraft workers," which would have entitled them to higher wages.  *See id*. at 1225–1226.  This Court explained that the Service Contract Act, 41 U.S.C. §§ 351–358, provided a comprehensive statutory scheme and "an extensive body of regulations" specifically addressing these wage issues related to federal contracts.  *Danielsen*, 941 F.2d at 1223.  This Court concluded that alleged violation of the Service Contract Act did not give rise to a private civil RICO cause of action; rather, the administrative remedies available under the Service Contract Act were the "exclusive" remedies for the alleged wage violations.  *Id*. at 1226–1229.

The holding in *Danielsen* has been applied to the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901–8914, which authorizes the U.S. Office of Personnel Management "to procure and administer health benefits plans for federal workers by contracting with private health insurance carriers."  *Bridges v. BCBS Ass'n*,

41

935 F. Supp. 37, 39 (D.D.C. 1996).  Noting that the Federal Employee Health Benefits Act created a "comprehensive administrative enforcement mechanism for review of disputed claims" brought by the plaintiff, the district court refused to allow the plaintiff to circumvent that administrative enforcement mechanism by bringing a private cause of action under RICO.  *See id*. at 41–43.  Other federal courts have routinely rejected similar attempts by Plaintiffs to use RICO as an end run around federal statutes with exclusive administrative remedies.[9]  Most recently, the Supreme Court applied the same reasoning in holding that the Civil Service Reform Act's comprehensive remedial scheme is exclusive of (and divests the courts of jurisdiction over) claims brought outside the statutory system, even assuming the administrative agency lacks authority to decide the constitutional questions underlying such claims.  *See Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012).  Under all of these authorities, Plaintiffs' RICO claims are barred.

    **2.**    Count I, which alleged a violation of the Longshore Act's anti-retaliation and discrimination provision, 33 U.S.C. § 948a, fares no better.  Plain-

---

[9]  *See*, *e.g.*, *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226–1227 (11th Cir. 2002) (Higher Education Act); *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 521–522 (11th Cir. 2000) (National Traffic and Motor Vehicle Safety Act); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 486–487 (7th Cir. 1990) (Social Security Act); *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637 (2d Cir. 1989) (Energy Reorganization Act); *Livingston v. Shore Slurry Seal, Inc*., 98 F. Supp. 2d 594, 600–601 (D.N.J. 2000) (Davis-Bacon Act); *Vilanova v. United States*, 851 F.2d 1, 6 (1st Cir. 1988) (Longshore Act's exclusivity provision bars claims under the Federal Tort Claims Act).

tiffs do not address this claim in their opening brief and have therefore forfeited it on appeal. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).[10]

At any rate, a claimant bringing a Longshore Act wrongful discharge claim cannot proceed in the district court unless he has exhausted his administrative remedies. *See* 20 C.F.R. § 702.271 (2012); *Slightom v. Nat'l Maint. & Repair, Inc.*, 747 F. Supp. 2d 1032, 1037–38 (S.D. Ill. 2010). Plaintiffs have not done so; nor do they plead as much. The district court was correct to dismiss that claim based on Plaintiffs' failure to exhaust their administrative remedies. *See* Op. 29–30. Nor can Plaintiffs bring a retaliation claim against the insurer Defendants, because the statute itself provides that "[t]he employer alone and not his [insurance] carrier shall be liable for [Longshore Act] penalties and payments [for retaliation and/or discrimination]." 33 U.S.C. § 948a. Allowing this claim to proceed outside of this process likewise would conflict with the Longshore Act's comprehensive and exclusive remedial scheme.

\* \* \*

---

[10] Plaintiffs make a passing reference to the statute—but not to their claim under the statute—to point out that 33 U.S.C. § 948a provides only "a nominal remedy for wrongfully terminated claimants," and thus they are entitled to bring a state-law retaliation claim outside the scope of the Longshore Act (a claim not contained in their complaint). *See* Br. 37–38.

43

In short, Plaintiffs' claims are barred by the exclusivity provisions of the DBA, and there is no basis in precedent, the statute, allegations in the Second Amended Complaint, or even public policy to conclude otherwise.  For these reasons, the district court's dismissal of the complaint should be affirmed.

## II.   Plaintiffs' RICO Claims Fail For Additional Reasons

The district court concluded, in the alternative, that Plaintiffs failed to properly plead a RICO enterprise or any RICO predicate act.  *See* Op. 27–29 n.12. These pleading deficiencies—completely unaddressed by Plaintiffs on appeal and therefore implicitly conceded—independently warrant affirmance.  So too does Plaintiffs' failure to allege injuries to "business or property," thereby precluding RICO standing.[11]

### A.   Plaintiffs Fail To Allege RICO's Essential Elements

To make out a claim under RICO, Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).  The district court correctly concluded that Plaintiffs failed to sufficiently plead these elements, and Plaintiffs make no argument on appeal contesting this conclusion.

---

[11] The district court also rejected any claim of RICO violation under 18 U.S.C. § 1962(d) because Plaintiffs failed to allege a RICO conspiracy, Op. 28–29 n.12, a ruling not challenged by Plaintiffs on appeal.

1.     To allege a civil RICO enterprise, Plaintiffs must demonstrate (1) a common purpose among the participants, (2) organization, and (3) continuity. *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1115 (D.C. Cir. 2009) (per curiam). But Plaintiffs alleged nothing more than an undefined—and structure-less—"RICO enterprise" consisting of "insurance companies, attorneys, adjusters, third party medical providers, third party case administrators, third party investigators and contractors." SAC ¶ 576. Such allegations that "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates . . . [is] not . . . enough to show that the individuals were members of an enterprise." *Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009).

Indeed, Plaintiffs have failed to plead "factual content [that] allows the court to draw the reasonable inference" of a "common purpose, organization, and continuity." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see also Philip Morris*, 566 F.3d at 1115. Plaintiffs' complaint does not contain a single factual allegation of any common association or structural unit, and Plaintiffs do not allege ***any*** contacts among the various insurer Defendants or among the contractor Defendants. In the handful of instances where Plaintiffs allege conduct involving more than a single Defendant, they allege only that a single defense contractor "work[ed] in tandem" with its DBA insurer with respect to a particular DBA claim or claimant, *see*, *e.g.*, SAC ¶¶ 53, 87, 103, which is an unremarkable consequence of the DBA's re-

45

quirement that contractors obtain DBA insurance from government-approved insurers.  20 C.F.R. § 703.101.  Thus, "while plaintiffs may have alleged parallel, bilateral structures connecting a[n] [employer] to *each* of its insurer-partners," they have failed to allege a plausible "'rim' or 'wheel' connecting the alleged insurer 'spokes,'" or any "facts plausibly suggesting collaboration among the insurers."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010).

For the same reason, Plaintiffs' state-law claim for civil conspiracy (Count VI) merits dismissal.  Other than conclusory allegations of a conspiracy, Plaintiffs have failed to plead facts supporting the existence of conduct undertaken as part of any common goal or agreement among multiple Defendants.

**2.**    As the district court found, Plaintiffs also fail to allege the existence of "racketeering activity," which requires them to allege specific instances of fraud with particularity.  *See* Op. 27 n.31.  Plaintiffs assert that Defendants committed predicate acts of "wire fraud," "mail fraud," and "banking fraud," constituting "racketeering activity" under RICO.  *See* SAC ¶¶ 16, 110, 573, 575.  But Plaintiffs have not identified such acts with the particularity required by Federal Rule of Civil Procedure 9(b), including the "time, place and content of the false misrepresentations, the fact misrepresented and . . . individuals allegedly involved in the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).  Plaintiff Griffin, for example, alleges that "[d]uring the last five

46

years, KBR and AIG have subjected Mr. Griffin to fraud, bad faith, and abuse, claiming him as a malingerer and faker," but he fails to identify any specific statement that he contends was fraudulent, what was said, who made the statement, where the statement occurred, and how or why it was fraudulent. SAC ¶ 288. Other Plaintiffs' allegations are similarly deficient. *See*, *e.g.*, *id.* ¶¶ 122, 125, 250, 277, 550, 311, 316, 474.

Plaintiffs' failure to plead allegations of fraud with particularity also applies to their allegations made as part of their state-law claim for "fraudulent and deceptive trade practices" (Count IV). As with their RICO claim, Plaintiffs have failed to allege with particularity the "time, place and content of the false misrepresentations, the fact misrepresented . . . [or] identify individuals allegedly involved in the fraud." *Martin-Baker Aircraft Co.*, 389 F.3d at 1256).

Even if Plaintiffs had alleged predicate acts of fraud with particularity, they have not alleged facts showing that the fraud was both the "but for" and "proximate cause" of their alleged injury, as RICO requires. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Here, Plaintiffs fail to allege any causal relationship between the component elements of "racketeering" and injury to "business or property." *See*, *e.g.*, SAC ¶ 288 (allegations lacking any explanation of how the purportedly false statements caused Plaintiff Griffin's injury). All of these deficiencies therefore

47

present an additional basis, not challenged by Plaintiffs on appeal, to affirm the decision below.

### B.    Plaintiffs Lack Standing Under RICO

To satisfy RICO's standing requirement, Plaintiffs must have suffered an injury to their "business or property" proximately caused by the alleged predicate acts. *See* 18 U.S.C. § 1964(c); *Sedima*, 473 U.S. at 496. Overwhelming authority holds that RICO's "business or property" requirement does not encompass personal injuries. *See Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1076 (D.C. Cir. 2001); *see also Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 101 (D.D.C. 2003) (summarizing cases).

In their complaint, Plaintiffs asserted that because of Defendants' alleged RICO violations, Plaintiffs "were damaged in their persons, property, and credit, as well as in their relationships with doctors and medical personnel" and that these alleged injuries caused "financial loss and physical harm that resulted in additional financial loss." *See* SAC ¶ 585. Plaintiffs' alleged injuries resulting from the claimed RICO violations fall into four categories: (i) injuries to their persons; (ii) injuries to their property; (iii) injuries to their credit; and (iv) injuries to their relationships with doctors and medical personnel. *Id.* The first of these categories is readily dismissed because injuries to "their persons" are clearly "personal injuries."

48

The remaining categories likewise fail to provide a basis for RICO standing because they flow from these personal injuries (e.g., "physical harm that resulted in additional financial loss," SAC ¶ 585).  Courts repeatedly dismiss RICO claims that are based on "personal injuries, *and economic losses derived therefrom*, but not any specific injuries to business or property that are separate from their personal injuries."  *Burnett*, 274 F. Supp. 2d at 100 (emphasis added); *see also Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492 (4th Cir. 1995).  Every circuit to address this issue is in accord.  *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 566 (6th Cir. 2013) (en banc) (citing cases in eight circuits), *cert. denied*, __ S. Ct. __ (May 5, 2014).

Plaintiffs' alleged injuries to "property" and "credit" pertain to personal property, real property, or credit status allegedly lost as a result of alleged collection actions by medical service providers.  *See*, *e.g.*, SAC ¶¶ 145, 176, 359, 368, 435, 482, 488.  Because these alleged losses also derive from the underlying personal injuries, they also are not cognizable under RICO.  *See Burnett*, 274 F. Supp. 2d at 101.  Finally, the alleged damage to Plaintiffs' "relationships with doctors and medical personnel" is personal in nature and thus is not an injury to business or property within the meaning of 18 U.S.C. § 1964(c).  *See Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999).

Plaintiffs' only argument on appeal is that their entitlement to DBA benefits constitutes "business or property" under RICO. *See* Br. 49–51. This argument of course confirms that Plaintiffs' claims stem entirely from their claim for DBA benefits, and thus are precluded by the DBA's exclusivity provision. *See supra* Part I. Plaintiffs' position that this provides them with RICO standing also lacks support in the applicable case law. The Sixth Circuit recently held that benefits an employee expected to receive under a state workers' compensation statute did not constitute injury to "business or property" under RICO. *Jackson*, 731 F.3d at 566. Even if an employee has a "legal entitlement" to the benefits, "those benefits merely reflect the pecuniary losses associated with the personal injury," and therefore workers' compensation benefits are "pecuniary losses flowing from . . . personal injuries[, which] fail to confer relief under [RICO]." *Id*. at 565–566. In so holding, the Sixth Circuit overturned the panel decision in *Brown v. Cassens Transport Co.*, 675 F.2d 946, 958 (6th Cir. 2012), on which Plaintiffs relied below but do not cite on appeal. Plaintiffs offer no support for their argument on appeal.

\* \* \*

Even if Plaintiffs' RICO claims were not barred by the DBA's exclusivity (as they are), dismissal of these claims should be affirmed because Plaintiffs have failed to adequately plead the essential elements required by RICO.

## III. Plaintiffs Have Not Alleged Facts Sufficient To Support Their State-Law Claims

50

Plaintiffs' state-law claims—Counts III (Bad Faith), IV (Deceptive Trade Practices), V (Civil Conspiracy), VII (Outrage), and VIII (Wrongful Death)—are also deficient for the independent reason that Plaintiffs fail to allege sufficient facts supporting these claims.  Defendants individually presented this argument (and other pleading deficiencies) to the district court in support of their motions to dismiss.  The district court did not reach these arguments.  This Court, however, may affirm for any reason preserved and supported by the record below.  *Smith v. Lanier*, 726 F.3d 166, 169 (D.C. Cir. 2013).

All of Plaintiffs' state-law claims lack even the most basic supportive facts. They do not identify which causes of action are being alleged by which Plaintiffs, or which facts supposedly support these claims.  *See*, *e.g.*, SAC ¶¶ 587–92.  Instead of supporting each count with facts corresponding to the elements of that claim, Plaintiffs improperly "incorporate by reference each and every allegation set forth" in the preceding *586* paragraphs.  *See* SAC ¶¶ 587, 593, 602, 619, 626.  Plaintiffs' complaint constitutes "quintessential 'shotgun' pleading" that courts have condemned for lumping together multiple defendants amidst "innumerable pages of rambling irrelevancies."  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (citation omitted).

Plaintiffs also do not identify under which state's law any particular Plaintiff is proceeding, even though presumably this differs from Plaintiff to Plaintiff.  In

51

fact, not all states recognize some of the state causes of action, *see, e.g.*, *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) (In "[D.C.], civil conspiracy is recognized not as an independent tort . . . ."), and for those that do, the elements vary from state to state. Moreover, some Plaintiffs are foreign nationals, *see*, *e.g.*, SAC ¶ 447, and thus do not even have state-law claims available to them.

For these reasons, not only does the DBA's comprehensive and exclusive statutory scheme bar all of Plaintiffs' claims, but Plaintiffs' state-law claims are also deficient because they failed to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted).

## IV.  The District Court Properly Dismissed Plaintiffs' ADA Claims For Failure To State A Claim For Relief Under Rule 12(b)(6)

Three Plaintiffs—Harbee Kreesha, Merlin Clark, and Mohsen Alsaleh—also argue that the district court erred in dismissing their ADA claims (Count VI) against two contractor-Defendants. These Plaintiffs failed to adequately plead their claims, and thus the district court properly dismissed them under Rule 12(b)(6).

To establish a *prima facie* case of unlawful discrimination based on a failure to reasonably accommodate under the ADA, a plaintiff must show that: (1) he or she is a qualified individual with a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) there was some reasonable ac-

52

commodation denied to him; and (4) such accommodation would have enabled him to perform the essential functions of the job. *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2011). An employee also must have requested an accommodation. *See Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). The district court correctly concluded that Plaintiffs failed to plead that they were qualified individuals within the meaning of the ADA and that they had requested reasonable accommodations. Plaintiffs also have alleged that they were terminated because of their disabilities. SAC ¶¶ 611–613. That type of claim has similar essential elements to a reasonable accommodation claim, including that the plaintiff is a qualified individual under the ADA. *Swanks v. Wash. Metro. Area Transit Auth.*, 179 F.3d 929, 933–934 (D.C. Cir. 1999).

Plaintiffs' complaint is utterly lacking in factual allegations regarding their status as "qualified individuals" under the ADA. A qualified individual under the ADA is one who has a "disability"—which the ADA defines as "a physical or mental impairment that substantially limits one or more [of an individual's] major life activities," 42 U.S.C. § 12102(1)(A)—and who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8); *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002). While Plaintiffs make conclusory allegations regarding their status as qualified individuals, *see*, *e.g.*, SAC ¶ 610, and generally

53

describe their purported injuries, *see*, *e.g.*, *id*. ¶¶ 192–195, 209–210, 212–213, they did not allege facts demonstrating that these injuries substantially limited a major life activity.  Plaintiffs also completely failed to allege that they requested an accommodation for their purported disabilities from their employers.

On appeal, Plaintiffs argue that they presented "extensive documentation" and "great detail" regarding their alleged disabilities, but they do not identify ***any*** factual allegations showing requests for accommodations or connecting their purported injuries to any alleged interference with major life activities.  They also argue that additional information was presented to the district court as part of their briefing in opposition to Defendants' motions to dismiss.  *See* Br. 53.  But even assuming these belated factual allegations are sufficient to state a claim for relief (they are not), a plaintiff cannot rely on additional factual allegations made in a brief opposing dismissal in order to satisfy Rule 12(b)(6).  *Henthorn v. Dep't of Navy*, 29 F.3d 682, 687–688 (D.C. Cir. 1994).  The district court therefore properly dismissed Plaintiffs' ADA claims under Rule 12(b)(6).

## V.    The District Court Did Not Abuse Its Discretion In Denying Plaintiffs' Motion For Leave To Amend

**A.**    In conjunction with their motion for reconsideration of the district court's dismissal orders, Plaintiffs also filed a motion for leave to amend with respect to their ADA claims (D.E. 146), which the district court denied.  The district court did not abuse its discretion in doing so because Plaintiffs already had several

opportunities to amend and Plaintiffs' request would be futile. Although Federal Rule of Civil Procedure 15(a)(2) states that leave should be given "freely," after a district court has dismissed a complaint with prejudice[12] a party can amend that complaint under Rule 15(a) "only by first prevailing on a Rule 59(e) motion to alter or amend the judgment." *Jung v. Ass'n of Am. Med. Colls.*, 184 F. App'x 9, 13 (D.C. Cir. 2006) (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)).

Here, Plaintiffs have offered no reason why the district court abused its discretion in denying their motion for reconsideration, and, in fact, they could not do so: Plaintiffs did not present to the district court "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or to prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (internal quotation marks omitted). Plaintiffs' arguments in support of their motion for reconsideration were simply rehashed versions of the arguments raised in their opposition papers and new arguments that Plaintiffs could have (but failed to) advance earlier. *See* D.E. 145, 147–150, 152–156. The district court thus did not abuse its discretion in denying this motion on these grounds. *See* Minute Order of Sept. 26, 2013.

---

[12] Although the district court's dismissal did not explicitly indicate that it was with prejudice, a dismissal pursuant to Rule 12(b)(6) is "ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *see also* Minute Order of Sept. 26, 2013.

Regardless, Plaintiffs had plenty of opportunities to amend their complaint, and their final proposed amendments were futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (identifying "undue delay" and "futility" as reasons for denying leave to amend). They twice amended their complaint without correcting the deficiencies in their ADA claims and then failed to properly seek leave to amend after Defendants identified those deficiencies in their motions to dismiss.

Only after the district court dismissed their complaint with prejudice did Plaintiffs seek to amend their ADA claims, but their proposed amendments were plainly futile because they failed to plead a *prima facie* case of discrimination. *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999 (D.C. Cir. 1996). As Plaintiffs acknowledged, their proposed amendment simply repackaged and restated "what has gone before in the facts section of the [SAC], but put it in the context of the elements of the ADA." D.E. 146-1. And the only additional information included in the proposed amendment is a summary list of major life activities purportedly affected, *see* D.E. 146, Ex. A ¶ 241 (alleging difficulty "walking, working, sitting, standing, breathing, and sleeping"), which are nothing more than conclusory restatements of the ADA's definition of major life activities, *see* 42 U.S.C. § 12102(2)(A).

**B.**     As to Plaintiffs' *non-ADA* claims, Plaintiffs never asked for leave to amend any of these claims specifically, and they have therefore waived any argu-

56

ment that they are entitled to amend them. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). To the extent that Plaintiffs suggest that they did request to amend these other claims below, that request was procedurally improper. A request for leave to amend must "include a proposed amended complaint," and not just a "bare request" lacking "any indication of the particular grounds on which amendment is sought." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130–131 (D.C. Cir. 2012). While Plaintiffs' reconsideration motion cursorily requested permission to amend their complaint "to more properly plead" certain claims, *see* D.E. 145-1 at 29, that "bare request" was not accompanied by a proposed amendment and did not otherwise indicate that Plaintiffs could state a plausible claim for relief. Thus "'it could hardly have been an abuse of discretion'" for the district court to deny leave to amend. *Rollins*, 703 F.3d at 131 (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court. The DBA bars Plaintiffs from seeking relief for their claims outside the DBA's comprehensive statutory framework, which is the ***exclusive*** means of imposing liability and securing compensation under the DBA.

Dated: June 6, 2014                     Respectfully submitted,

                                        /s/ Geoffrey M. Sigler
Richard J. Doren                        Geoffrey M. Sigler
GIBSON, DUNN & CRUTCHER LLP                 *Counsel of Record*
333 South Grand Avenue                  Thomas M. Johnson
Los Angeles, CA 90071                   Alexander K. Cox
(213) 229-7038                          GIBSON, DUNN & CRUTCHER LLP
                                        1050 Connecticut Avenue, N.W.
                                        Washington, DC 20036
                                        (202) 955-8500


  *Counsel for Appellee American International Group, Inc.*

## RULE ECF-3(B) ATTESTATION

In accordance with D.C. Circuit Rule ECF-3(B), I hereby attest that all other

parties on whose behalf this joint brief is submitted concur in the brief's content.


Dated: June 6, 2014                      /s/ Geoffrey M. Sigler
                                         Geoffrey M. Sigler
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, DC 20036
                                         (202) 955-8500
                                         gsigler@gibsondunn.com

*Counsel for Appellee American International Group, Inc.*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 13,692 words, as determined by the word-count function of Microsoft Word 2003, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman font.


Dated: June 6, 2014              /s/ Geoffrey M. Sigler
                                 Geoffrey M. Sigler
                                 GIBSON, DUNN & CRUTCHER LLP
                                 1050 Connecticut Avenue, N.W.
                                 Washington, DC 20036
                                 (202) 955-8500
                                 gsigler@gibsondunn.com

*Counsel for Appellee American International Group, Inc.*

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

## STATUTES

33 U.S.C. § 902 ............................................................................................... A-1

33 U.S.C. § 905 ............................................................................................... A-6

33 U.S.C. § 912 ............................................................................................... A-8

33 U.S.C. § 914 ............................................................................................. A-10

33 U.S.C. § 919 ............................................................................................. A-13

33 U.S.C. § 921 ............................................................................................. A-15

33 U.S.C. § 928 ............................................................................................. A-18

33 U.S.C. § 930 ............................................................................................. A-20

33 U.S.C. § 931 ............................................................................................. A-22

33 U.S.C. § 935 ............................................................................................. A-25

33 U.S.C. § 938 ............................................................................................. A-26

33 U.S.C. § 948a ........................................................................................... A-27

42 U.S.C. § 1651 ........................................................................................... A-28

**33 U.S.C. § 902**

**§ 902. Definitions**

When used in this chapter—

(1) The term "person" means individual, partnership, corporation, or association.

(2) The term "injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

(3) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include--

(A) individuals employed exclusively to perform office clerical, secretarial, security, or data processing work;

(B) individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet;

(C) individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such marina (except for routine maintenance);

(D) individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of an employer described in paragraph (4), and (iii) are not engaged in work normally performed by employees of that employer under this chapter;

(E) aquaculture workers;

(F) individuals employed to build any recreational vessel under sixty-five feet in length, or individuals employed to repair any recreational vessel, or to dismantle any part of a recreational vessel in connection with the repair

A-1

of such vessel;

(G) a master or member of a crew of any vessel; or

(H) any person engaged by a master to load or unload or repair any small vessel under eighteen tons net;

if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law.

(4) The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

(5) The term "carrier" means any person or fund authorized under section 932 of this title to insure under this chapter and includes self-insurers.

(6) The term "Secretary" means the Secretary of Labor.

(7) The term "deputy commissioner" means the deputy commissioner having jurisdiction in respect of an injury or death.

(8) The term "State" includes a Territory and the District of Columbia.

(9) The term "United States" when used in a geographical sense means the several States and Territories and the District of Columbia, including the territorial waters thereof.

(10) "Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment; but such term shall mean permanent impairment, determined (to the extent covered thereby) under the guides to the evaluation of permanent impairment promulgated and modified from time to time by the American Medical Association, in the case of an individual whose claim is described in section 910(d)(2) of this title.

(11) "Death" as a basis for a right to compensation means only death resulting from an injury.

A-2

(12) "Compensation" means the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein.

(13) The term "wages" means the money rate at which the service rendered by an employee is compensated by an employer under the contract of hiring in force at the time of the injury, including the reasonable value of any advantage which is received from the employer and included for purposes of any withholding of tax under subtitle C of title 26 (relating to employment taxes). The term wages does not include fringe benefits, including (but not limited to) employer payments for or contributions to a retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan for the employee's or dependent's benefit, or any other employee's dependent entitlement.

(14) "Child" shall include a posthumous child, a child legally adopted prior to the injury of the employee, a child in relation to whom the deceased employee stood in loco parentis for at least one year prior to the time of injury, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him. "Grandchild" means a child as above defined of a child as above defined. "Brother" and "sister" includes stepbrothers and stepsisters, half brothers and half sisters, and brothers and sisters by adoption, but does not include married brothers nor married sisters unless wholly dependent on the employee. "Child", "grandchild", "brother", and "sister" include only a person who is under eighteen years of age, or who, though eighteen years of age or over, is (1) wholly dependent upon the employee and incapable of self-support by reason of mental or physical disability, or (2) a student as defined in paragraph (19) of this section.

(15) The term "parent" includes step-parents and parents by adoption, parents-in-law, and any person who for more than three years prior to the death of the deceased employee stood in the place of a parent to him, if dependent on the injured employee.

(16) The terms "widow or widower" includes only the decedent's wife or husband living with or dependent for support upon him or her at the time of his or her death; or living apart for justifiable cause or by reason of his or her desertion at such time.

(17) The terms "adoption" or "adopted" mean legal adoption prior to the

A-3

time of the injury.

(18) The term "student" means a person regularly pursuing a full-time course of study or training at an institution which is--

(A) a school or college or university operated or directly supported by the United States, or by any State or local government or political subdivision thereof,

(B) a school or college or university which has been accredited by a State or by State recognized or nationally recognized accrediting agency or body,

(C) a school or college or university not so accredited but whose credits are accepted, on transfer, by not less than three institutions which are so accredited, for credit on the same basis as if transferred from an institution so accredited, or

(D) an additional type of educational or training institution as defined by the Secretary,

but not after he reaches the age of twenty-three or has completed four years of education beyond the high school level, except that, where his twenty-third birthday occurs during a semester or other enrollment period, he shall continue to be considered a student until the end of such semester or other enrollment period. A child shall not be deemed to have ceased to be a student during any interim between school years if the interim does not exceed five months and if he shows to the satisfaction of the Secretary that he has a bona fide intention of continuing to pursue a full-time course of education or training during the semester or other enrollment period immediately following the interim or during periods of reasonable duration during which, in the judgment of the Secretary, he is prevented by factors beyond his control from pursuing his education. A child shall not be deemed to be a student under this chapter during a period of service in the Armed Forces of the United States.

(19) The term "national average weekly wage" means the national average weekly earnings of production or nonsupervisory workers on private nonagricultural payrolls.

(20) The term "Board" shall mean the Benefits Review Board.

(21) Unless the context requires otherwise, the term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

(22) The singular includes the plural and the masculine includes the feminine and neuter.

**33 U.S.C. § 905**

**§ 905. Exclusiveness of liability**

(a) Employer liability; failure of employer to secure payment of compensation

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.

(b) Negligence of vessel

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon

A-6

the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

(c) Outer Continental Shelf

In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under this Act by virtue of section 1333 of Title 43, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel in accordance with the provisions of subsection (b) of this section. Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43 and the vessel agree to defend and indemnify the other for cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees.

**33 U.S.C. § 912**

**§ 912. Notice of injury or death**

(a) Time limitation

Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death, or thirty days after the employee or beneficiary is aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of a relationship between the injury or death and the employment, except that in the case of an occupational disease which does not immediately result in a disability or death, such notice shall be given within one year after the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability. Notice shall be given (1) to the deputy commissioner in the compensation district in which the injury or death occurred, and (2) to the employer.

(b) Form and content

Such notice shall be in writing, shall contain the name and address of the employee and a statement of the time, place, nature, and cause of the injury or death, and shall be signed by the employee or by some person on his behalf, or in case of death, by any person claiming to be entitled to compensation for such death or by a person on his behalf.

(c) Delivery requirements

Notice shall be given to the deputy commissioner by delivering it to him or sending it by mail addressed to his office, and to the employer by delivering it to him or by sending it by mail addressed to him at his last known place of business. If the employer is a partnership, such notice may be given to any partner, or if a corporation, such notice may be given to any agent or officer thereof upon whom legal process may be served or who is in charge of the business in the place where the injury occurred. Each employer shall designate those agents or other responsible officials to receive such notice, except that the employer shall designate as its representatives individuals among first line supervisors, local plant management, and personnel office officials. Such designations shall be made in accordance with regulations prescribed by the Secretary and the employer shall

notify his employees and the Secretary of such designation in a manner prescribed by the Secretary in regulations.

(d) Failure to give notice

Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent or agents or other responsible official or officials designated by the employer pursuant to subsection (c) of this section) or the carrier had knowledge of the injury or death, (2) the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (3) if the deputy commissioner excuses such failure on the ground that (i) notice, while not given to a responsible official designated by the employer pursuant to subsection (c) of this section, was given to an official of the employer or the employer's insurance carrier, and that the employer or carrier was not prejudiced due to the failure to provide notice to a responsible official designated by the employer pursuant to subsection (c) of this section, or (ii) for some satisfactory reason such notice could not be given; nor unless objection to such failure is raised before the deputy commissioner at the first hearing of a claim for compensation in respect of such injury or death.

**33 U.S.C. § 914**

**§ 914. Payment of compensation**

(a) Manner of payment

Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

(b) Period of installment payments

The first installment of compensation shall become due on the fourteenth day after the employer has been notified pursuant to section 912 of this title, or the employer has knowledge of the injury or death, on which date all compensation then due shall be paid. Thereafter compensation shall be paid in installments, semimonthly, except where the deputy commissioner determines that payment in installments should be made monthly or at some other period.

(c) Notification of commencement or suspension of payment

Upon making the first payment, and upon suspension of payment for any cause, the employer shall immediately notify the deputy commissioner, in accordance with a form prescribed by the Secretary, that payment of compensation has begun or has been suspended, as the case may be.

(d) Right to compensation controverted

If the employer controverts the right to compensation he shall file with the deputy commissioner on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the Secretary stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted.

(e) Additional compensation for overdue installment payments payable without award

If any installment of compensation payable without an award is not paid

A-10

within fourteen days after it becomes due, as provided in subsection (b) of this section, there shall be added to such unpaid installment an amount equal to 10 per centum thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subsection (d) of this section, or unless such nonpayment is excused by the deputy commissioner after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

(f) Additional compensation for overdue installment payments payable under terms of award

If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in section 921 of this title and an order staying payment has been issued by the Board or court.

(g) Notice of payment; penalty

Within sixteen days after final payment of compensation has been made, the employer shall send to the deputy commissioner a notice, in accordance with a form prescribed by the Secretary, stating that such final payment has been made, the total amount of compensation paid, the name of the employee and of any other person to whom compensation has been paid, the date of the injury or death, and the date to which compensation has been paid. If the employer fails to so notify the deputy commissioner within such time the Secretary shall assess against such employer a civil penalty in the amount of $100.

(h) Investigations, examinations, and hearings for controverted, stopped, or suspended payments

The deputy commissioner (1) may upon his own initiative at any time in a case in which payments are being made without an award, and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation, or from the employer, that the right to compensation is controverted, or that payments of compensation have been stopped or suspended, make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the

A-11

rights of all parties.

(i) Deposit by employer

Whenever the deputy commissioner deems it advisable he may require any employer to make a deposit with the Treasurer of the United States to secure the prompt and convenient payment of such compensation, and payments therefrom upon any awards shall be made upon order of the deputy commissioner.

(j) Reimbursement for advance payments

If the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due.

(k) Receipt for payment

An injured employee, or in case of death his dependents or personal representative, shall give receipts for payment of compensation to the employer paying the same and such employer shall produce the same for inspection by the deputy commissioner, whenever required.

**33 U.S.C. § 919**

**§ 919. Procedure in respect of claims**

(a) Filing of claim

Subject to the provisions of section 913 of this title a claim for compensation may be filed with the deputy commissioner in accordance with regulations prescribed by the Secretary at any time after the first seven days of disability following any injury, or at any time after death, and the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim.

(b) Notice of claim

Within ten days after such claim is filed the deputy commissioner, in accordance with regulations prescribed by the Secretary, shall notify the employer and any other person (other than the claimant), whom the deputy commissioner considers an interested party, that a claim has been filed. Such notice may be served personally upon the employer or other person, or sent to such employer or person by registered mail.

(c) Investigations; order for hearing; notice; rejection or award

The deputy commissioner shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon. If a hearing on such claim is ordered the deputy commissioner shall give the claimant and other interested parties at least ten days' notice of such hearing, served personally upon the claimant and other interested parties or sent to such claimant and other interested parties by registered mail or by certified mail, and shall within twenty days after such hearing is had, by order, reject the claim or make an award in respect of the claim. If no hearing is ordered within twenty days after notice is given as provided in subsection (b) of this section, the deputy commissioner shall, by order, reject the claim or make an award in respect of the claim.

(d) Provisions governing conduct of hearing; administrative law judges

Notwithstanding any other provisions of this chapter, any hearing held under this chapter shall be conducted in accordance with the provisions of section 554 of

A-13

Title 5. Any such hearing shall be conducted by a [FN1] administrative law judge qualified under section 3105 of that title. All powers, duties, and responsibilities vested by this chapter, on October 27, 1972, in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges.

(e) Filing and mailing of order rejecting claim or making award

The order rejecting the claim or making the award (referred to in this chapter as a compensation order) shall be filed in the office of the deputy commissioner, and a copy thereof shall be sent by registered mail or by certified mail to the claimant and to the employer at the last known address of each.

(f) Awards after death of employee

An award of compensation for disability may be made after the death of an injured employee.

(g) Transfer of case

At any time after a claim has been filed with him, the deputy commissioner may, with the approval of the Secretary, transfer such case to any other deputy commissioner for the purpose of making investigation, taking testimony, making physical examinations or taking such other necessary action therein as may be directed.

(h) Physical examination of injured employee

An injured employee claiming or entitled to compensation shall submit to such physical examination by a medical officer of the United States or by a duly qualified physician designated or approved by the Secretary as the deputy commissioner may require. The place or places shall be reasonably convenient for the employee. Such physician or physicians as the employee, employer, or carrier may select and pay for may participate in an examination if the employee, employer, or carrier so requests. Proceedings shall be suspended and no compensation be payable for any period during which the employee may refuse to submit to examination.

A-14

**33 U.S.C. § 921**

**§ 921. Review of compensation orders**

a) Effectiveness and finality of orders

A compensation order shall become effective when filed in the office of the deputy commissioner as provided in section 919 of this title, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subsection (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

(b) Benefits Review Board; establishment; members; chairman; quorum; voting; questions reviewable; record; conclusiveness of findings; stay of payments; remand

(1) There is hereby established a Benefits Review Board which shall be composed of five members appointed by the Secretary from among individuals who are especially qualified to serve on such Board. The Secretary shall designate one of the members of the Board to serve as chairman. The Chairman shall have the authority, as delegated by the Secretary, to exercise all administrative functions necessary to operate the Board.

(2) For the purpose of carrying out its functions under this chapter, three members of the Board shall constitute a quorum and official action can be taken only on the affirmative vote of at least three members.

(3) The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier.

(4) The Board may, on its own motion or at the request of the

A-15

Secretary, remand a case to the administrative law judge for further appropriate action. The consent of the parties in interest shall not be a prerequisite to a remand by the Board.

(5) Notwithstanding paragraphs (1) through (4), upon application of the Chairman of the Board, the Secretary may designate up to four Department of Labor administrative law judges to serve on the Board temporarily, for not more than one year. The Board is authorized to delegate to panels of three members any or all of the powers which the Board may exercise. Each such panel shall have no more than one temporary member. Two members shall constitute a quorum of a panel. Official adjudicative action may be taken only on the affirmative vote of at least two members of a panel. Any party aggrieved by a decision of a panel of the Board may, within thirty days after the date of entry of the decision, petition the entire permanent Board for review of the panel's decision. Upon affirmative vote of the majority of the permanent members of the Board, the petition shall be granted. The Board shall amend its Rules of Practice to conform with this paragraph. Temporary members, while serving as members of the Board, shall be compensated at the same rate of compensation as regular members.

(c) Court of appeals; jurisdiction; persons entitled to review; petition; record; determination and enforcement; service of process; stay of payments

Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of Title 28. Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified. The orders, writs, and processes of the court in such proceedings may run, be served, and be returnable anywhere in the United States. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the court. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier. The order of the court allowing any stay shall contain a specific finding, based upon evidence submitted to the court and identified by

reference thereto, that irreparable damage would result to the employer, and specifying the nature of the damage.

(d) District court; jurisdiction; enforcement of orders; application of beneficiaries of awards or deputy commissioner; process for compliance with orders

If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred (or to the United States District Court for the District of Columbia if the injury occurred in the District). If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.

(e) Institution of proceedings for suspension, setting aside, or enforcement of compensation orders

Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section and section 918 of this title.

**33 U.S.C. § 928**

**§ 928. Fees for services**

(a) Attorney's fee; successful prosecution of claim

If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

(b) Attorney's fee; successful prosecution for additional compensation; independent medical evaluation of disability controversy; restriction of other assessments

If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation, within fourteen days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation, and thereafter utilizes the services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Secretary, as authorized in section 907(e)

A-18

of this title and offers to tender an amount of compensation based upon the degree or length of disability found by the independent medical report at such time as an evaluation of disability can be made. If the claimant is successful in review proceedings before the Board or court in any such case an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accord with the above provisions. In all other cases any claim for legal services shall not be assessed against the employer or carrier.

(c) Approval; payment; lien

In all cases fees for attorneys representing the claimant shall be approved in the manner herein provided. If any proceedings are had before the Board or any court for review of any action, award, order, or decision, the Board or court may approve an attorney's fee for the work done before it by the attorney for the claimant. An approved attorney's fee, in cases in which the obligation to pay the fee is upon the claimant, may be made a lien upon the compensation due under an award; and the deputy commissioner, Board, or court shall fix in the award approving the fee, such lien and manner of payment.

(d) Costs; witnesses' fees and mileage; prohibition against diminution of compensation to claimant

In cases where an attorney's fee is awarded against an employer or carrier there may be further assessed against such employer or carrier as costs, fees and mileage for necessary witnesses attending the hearing at the instance of claimant. Both the necessity for the witness and the reasonableness of the fees of expert witnesses must be approved by the hearing officer, the Board, or the court, as the case may be. The amounts awarded against an employer or carrier as attorney's fees, costs, fees and mileage for witnesses shall not in any respect affect or diminish the compensation payable under this chapter.

(e) Unapproved fees; solicitation; penalty

A person who receives a fee, gratuity, or other consideration on account of services rendered as a representative of a claimant, unless the consideration is approved by the deputy commissioner, administrative law judge, Board, or court, or who makes it a business to solicit employment for a lawyer, or for himself, with respect to a claim or award for compensation under this chapter, shall, upon conviction thereof, for each offense be punished by a fine of not more than $1,000 or be imprisoned for not more than one year, or both.

A-19

**33 U.S.C. § 930**

**§ 930. Reports to Secretary**

(a) Time for sending; contents; copy to deputy commissioner

Within ten days from the date of any injury, which causes loss of one or more shifts of work, or death or from the date that the employer has knowledge of a disease or infection in respect of such injury, the employer shall send to the Secretary a report setting forth (1) the name, address, and business of the employer; (2) the name, address, and occupation of the employee; (3) the cause and nature of the injury or death; (4) the year, month, day, and hour when and the particular locality where the injury or death occurred; and (5) such other information as the Secretary may require. A copy of such report shall be sent at the same time to the deputy commissioner in the compensation district in which the injury occurred. Notwithstanding the requirements of this subsection, each employer shall keep a record of each and every injury regardless of whether such injury results in the loss of one or more shifts of work.

(b) Additional reports

Additional reports in respect of such injury and of the condition of such employee shall be sent by the employer to the Secretary and to such deputy commissioner at such times and in such manner as the Secretary may prescribe.

(c) Use as evidence

Any report provided for in subsection (a) or (b) of this section shall not be evidence of any fact stated in such report in any proceeding in respect of such injury or death on account of which the report is made.

(d) Compliance by mailing

The mailing of any such report and copy in a stamped envelope, within the time prescribed in subsections (a) or (b) of this section, to the Secretary and deputy commissioner, respectively, shall be a compliance with this section.

(e) Penalty for failure or refusal to send report

Any employer, insurance carrier, or self-insured employer who knowingly and willfully fails or refuses to send any report required by this section or knowingly or willfully makes a false statement or misrepresentation in any such report shall be subject to a civil penalty not to exceed $10,000 for each such failure, refusal, false statement, or misrepresentation.

(f) Tolling provision

Where the employer or the carrier has been given notice, or the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier has knowledge, of any injury or death of an employee and fails, neglects, or refuses to file report thereof as required by the provisions of subsection (a) of this section, the limitations in subsection (a) of section 913 of this title shall not begin to run against the claim of the injured employee or his dependents entitled to compensation, or in favor of either the employer or the carrier, until such report shall have been furnished as required by the provisions of subsection (a) of this section.

**33 U.S.C. § 931**

**§ 931. Penalty for misrepresentation**

(a) Felony; fine; imprisonment

(1) Any claimant or representative of a claimant who knowingly and willfully makes a false statement or representation for the purpose of obtaining a benefit or payment under this chapter shall be guilty of a felony, and on conviction thereof shall be punished by a fine not to exceed $10,000, by imprisonment not to exceed five years, or by both.

(2) The United States attorney for the district in which the injury is alleged to have occurred shall make every reasonable effort to promptly investigate each complaint made under this subsection.

(b) List of persons disqualified from representing claimants

(1) No representation fee of a claimant's representative shall be approved by the deputy commissioner, an administrative law judge, the Board, or a court pursuant to section 928 of this title, if the claimant's representative is on the list of individuals who are disqualified from representing claimants under this chapter maintained by the Secretary pursuant to paragraph (2) of this subsection.

(2)(A) The Secretary shall annually prepare a list of those individuals in each compensation district who have represented claimants for a fee in cases under this chapter and who are not authorized to represent claimants. The names of individuals contained on the list required under this subparagraph shall be made available to employees and employers in each compensation district through posting and in such other forms as the Secretary may prescribe.

(B) Individuals shall be included on the list of those not authorized to represent claimants under this chapter if the Secretary determines under this section, in accordance with the procedure provided in subsection (j) of section 907 of this title, that such individual--

(i) has been convicted (without regard to pending appeal) of any

A-22

crime in connection with the representation of a claimant under this chapter or any workers' compensation statute;

(ii) has engaged in fraud in connection with the presentation of a claim under this or any workers' compensation statute, including, but not limited to, knowingly making false representations, concealing or attempting to conceal material facts with respect to a claim, or soliciting or otherwise procuring false testimony;

(iii) has been prohibited from representing claimants before any other workers' compensation agency for reasons of professional misconduct which are similar in nature to those which would be grounds for disqualification under this paragraph; or

(iv) has accepted fees for representing claimants under this chapter which were not approved, or which were in excess of the amount approved pursuant to section 928 of this title.

(C) Notwithstanding subparagraph (B), no individual who is on the list required to be maintained by the Secretary pursuant to this section shall be prohibited from presenting his or her own claim or from representing without fee, a claimant who is a spouse, mother, father, sister, brother, or child of such individual.

(D) A determination under subparagraph (A) shall remain in effect for a period of not less than three years and until the Secretary finds and gives notice to the public that there is reasonable assurance that the basis for the determination will not reoccur.

(3) No employee shall be liable to pay a representation fee to any representative whose fee has been disallowed by reason of the operation of this paragraph.

(4) The Secretary shall issue such rules and regulations as are necessary to carry out this section.

(c) False statements or representation to reduce, deny, or terminate benefits

A person including, but not limited to, an employer, his duly authorized agent, or an employee of an insurance carrier who knowingly and willfully makes a false

statement or representation for the purpose of reducing, denying, or terminating benefits to an injured employee, or his dependents pursuant to section 909 of this title if the injury results in death, shall be punished by a fine not to exceed $10,000, by imprisonment not to exceed five years, or by both.

**33 U.S.C. § 935**

**§ 935.  Substitution of carrier for employer**

In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this chapter may be most effectively discharged by the employer, and in order that the administration of this chapter in respect of such liability may be facilitated, the Secretary shall by regulation provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect to such liability, imposed by this chapter upon the employer, as it considers proper in order to effectuate the provisions of this chapter. For such purposes (1) notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier, (2) jurisdiction of the employer by a deputy commissioner, the Board, or the Secretary, or any court under this chapter shall be jurisdiction of the carrier, and (3) any requirement by a deputy commissioner, the Board, or the Secretary, or any court under any compensation order, finding, or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer.

**33 U.S.C. § 938**

**§ 938.  Penalties**

(a) Failure to secure payment of compensation

Any employer required to secure the payment of compensation under this chapter who fails to secure such compensation shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than $10,000, or by imprisonment for not more than one year, or by both such fine and imprisonment; and in any case where such employer is a corporation, the president, secretary, and treasurer thereof shall be also severally liable to such fine or imprisonment as herein provided for the failure of such corporation to secure the payment of compensation; and such president, secretary, and treasurer shall be severally personally liable, jointly with such corporation, for any compensation or other benefit which may accrue under the said chapter in respect to any injury which may occur to any employee of such corporation while it shall so fail to secure the payment of compensation as required by section 932 of this title.

(b) Avoiding payment of compensation

Any employer who knowingly transfers, sells, encumbers, assigns, or in any manner disposes of, conceals, secretes, or destroys any property belonging to such employer, after one of his employees has been injured within the purview of this chapter, and with intent to avoid the payment of compensation under this chapter to such employee or his dependents, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than $10,000, or by imprisonment for not more than one year, or by both such fine and imprisonment; and in any case where such employer is a corporation, the president, secretary, and treasurer thereof shall be also severally liable to such penalty of imprisonment as well as jointly liable with such corporation for such fine.

(c) Effect on other liability of employer

This section shall not affect any other liability of the employer under this chapter.

**33 U.S.C. § 948a**

**§ 948a.  Discrimination against employees who bring proceedings; penalties; deposit of payments in special fund; civil actions; entitlement to restoration of employment and compensation, qualifications requirement; liability of employer for penalties and payments; insurance policy exemption from liability**

It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter. The discharge or refusal to employ a person who has been adjudicated to have filed a fraudulent claim for compensation is not a violation of this section. Any employer who violates this section shall be liable to a penalty of not less than $1,000 or more than $5,000, as may be determined by the deputy commissioner. All such penalties shall be paid to the deputy commissioner for deposit in the special fund as described in section 944 of this title, and if not paid may be recovered in a civil action brought in the appropriate United States district court. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination: *Provided,* That if such employee shall cease to be qualified to perform the duties of his employment, he shall not be entitled to such restoration and compensation. The employer alone and not his carrier shall be liable for such penalties and payments. Any provision in an insurance policy undertaking to relieve the employer from the liability for such penalties and payments shall be void.

**42 U.S.C. § 1651**

**§ 1651.  Compensation authorized**

(a) Places of employment

Except as herein modified, the provisions of the Longshore and Harbor Workers' Compensation Act, approved March 4, 1927 (44 Stat. 1424), as amended [33 U.S.C.A. § 901 et seq.], shall apply in respect to the injury or death of any employee engaged in any employment--

(1) at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government; or

(2) upon any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States (including the United States Naval Operating Base, Guantanamo Bay, Cuba; and the Canal Zone); or

(3) upon any public work in any Territory or possession outside the continental United States (including the United States Naval Operating Base, Guantanamo Bay, Cuba; and the Canal Zone), if such employee is engaged in employment at such place under the contract of a contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) with the United States; but nothing in this paragraph shall be construed to apply to any employee of such a contractor or subcontractor who is engaged exclusively in furnishing materials or supplies under his contract;

(4) under a contract entered into with the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States and at places not within the areas described in subparagraphs (1)-(3) of this subdivision, for the purpose of engaging in public work, and every such contract shall contain provisions requiring that the contractor (and subcontractor or subordinate contractor with respect to such contract) (1) shall, before commencing performance of such contract, provide for

A-28

securing to or on behalf of employees engaged in such public work under such contract the payment of compensation and other benefits under the provisions of this chapter, and (2) shall maintain in full force and effect during the term of such contract, subcontract, or subordinate contract, or while employees are engaged in work performed thereunder, the said security for the payment of such compensation and benefits, but nothing in this paragraph shall be construed to apply to any employee of such contractor or subcontractor who is engaged exclusively in furnishing materials or supplies under his contract;

(5) under a contract approved and financed by the United States or any executive department, independent establishment, or agency thereof (including any corporate instrumentality of the United States), or any subcontract or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States, under the Mutual Security Act of 1954, as amended (other than title II of chapter II thereof unless the Secretary of Labor, upon the recommendation of the head of any department or other agency of the United States, determines a contract financed under a successor provision of any successor Act should be covered by this section), and not otherwise within the coverage of this section, and every such contract shall contain provisions requiring that the contractor (and subcontractor or subordinate contractor with respect to such contract) (A) shall, before commencing performance of such contract, provide for securing to or on behalf of employees engaged in work under such contract the payment of compensation and other benefits under the provisions of this chapter, and (B) shall maintain in full force and effect during the term of such contract, subcontract, or subordinate contract, or while employees are engaged in work performed thereunder, the said security for the payment of such compensation and benefits, but nothing in this paragraph shall be construed to apply to any employee of such contractor or subcontractor who is engaged exclusively in furnishing materials or supplies under his contract;

(6) outside the continental United States by an American employer providing welfare or similar services for the benefit of the Armed Forces pursuant to appropriate authorization by the Secretary of Defense;

irrespective of the place where the injury or death occurs, and shall include any injury or death occurring to any such employee during transportation to or from his

A-29

place of employment, where the employer or the United States provides the transportation or the cost thereof.

(b) Definitions

As used in this section--

(1) the term "public work" means any fixed improvement or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project;

(2) the term "allies" means any nation with which the United States is engaged in a common military effort or with which the United States has entered into a common defensive military alliance;

(3) the term "war activities" includes activities directly relating to military operations;

(4) the term "continental United States" means the States and the District of Columbia.

(c) Liability as exclusive

The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

(d) "Contractor" defined

As used in this section, the term "contractor" means any individual, partnership, corporation, or association, and includes any trustee, receiver, assignee, successor, or personal representative thereof, and the rights, obligations,

liability, and duties of the employer under such Longshore and Harbor Workers' Compensation Act [33 U.S.C.A. § 901 et seq.] shall be applicable to such contractor.

(e) Contracts within section; waiver of application of section

The liability under this chapter of a contractor, subcontractor, or subordinate contractor engaged in public work under subparagraphs (3) and (4), subdivision (a) of this section, and the conditions set forth therein, shall become applicable to contracts and subcontracts heretofore entered into but not completed at August 16, 1941, and the liability under this chapter of a contractor, subcontractor, or subordinate contractor engaged in performance of contracts, subcontracts, or subordinate contracts specified in subparagraph (5), subdivision (a) of this section, and the conditions set forth therein, shall hereafter be applicable to the remaining terms of such contracts, subcontracts, and subordinate contracts entered into prior to but not completed on the date of enactment of any successor Act to the Mutual Security Act of 1954, as amended, and contracting officers of the United States are authorized to make such modifications and amendments of existing contracts as may be necessary to bring such contracts into conformity with the provisions of this chapter. No right shall arise in any employee or his dependent under subparagraphs (3) and (4) of subdivision (a) of this section, prior to two months after the approval of this chapter. Upon the recommendation of the head of any department or other agency of the United States, the Secretary of Labor, in the exercise of his discretion, may waive the application of this section with respect to any contract, subcontract, or subordinate contract, work location under such contracts, or classification of employees. Upon recommendation of any employer referred to in paragraph (6) of subsection (a) of this section, the Secretary of Labor may waive the application of this section to any employee or class of employees of such employer, or to any place of employment of such an employee or class of employees.

(f) Liability to prisoners of war and protected persons

The liability under this chapter of a contractor, subcontractor, or subordinate contractor engaged in public work under paragraphs (1), (2), (3), and (4) of subsection (a) of this section or in any work under paragraph (5) of subsection (a) of this section does not apply with respect to any person who is a prisoner of war or a protected person under the Geneva Conventions of 1949 and who is detained or utilized by the United States.

A-31

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2014, I electronically filed the foregoing Corrected Joint Brief for Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.

I further certify that on June 6, 2014, an electronic copy of the foregoing Corrected Joint Brief for Defendants-Appellees was served electronically by the Notice of Docket Activity on registered CM/ECF participants, and a paper copy was served by first-class mail upon the following:

Scott J. Bloch
LAW OFFICES OF SCOTT J. BLOCH, PA
1050 17th Street, N.W.
Suite 600
Washington, DC 20036
(202) 496-1290
Fax: (202) 478-0479
Email: sbloch@bcounsel.com


Dated: June 6, 2014                    /s/ Geoffrey M. Sigler
                                        Geoffrey M. Sigler
                                        GIBSON, DUNN & CRUTCHER LLP
                                        1050 Connecticut Avenue, N.W.
                                        Washington, DC 20036
                                        (202) 955-8500
                                        gsigler@gibsondunn.com

*Counsel for Appellee American International Group, Inc.*