ORAL ARGUMENT NOT YET SCHEDULED

**No. 13-7165**
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

DANIEL BRINK, ET AL.,
                                   Plaintiffs-Appellants,


v.


CONTINENTAL INSURANCE COMPANY, ET AL.,
                                   Defendants-Appellees.
_____

On Appeal from a Final Judgment of the
United States District Court for the District of Columbia
_____

**OPENING BRIEF OF PLAINTIFFS-APPELLANTS**
_____

Joshua T. Gillelan II                    Scott J. Bloch
Longshore Claimants' Nat'l Law Center     1050 17th Street, NW, Suite 600
1101 30th Street, N.W., Suite 500         Washington, DC 20036
Washington, DC 20007                      (202) 496-1290
(202) 625-8331                            scott@scottblochlaw.com
JGillelan@comcast.net                     *Counsel for Plaintiffs*

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

Pursuant to Circuit Rules 26.1 and 28(a)(1), undersigned counsel for Plaintiffs hereby provides the following information:

**(A)  Parties and Amici**

<u>Plaintiffs</u>

Daniel Brink

Ronald Bell

Merlin Clark

Marcie Clark

C.J. Mercadante

Johann Steenberg

Steven Thompsen

Jack Jones

Fred Busse

Mark Griffin

Wallace Byars

Antonio Ambrose

Cody McAnally

Patrick J. Brewer

Coenrad Theunissen

Malik Hadi

Jafar Joseph Bayatafshar

Robert Biddle

Margaretha Bezuidenhout

Harbee Kreesha

Mohsen Alsaleh

Gisela Maria Fourie

Mbusi Cele

Marlene Gericke

Nicky Pool

Mark McLean

Allen Porch, III

Catharina Louw

Surita Swart

Christo Engelbrecht

Desire Tablai, as guardian and
natural parent of Diante Tablai,
a minor, and Migual Tablai, a minor

Christine Holguin-Luge

<u>Defendants</u>

Continental Insurance Company

ACE American Insurance Company

Zurich Insurance

Tacticor International

DynCorp International, LLC

Northrop Grumman Corporation

Halliburton Corporation

Ronco Consulting

Wackenhut Services International

Global Linguist Solutions, LLC

Siegler, Inc.

US Investigations Services, LLC

Combat Support Associates

AECOM Government Services, Inc.

Erinys Ltd.

Khudairi Group

Exelis Systems Corporation

USIS International, Inc.

L-3 Services, Inc.

Kellogg Brown & Root Services, Inc.

Academi, LLC

American International Group, Inc.


Parties That Appeared Before the District Court, But Not Parties in This Appeal

Parsons Group ITT Corp.

Titan Corporation

XE Holdings, LLC

AIG Insurance Company

CNA Global Insurance

Kellogg Brown & Root, LLC


**(B)  Rulings Under Review**

   This appeal challenges the Memorandum Decision and Final Order issued by the U.S. District Court for the District of Columbia in Brink, et al., v. XE Holdings, et al., Case No. 1:11-cc-01733-EGS (Sept. 26, 2013), dismissing the action below.

**(C)  Related Cases**

The case under review has never previously been before this Court.  Counsel is aware of no related cases currently pending in any other court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.............ii

TABLE OF CONTENTS………………………………………………………vii

TABLE OF AUTHORITIES ................................................................. ix

STATUTES AND REGULATIONS………………………………………xiv

GLOSSARY.......................................................................................xv

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT ................................................. 2

STATEMENT OF ISSUES ............................................................ 3

STATEMENT OF THE CASE ....................................................... 4

    Nature of the Case………………………………………………………..4

    Course of Proceedings………………………………………………….5

    Disposition Below………………………………………………………..6

    Statement of Facts…………………………………………………...………6

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT ............................................................................. 15

    I.   THE EXCLUSIVE REMEDY PROVISION OF THE DEFENSE BASE ACT DOES NOT GIVE CARTE BLANCHE  TO EMPLOYERS OR INSURANCE CARRIERS TO INTENTIONALLY, WILLFULLY OR RECKLESSLY HARM CLAIMANTS AND THEIR FAMILIES, FINANCIALLY, EMOTIONALLY,  OR PHYSICALLY……………..15

        A. Plaintiffs' Injuries Fall Within Clear Exceptions to the Exclusive Remedy Doctrine Because they Were Caused by Intentional, Malicious, or Fraudulent Actions of Defendants and Were Not "Injuries" Within the Act's Definition………………………………21

B.  The LHWCA/DBA Do Not Preempt Plaintiffs' State Law Or Federal Causes Of Action Because They Are Limited By Their Own Language And Structure……………………………….……....29

C.  Injuries Sustained Outside The Course Or Scope Of Employment Are Offered No Exclusive Remedy Protection, and Plaintiffs' Causes Of Action Do Not Stem From DBA Injury Claims For Benefits – Requiring Reinterpretation of <u>Hall</u> or Reversal……………….….42

II. THE RICO ACT IS NOT PREEMPTED BY DBA AND THE CLAIMS HAVE BEEN STATED WITH PARTICULARITY SHOWING A RICO ENTERPRISE THAT CAUSALLY HARMED PLAINTIFFS…..……47

III. IT WAS ERROR FOR THE COURT TO DISMISS THE ADA CLAIMS FOR FAILURE TO STATE A CLAIM…………………..51

IV.    REFUSAL TO ALLOW AMENDMENT OF THE SAC WAS AN ABUSE OF DISCRETION……………………………….……55

CONCLUSION………………………………………………………...58

CERTIFICATE OF COMPLIANCE.......................................................59

CERTIFICATE OF SERVICE ...............................................................60

# <u>TABLE OF AUTHORITIES</u>

PAGE

**CASES:**

Aguilera v. Inservices Inc., …………………………………………...…..45
905 So. 2d 84 (Fla. 2005)

Atkinson v. Gates, McDonald & Co., ………………...……………...……26, 34-35
838 F.2d 808 (5th Cir. 1988)

Boudoin v. Bradley, …………………………………………………37
549 So.2d 1265 (La. App. 1989)

\* Bowen v. Aetna Life,…………………………………………...……………27
512 So.2d 248 (Fla. App. 1987)

Calbeck v. Travelers Ins. Co., …………………………………...…..19
379 U.S. 114 (1962)

Choharis v. State Farm Fire & Cas. Co., ……………………………………41
961 A.2d 1080 (D.C. 2008)

Cleveland v. Policy Management Systems Corp., …………………………...54
526 U.S. 795 (1999)

Commonwealth of Pennsylvania v. Nelson,……………………………………29
350 U.S. 497 (1956)

Continental Casualty Insurance Co v. McDonald, ………………………………37
567 So.2d 1208 (Ala. 1990)

Correa v. Pennsylvania Manufacturers Association Insurance Co., ………..…..…36
618 F. Supp. 915 (D. Del. 1985)

Crosby v. SAIF Corp.,……………………………………………………47
73 Or.App. 372, 699 P.2d 198 (1985)

Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta,………………………….…..29
458 U.S. 141 (1982)

\* Fisher v. Halliburton,……………………………………....………..32, 39
667 F.3d 602 (5th Cir. 2012)

\* Foman v. Davis, ……………………………………………….…56
371 U.S. 178 (1962)

Gallagher v. Bituminous Fire & Marine Insurance Co., ………………....…….47
303 Md. 201, 492 A.2d 1280 (1985)

Griva v. Davison,……………………………………………..…..39
637 A.2d 830 (D.C. 1994)

Hais v. Smith, ……………………………………....……….40-41
547 A.2d 986 (D.C. 1988)

Halberstam v. Welch,……………………………………………..39
705 F.2d 472 (D.C. Cir. 1983)

\* Hall v. C & P Tel. Co.,……………………………………….…..42-45
809 F.2d 924 (D.C. Cir. 1987)

Herbert v. Mid South Controls & Services,……………………………....…..38
688 So.2d 1171 (La. App. 1996)

Hernandez v. General Adjustment Bureau, ……………………………………36
199 Cal. App.3d 999, 245 Cal. Rptr. 288 (1988)

Hitt v. Newport News Shipbldg. & D.D. Co., ………………………………26
38 BRBS 47 (BRB 2004)

\* Houston v. Bechtel Assoc. Prof'l Corp., …………………………20, 33, 41-42, 47
522 F.Supp. 1094 (D.D.C. 1981)

Industrial Comm'n v. McCartin, ………….....…………………………19
330 U.S. 622 (1947)

x

Jones v. Halliburton Co.,……………………...…………………………………..41
791 F.Supp.2d 567 (S.D. Tex. 2011)

Kane v. Federal Match Corp., ………………………...……………………27-28
5 F.Supp. 507 (M.D. Pa. 1934)

Kuhlman v. Crawford & Co., ………………………..…………………...…27
2002 U.S. Dist. LEXIS 28223, No. 01-6036-CIV (S.D. Fla. Jan. 23, 2002)

LaCour v. Lankford Co., Inc.,………………………………………………….37
287 S.W.3d 105 (Tex. App. 2009)

Ladner v. Secretary of H.E.W., ……………………………………………….40
304 F.Supp. 474 (S.D. Miss. 1969)

Lawrence v. U.S., …………………………………………...………………41
631 F. Supp. 631 (E.D. Pa. 1982)

Leathers v. Aetna Cas. & Sur. Co.,……………………….………………….41
500 So.2d 451 (Miss. 1986)

Linn v. United Plant Guard Workers of America, Local 114, ……………………28
383 U.S. 53 (1966)

Machado v. National Steel & Shipbuilding Co.,…………………………….41
9 BRBS 803 (BRB 1978)

\*  Martin v. Travelers' Insurance Co., ………………………..………......26, 43-45
497 F.2d 329 (1st Cir. 1974)

McCutchen v. Liberty Mut. Ins. Co.,………………………………………..46
699 F.Supp. 701 (N.D. Ind. 1988)

McDonnell Douglas Corp. v. Green, ………………………………...53, 55
411 U.S. 792 (1973)

Morrison–Knudsen Constr. Co. v. Director, OWCP,…..........................................18
461 U.S. 624 (1983)

Moss v. Dixie Mach. Welding & Metal Works, Inc.,……………………..………37
617 So.2d 959 (La. App. 4th Cir.)

Newport News Shipbuilding & Dry Dock Co. v. Brown, ………………...………25
376 F.3d 245 (4th Cir. 2004)

Palermo v. Letourneau Tech., Inc., …………………………………….....……..41
542 F.Supp.2d 499 (S.D. Miss. 2008)

Paul v. Howard Univ., ………………………………………………………41
754 A.2d 297 (D.C. 2000)

Pettengill v. Curtis, ………………………………………………….....…..41
584 F. Supp. 2d 348 (D. Mass. 2008)

Reddy v. Cascade General, Inc.,……………………………………….....…37
227 Or.App. 559 (Or. App. 2009)

* Rosen v. TRW, Inc., ……………………………………………..….....…..56
979 F.2d 191 (11th Cir. 1992)

* Ross v. Dyncorp, …………………………………………………….......31
362 F.Supp.2d 344 (D.D.C. 2005)

Royal Indemnity Co. v. Puerto Rico Cement Corp., ……………………………24
142 F.2d 237 (1st Cir.), cert. denied, 323 U.S. 756 (1944)

Rustin v. District of Columbia, ………………………………………..…..20
491 A.2d 496 (D.C. 1985)

Sample v. Johnson, ………………………………………………………35
771 F.2d 1335 (9th Cir. 1985)

Strickland v. Birmingham Bldg. & Remodeling, ……………………….…..46
449 So.2d 1242 (Ala. 1984)

Sun Ship, Inc. v. Pennsylvania, ………………………………………..19
447 U.S. 715 (1980)

Tahara v. Matson Terminals, Inc., …………………………………………..…25
511 F.3d 950 (9th Cir. 2007)

* Talik v. Fed. Marine Terminals, ……………………………………………....33
117 Ohio St.3d 496. 885 N.E.2d 204, cert. denied, 555 U.S. 880 (2008)

U.S. ex rel. Steury v. Cardinal Health, Inc., …………………………...………56
625 F.3d 262 (5th Cir. 2010)

University of Rochester v. Hartman, …………………………………………...24
618 F.2d 170 (2d Cir. 1980)

Wolf v. Scott Wetzel Services Inc., …………………………………..…..47
113 Wash.2d 665, 782 P.2d 203 (1989)

Young v. Hartford Accident & Indem. Co., …………………………...…………46
492 A.2d 1270 (Md. 1985)

## STATUTES AND REGULATIONS

18 U.S.C. § 1861, et seq.,…………………………..……………………………4, 5

    "Racketeer Influenced and Corrupt Organizations Act"

33 U.S.C. § 901, et seq.,   …………………………...…………………………4, 5, 51

    "Longshore and Harbor Workers' Compensation Act"

*     § 5(a), 33 U.S.C. § 905(a)................................................ 20, *passim*

42 U.S.C. § 1651, et seq.,…………………..……….…...…………………17, 42

    "Defense Base Act"

*     § 1(c), 42 U.S.C. § 1651(c).........................................................17

42 U.S.C. § 12101 et seq.,…………………………………………………4, 5

    "Americans with Disabilities Act"

## <u>MISCELLANEOUS</u>

Larson, Arthur and Larson, Lex K., ………………………………………20-21, 32
Larson's Workers' Compensation Law (2011)

## GLOSSARY

"ADA" means the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

"DBA" means the Defense Base Act, 42 U.S.C. §§ 1651-54.

"DOL" means the United States Department of Labor.

"Longshore Act" and "LHWCA" mean the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901-50.

"RICO" means the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1861, et seq.

# **INTRODUCTION**

The Plaintiffs are workers injured overseas in the course of employment for contractors with the United States, within the coverage of the DBA; medical services providers to such workers; spouses of injured workers; and survivors of workers who died as a result of injuries sustained in such work. They brought a class action suit against the Defendants – DBA contractor-employers and their insurers – alleging damages including, inter alia, that Defendants, after accepting claims as covered and legally valid, failed or refused to provide medical benefits owed to Plaintiffs under the DBA; cut off medical benefits owed under the DBA; delayed provision of medical benefits or compensation owed under the DBA, made false statements and misrepresentations regarding payment of DBA benefits while reducing, denying or ignoring Plaintiffs' medical needs; failed to comply with DOL orders to pay DBA benefits; threatened or discouraged workers from making DBA claims; and terminated Plaintiffs' employment after they were disabled by their DBA-covered injuries for pursuing claims under the DBA or because of their qualified disabilities.

The trial court's interpretation of the statute precludes any and all claims which might be brought by any plaintiff that even remotely touch upon a DBA-covered claim. Since the DBA only provides remedies in the form of benefits for employment-related injuries, and penalties for failure to pay without filing the

appropriate one-page form, the Plaintiffs' claims do not fall under the purview of

the Act.  Given the existing exceptions to DBA coverage already recognized by

other courts, the court below was too restrictive in dismissing all of the Plaintiffs'

claims for failure to exhaust administrative remedies which do not exist, and

holding that they fall within the DBA's exclusive remedy provision.

## JURISDICTIONAL STATEMENT

The district court below had jurisdiction because this was a class-action suit

for damages under the Class Action Fairness Act where there was diversity of

jurisdiction, and federal questions under the Americans with Disabilities Act and

RICO.  In addition, several of the Defendants had the requisite minimum contacts

to bring them into the jurisdiction of the District of Columbia.  This Court has

jurisdiction over the present appeal, because it is from a final judgment which

disposed of all parties' claims, and Plaintiffs filed a timely Notice of Appeal.

The district court issued an Order and Memorandum granting the

Defendants' "Combined Motion to Dismiss With Prejudice" [JA 255], following

which Plaintiffs filed a "Motion for Reconsideration or to Amend" [JA 291].

Subsequently the court denied that Motion as well as a Motion to Amend the

Second Amended Complaint, and entered Judgment for the Defendants on

September 26, 2013 [JA 341].  The Plaintiffs' Notice of Appeal was timely filed

on October 9, 2013, pursuant to Fed. R. App. P. 4(a)(1)(B) [JA 343].

## STATEMENT OF ISSUES

1. Whether an employer, insurance carrier, or third party may escape liability for torts, ADA, RICO, and breach of the covenant of good faith and fair dealing, regardless of how extreme the conduct, when the harm and duty are not "on account of" the covered employment injury so as to be within the scope of the Longshore Act's or DBA's exclusive-remedy provision, but instead result from the defendants' intentional, reckless, and willful actions outside of any employment activities.

2. Whether an employer and insurance carrier who willfully leave a burn victim to die, after being warned he will die if they refuse to transport him, and refuse to transport him timely in order to let him die, are subject to liability for infliction of mental and emotional distress and other intentional torts.

3. Whether a third party non-employer of a plaintiff is liable in tort for intentional threats of murder and attempted rape of a woman held against her will in a sleeping container, or may take advantage of the prime contractor's exclusive remedy defense.

4. Whether an employer and carrier are liable for intentionally causing mental and emotional distress and financial ruin to a worker who has his leg and other body parts blown off in an IED in Iraq to have his wheelchair repossessed,

3

and his furniture and home foreclosed on leaving him homeless, after accepting the claim but then lying and refusing to pay medical benefits over $100,000.

5. Whether the Court erred in expanding the exclusive remedy doctrine to include any claim that could ever be brought against an employer or insurance carrier due to the DBA language "exclusive of all other remedies," when that provision referred only to taking away concurrent state workers compensation jurisdiction and remedies?

6. Whether an employer who terminates an employee with a clear working disability, and is limited in major life functions of walking, thinking, breathing, and working, but who requested reasonable accommodations to work, is liable under the Americans with Disabilities Act.

7. Whether it is an abuse of discretion under Rule 15 to fail to permit plaintiffs and those they represent as class members to amend their complaint to fix pleading errors when to do so would conform to the facts.

## STATEMENT OF THE CASE

### Nature of the Case

This is a class action for damages, including violations of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 948a, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1861, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and tort

4

claims, including but not limited to intentional infliction of emotional distress,

unconscionable trade practices, breach of the covenant of good faith and fair

dealing, fraud and conspiracy, as laid out in the Second Amended Complaint

(hereafter SAC)  which is part of the record on appeal.  The Plaintiffs are

individuals adversely affected by the willful or negligent actions of the Defendants,

suffering emotional, physical, and financial damages as a result.  Defendants are

employers, insurance carriers, and third parties.

## Course of Proceedings

Plaintiffs originally filed suit in the U.S. District Court for the District of

Columbia on September 26, 2011.  On November 22, 2011 the Plaintiffs filed their

First Amended Complaint, and on April 23, 2012, the Plaintiffs filed their Second

Amended Complaint [JA 46].  This included eight separate counts for violations of

RICO, 18 U.S.C. § 1961 et seq.; bad faith; tortious breach of the covenant of good

faith; unconscionable, fraudulent and deceptive trade practices; civil conspiracy;

violations of the ADA, 42 U.S.C. § 12101 et seq.; outrage; and wrongful death.

Defendants filed various combined and individual Motions to Dismiss, arguing that

the statutes governing DBA claims prohibit bringing any civil claims due to the

exclusive remedy of the DBA.

**Disposition Below**

In considering the tort, RICO, and ADA claims brought by the Plaintiffs, the district court held that Plaintiffs' action was barred due to the exclusivity provision of the DBA:

> The allegations in the Complaint are extremely serious and deeply disturbing. However, Congress has expressly set forth its intention that employers' liability under the DBA "shall be exclusive and in place of all other liability." Based on the binding authority from this Circuit, as well as persuasive authority from several other circuits, the Court finds that all of Plaintiffs' state law claims are barred by the exclusive scheme set forth in the DBA and the LHWCA.

[JA 278-279]. The court also held that Plaintiffs failed to properly plead the elements of the ADA claims, and refused to allow amendment of the SAC to fix any perceived technical pleading problems. This appeal followed.

**Statement of Facts**

The Second Amended Complaint ("SAC") lists the alleged tortious acts giving rise to causes of action against the Defendants based on the deliberate, knowing and intentional efforts to cause foreseeable harm to Plaintiffs and their families, their credit, their finances and personal property, including loss of necessary medical treatment, increased or new physical and psychological harms through elaborate bad-faith ruses, in many instances violating their representations, contracts, or promises to Plaintiffs and those similarly situated. According to the Department of Labor ("DOL"), over 87,505 persons reported injuries and deaths

6

since the beginning of the Iraq and Afghanistan campaigns.[1]  Injuries to foreign

contractors are likely much higher, but Defendants have systematically denied they

are covered by insurance, or refused to report these deaths and injuries, covering

them up or pointing at subcontractors, with as many as 10,000 contractors

specifically required to be covered by the Contractors and Insurance Carriers

(CNA having exclusive contract with Department of State and Army Corps of

Engineers to provide DBA coverage) having utterly deprived them and their

families of coverage or benefits.[2]

     Defendants' fraudulent acts include promising to provide benefits and then

refusing [JA 121], being instructed to provide benefits by DOL and refusing to do

so [JA 96-97], paying benefits for medical treatment but stopping payment on

checks [JA 181], telling injured victims they will be treated but then hiring doctors

they know will misrepresent the facts in court in order to avoid payment [JA 137-

39], lying repeatedly to doctors and to the DOL concerning payment of medical

expenses, reimbursements, incorrectly paying disability benefits, and other matters

shown by specific dates and circumstances in the 200-plus-page SAC.  The

Contractors and Insurance Carriers worked together to accomplish the "overall

---

[1] See http://www.dol.gov/owcp/dlhwc/lsdbareports.htm,
http://www.dol.gov/owcp/dlhwc/dbaallemployer.htm.

[2] [JA 229-33].

objective" of depriving Plaintiffs of benefits, and are therefore liable for their

conspiracy. Both the contractors and their insurers participated in the "enterprise"

set up to discourage claims, to force claimants into bankruptcy and loss of credit,

and to force them to accept any settlement offered for their valid and compensable

claims.[3]

The actions of Defendants were deliberate and designed to inflict injury, or

done knowingly and foreseeing serious injury to Plaintiffs. For example, Daniel

Brink was involved in an IED explosion in Iraq on the job, had his legs and parts

of his hands torn off, suffered a brain injury, had multiple surgeries, PTSD, and

complications for years. He was at their mercy. Defendants DynCorp and CNA

Insurance accepted his claim, but over the next few years harmed him deliberately

and lied about it to DOL, including having his wheelchair repossessed for non-

payment to the South African supplier, and another wheelchair not delivered from

a stop-payment of a check. CNA lied to DOL, authorizing $150,000 in medical

expenses but refusing to pay for them for 3 years, causing him to lose his furniture

and house and become homeless, while CNA misrepresented to him and DOL that

it had paid the bills. Doctors would no longer work with him or his nurse provider,

and he had no psychiatrist for 2 years despite his extreme PTSD and brain injury.

DynCorp pretended to offer him a job, induced him to make improvements to his

---

[3] [JA 55-60, 69-93, more fully outlined from JA 94-232].

home (before he lost it), and to travel to their headquarters and CNA's headquarters, costing him around $20,000. They reneged after inducing him to rely on promises. He lost his wife and became estranged from his children as a result of the Defendants' actions.[4]

Mr. Mercadante, severely injured while working for Blackwater, was told that medical treatment was approved, but payment was then denied or unauthorized when he attended appointments. His life-threatening injuries became worse, exacerbating his psychological issues. The SAC describes incidents where CNA's attorney misrepresented vital information to the official DOL examiner regarding benefits. These claims are corroborated by Dr. Afield, one of Mr. Mercadante's doctors, who wrote: "I must say in 49 years of practice that I have had in medicine, this is really rather outrageous and I can see why the man is so upset…I feel I am obligated to inform somebody that what they are doing is killing him. This is just not the way you treat your people and it is certainly not the way you treat people coming back from Iraq."[5]

Merlin Clark suffered massive injuries from an ordnance explosion, and his DBA claim was accepted, but he was repeatedly lied to regarding benefits supposedly paid which never were, including the carrier promising to pay during

---

[4] [JA 178-85]
[5] [JA 117-32]

9

hearings, but refusing to pay thereafter. The SAC lists other, multiple

misrepresentations made by CNA and Ronco.[6]

As a result, Mr. Clark gave up appropriate medical treatment, financial

stability, psychological stability and treatment, medications, and medical devices

needed for recovery.  Additionally, Marcie Clark gave up her career to care for Mr.

Clark, and both have lost enjoyment of life.  Mr. Clark's daughter also suffered

from the financial and psychological hardship on the Clark family.  Marcie speaks

for hundreds of spouses and children intentionally and foreseeably harmed as

Defendants indiscriminately beat them into submission, when they stepped in to

care for catastrophically injured and psychologically scarred loved ones.[7]

Plaintiff Holguin-Luge was sexually assaulted by a KTTC employee who

threatened to kill her if she told anyone.[8]  Plaintiff Biddle was willfully injured

when he refused his TBI treatment by Blackwater and CNA, who misrepresented

his condition to DOL in order to avoid paying him and providing proper medical

care.[9] Plaintiff Thompson was refused PTSD treatment after KBR and AIG asked

their own doctor to rewrite his report to claim exaggeration of symptoms,

---

[6] [JA 104-107]

[7] [JA 108-1l0]; Declaration of Marcie Hascall Clark attached to Memorandum in
Opposition to WSI/RONCO's Motion to Dismiss, incorporated herein by reference
as if set out in full.

[8] [JA 173, 174, 175]

[9] [JA 162]

demonstrating a bad-faith refusal to pay compensation.[10]  Plaintiff Busse was

awarded benefits, yet they were delayed three years while Defendants SEII and

AIG fraudulently sought multiple doctor's opinions, when they did not like what

they heard, causing Mr. Busse to suffer new conditions requiring additional

surgery and great expense, and mental injury not originally caused by the on the

job injury; AIG even sent a forged check that cost him dearly at the bank and a

federal investigation.[11]  Plaintiff Pool was blackballed by most medical providers

in South Africa after CNA's refusal to settle its accounts with her, causing her

humiliation.[12] Plaintiff Louw was harmed as a result of DynCorp's/CNA's neglect

to accept her psychological disability and refusal to pay her.[13]

　　　　Injuries suffered by the Plaintiffs were the direct result of Defendants'

conduct.  There are no intervening or superseding causes to which Defendants may

point that break the chain of causation. Defendants made promises to pay.  They

broke those promises. And, Plaintiffs have suffered tremendously as a result.[14]


### SUMMARY OF ARGUMENT

_____

[10] [JA 137]
[11] [JA 157-58]
[12] [JA 197]
[13] [JA 215]
[14] [JA 69-93, and with specificity as to each named representative Plaintiff JA 94-232]

**I.** Contrary to the reasoning of the district court, the exclusive-remedy provision of the Defense Base Act (DBA) has no bearing on any of Plaintiffs' claims. Its terms and intent are limited to foreclosing relief, for injuries within the Act's coverage, under any *other workers'-compensation* law. The Longshore Act's own exclusive-remedy provision – which Plaintiffs acknowledge is within the DBA's general incorporation of the Longshore Act – is the only one relevant to actions for "damages at law or in admiralty," and it is that provision whose preclusive scope is actually at issue.

Section 5(a) of the Longshore Act makes the Act's remedies "exclusive of all other liability *of such employer* to the employee . . . at law or in admiralty *on account of such injury or death*," unless the employer has failed to carry the required insurance. An "injury" within the Act is defined as only an "accidental injury arising out of and in the course of employment" or an occupational or consequent disease or infection. None of the injuries – physical, psychological, and to property – for which Plaintiffs seek redress was an "injury" within this definition, so as to be within the scope of § 5(a)'s preclusion: some were not "accidental" but intentional; *none* arose out of or in the course of employment, but in most instances occurred off the job while the *former* employee was disabled, and in other instances to Plaintiffs who *never had been* covered "employees" but had provided medical services or supplies to injured workers; and in most

instances the Defendants who caused the injuries were not even the "employer[s]" whom the terms of § 5(a) solely immunize.  Section 5(a) does not protect anyone but the employer, and does not allow even an employer, much less an insurance carrier or its agent, to cause harm to DBA claimants or their families intentionally, willfully, or recklessly with impunity. Plaintiffs have alleged outrageous, egregious types of harm inflicted upon them by the Defendants'  intentional, malicious, or fraudulent actions, nearly all of which occurred when Plaintiffs were no longer (if they ever had been) Defendants' employees.  These were not "injuries" under the Act, and Plaintiffs do not seek damages "on account of injur[ies]" under the Act, and thus they fall outside  the Longshore Act's exclusive remedy provision.

The Longshore Act (alone and as extended by the DBA, without distinction) provides administrative remedies for wage loss and medical benefits "resulting from" an "injury," but those remedies are not available for the types of harm suffered by the Plaintiffs in this case. Previous opinions treating § 5(a) as immunizing the employer's *insurer* for tortious conduct *in relation to its responsibility to provide benefits after* an on-the-job injury have relied on the notion that the Act itself provides remedies for such conduct, in the form of "penalties" for unreasonable or bad-faith delays in payment. On the contrary, none of the provisions on which those opinions have relied has anything to do with the wrongfulness of the insurer's (or self-insured employer's) conduct, and the

13

administrative agency (the Department of Labor's OWCP) does not regulate insurers' conduct with respect to claims in any way.  Nothing in the Act supports extending the scope of the exclusive-remedy provision of § 5(a) beyond its terms.

**II.**  The RICO Act is not preempted by the Longshore Act or DBA, and Plaintiffs' claims below were stated with particularity, showing that there was a RICO enterprise which harmed their property.  Such damages are not "injuries" which would come under the exclusivity provision of the DBA.  Moreover, the trial court erred in holding that there were administrative remedies available under the DBA to those who have suffered damages from the result of a criminal enterprise designed to injure the Plaintiffs' property.  The court failed to indicate what they were for the simple reason that there are none to be had.

**III.**  It was plain error for the court below to dismiss Plaintiffs' claims arising under the Americans with Disabilities Act on the grounds that the Plaintiffs provided insufficient proof of their disabilities.  The three named Plaintiffs making ADA claims all suffer from well-documented, very serious injuries that prevented them from returning to their previous work; each requested and was denied accommodation to enable him or her to return to work, and thereby had made out just such a prima facie case.  The court committing reversible error by examining the evidence in the light most favorable to the Defendants, the moving party.

14

**IV.**  Finally, the lower court's refusal to allow amendment of Plaintiffs' Second Amended Complaint was an abuse of judicial discretion.  The defects the district court perceived in the amended complaint should have been cured by further amendment, rather than resulting in dismissal with prejudice.  Given that the grant of a Rule 12(b)(6) motion extinguishes a plaintiff's claims, the trial court should have allowed amendment to resolve any perceived uncertainties pursuant to Rule 15(a)(2).

## ARGUMENT

### I.  THE EXCLUSIVE REMEDY PROVISION OF THE DEFENSE BASE ACT DOES NOT GIVE CARTE BLANCHE  TO EMPLOYERS OR INSURANCE CARRIERS TO INTENTIONALLY, WILLFULLY OR RECKLESSLY HARM CLAIMANTS AND THEIR FAMILIES, FINANCIALLY, EMOTIONALLY,  OR PHYSICALLY

The trial court found that all of the Plaintiffs claims, whether arising in tort, or from RICO, ADA, etc., were barred, because Plaintiffs had not yet exhausted administrative remedies, and the DBA provided the only remedy for any misconduct by Defendants, regardless of intent or whether the conduct related to the actual work injury.  This is a fundamental error, and an overly broad and incorrect reading of both the DBA and LHWCA.  Because of this, and the fact that the trial court was interpreting existing statutory provisions, the standard of review is *de novo*, with no deference due to the opinion below.

15

The key issue is the scope of the exclusive remedy provisions of the DBA. Plaintiffs argue that those provisions are not so all-encompassing that any matter touching upon a DBA claim precludes any civil action. Whatever the ruling of this court, it will be making new law, for no court has definitively ruled on this issue. Plaintiffs argue that the plain meaning of the statute is that only injuries arising out of the workplace come under the DBA, not subsequent injuries resulting from intentional, non-employment-related acts.

The causes of action herein arose through (a) intentional actions (b) taken outside the scope of the covered employment, and in the cases of some Plaintiffs (c) not even directed at an injured employee or survivor. Deliberate, intentional, and malicious harm was inflicted upon DBA claimants, their survivors, and medical providers with whom Defendants contracted.  These injuries were not suffered in the course of employment, and several Plaintiffs were never employees of the Defendants.  Therefore, Plaintiffs were not constrained to seek administrative remedies under the DBA, for there are none available.

The intentional, egregious acts of the Defendants described in the SAC gave rise to the causes of action below.  However the trial court, while sympathetic to the catalogue of true, fully-documented horrors laid out in the pleadings (which it described as "extremely serious and deeply disturbing"), dismissed these claims purely on jurisdictional grounds.  Specifically, the question arose as to whether the

exclusivity provision of the DBA barred Plaintiffs from pursuing claims resulting from deliberate, intentional harm inflicted upon them by the Defendants.  There was no question that the Defendants accepted the claims of the claimants involved herein as compensable.  Defendants argued, and the trial court agreed, that any allegation of wrongdoing on their part must be pursued solely through the Act's administrative remedies.

The statutory provision for consideration on this appeal is § 5(a) of the LHWCA, 33 U.S.C. § 905(a), as incorporated by the DBA:

> The liability of an employer prescribed in section 4 of this Act shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death [unless the employer has failed to maintain the required insurance]. . . .

This distinct provision of the DBA says nothing about recovery of damages at law or in admiralty:

> The liability of an employer, contractor (or any subcontractor or subordinate subcontractor with respect to the contract of such contractor) under this chapter shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, *under the workmen's compensation law* of any State, Territory, or other jurisdiction, irrespective of the place where the contract of hire of any such employee may have been made or entered into.

DBA § 1(c), 42 U.S.C. § 1651(c) (emphasis added).

17

The court interpreted the latter provision as all-encompassing, when it comes to any and all claims that may touch upon the DBA.  This was obvious error, relying on a truncated quotation of the provision omitting the critical, emphasized phrase. The question turns on the exclusive-remedy provision of LHWCA § 5(a), foreclosing recovery of  "damages from such employer at law or in admiralty on account of such injury or death." Neither LHWCA nor DBA addressed or provide relief for the claims brought below, many of which do not even seek "damages *from such employer*," and none of which sought damages "*on account of* [a covered employment] *injury*."

The DBA was designed to make adjudication of workplace injuries easier for all involved.  The DBA incorporates the LHWCA, which "represents a compromise between employees and their employers," noted the Supreme Court; as a result, "employers relinquish their defenses to tort actions in exchange for limited and predictable liability, and employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail," *Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 636 (1983) (citations omitted).

The Court below incorrectly assumed that the DBA's exclusivity provision was in addition to and more exclusive than that found in the LHWCA.  The terms of said provision demonstrate unmistakably that it is irrelevant to tort recovery,

18

leaving the exclusive-remedy provision unaltered as to such recoveries; it makes DBA compensation exclusive *only* of other *workers'-compensation* remedies. It is designed to prevent application of state law workers compensation claims to DBA claims, nothing more.  It has long been settled that the provision, which makes no reference to other jurisdictions' workers' compensation laws but pertains only to "damages from [the] employer at law or in admiralty on account of [the covered] injury or death," does permit concurrent LHWCA and state-law workers' compensation coverage (though credit must be allowed for amounts received under the first jurisdiction's law against a later award by the more favorable jurisdiction). *E.g.*, *Calbeck v. Travelers Ins. Co.*, 379 U.S. 114, 131-32 & n.16 (1962); *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 722 n.4 (1980); *cf. Industrial Comm'n v. McCartin*, 330 U.S. 622 (1947) (such clauses in workers'-compensation laws will not be read to foreclose access to remedies under other such laws absent unmistakable language so indicating). The function of the DBA provision is to foreclose such concurrent application. The District Court's reliance on a truncated quotation of the DBA provision that omitted its critical phrase, [JA 278], was plain error.

　　　Since the exclusivity provision of the DBA pertains only to rights under other states' workers' compensation statutes, the question below, in which Plaintiffs seek damages at law, depends on the LHWCA's own exclusive-remedy

provision, which § 5(a) makes exclusive only for damages "on account of *such injury*" – an "*accidental* injury arising out of and *in the course of employment*," LHWCA Act § 2(2), 33 U.S.C. § 902(2).

The trial court erred in holding that there were administrative remedies available for the Plaintiffs: there is no language whatsoever in the Act which would permit the Plaintiffs to pursue administrative relief for the alleged damages.  In addition, the District Court in its overly-sweeping denial of jurisdiction, failed to realize that the DBA allows exceptions to the exclusive remedy provision.

For example, the DBA does not extend tort immunity to intentional torts of the employer, the insurance carrier, or third parties.  When a plaintiff demonstrates that an injury or death – *even if* in the course of employment – is the result of a "specific intent" to cause harm, immunity under  LHWCA §5(a) is inapplicable, *see Houston v. Bechtel Assoc. Prof'l Corp., D.C.*, 522 F. Supp. 1094, 1096 (D.D.C. 1981).  *See also Rustin v. District of Columbia*, 491 A.2d 496, 501 (D.C. 1985) (the exclusivity provision "does not reach actions where the employer specifically intended to injure the employee").

Professor Larson writes of this as a general principle:

> Several legal theories have been advanced to support [the employer intentional tort] exception to exclusivity. The best is that the employer will not be heard to allege that the injury was 'accidental,' and therefore was under the exclusive provision of the workers' compensation act, when the employer intentionally committed the act.

6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 103.01, at 103-3 (2011). By their very nature, neither the DBA nor the LHWCA were intended to cover every possible subject of litigation that might arise involving an injured worker.  The Act does not to speak to intentional or even *negligent* acts that cause injury off the job, or to any actionable conduct by anyone other than the employer occurring subsequent to the injury.

As the Plaintiffs noted below, Defendants are the parent companies of the employers and insurance carriers, not the employers and insurance carriers themselves. Moreover, the injuries complained of were not injuries sustained in the course of employment.  This means that they would, by definition, be excluded from DBA coverage.

### A. Plaintiffs' Injuries Fall Within Clear Exceptions to the Exclusive Remedy Doctrine Because they Were Caused by Intentional, Malicious, or Fraudulent Actions of Defendants and Were Not "Injuries" Within the Act's Definition.

If we accept the reasoning of the trial court, it is difficult to imagine what limits there would be to wrongs employers or carriers could commit and suffer no liability.  For example, if a nurse case manager retained by the carrier were to run over a DBA claimant's child with her vehicle, while visiting at the claimant's home, under the trial court's reasoning there would be no civil liability, because there was an existing DBA claim that brought her to the home.  Such a result would be unconscionable, yet it is precisely what the court below would accept,

21

based on the reasoning it adopted: the employer *and* its insurance carrier are immune from civil liability for anything and everything that touches upon a DBA claim.  If an adjustor hired a known criminal to come to a claimant's home to physically abuse his spouse, there would be no civil liability, even though the LHWCA would provide no remedy at all.

The many harms set forth in the SAC, taken as true and read in a light most favorable to the Plaintiffs, are no less extreme than these hypotheticals.  A handful of examples cited above suffice:

Daniel Brink was injured in Iraq when an IED exploded and took off his legs, and parts of his hands; he also sustained brain damage, PTSD, multiple surgeries and medical complications.  Although the Defendants DynCorp and CNA Insurance accepted his claim, they deliberately caused harm and injury to him including, inter alia, having Mr. Brink's wheelchair repossessed for non-payment on their part, then having another wheelchair not delivered because they put stop-payment on a check.  CNA lied that $150,000 in Mr. Brink's medical expenses would be paid, then refused to pay for 3 years.  This led to Mr. Brink losing his access to medical care, since no doctors would work with him for failure of payments, as well losing his furniture and his home.  Mr. Brink was quite literally left homeless, ending up sleeping on the floor of his physical therapist's home.  His

wife left him, and he became estranged from children - yet according to the trial court, the outrageous, inhuman actions of the Defendants are covered by the DBA.

Christine Holguin-Luge was sexually assaulted by a co-worker in Iraq, who threatened to kill her if she told anyone. She sued the attacker's employer, a company separate from the one that employed her. She also sued her employer's parent company, KBR, for misconduct after her assault, blaming her and threatening her for pursuing her claim. Ron Bell was repeatedly threatened to drop his DBA claim, including by personnel from KBR, who came to his home and threatened to kill him unless he dropped his PTSD claims.

Nikki Pool did not work as an employee in Iraq or anywhere else for any Defendant. When CNA Insurance approved her as nurse case manager and approved her purchase of supplies and services for Daniel Brink and then refused to pay, and even stopped payment on Mr. Brink's wheelchair, the natural consequences of the carrier's intentional acts occurred: loss of home, possessions, family and any care for Mr. Brink; loss of Ms. Pool's ability to conduct business; and blackballing of her and Mr. Brink by medical providers in South Africa.

The open economic warfare by CNA on her and on Mr. Brink, and the torment visited on her as she tried to do what she could for this near-paraplegic man, caused her serious injury. This was knowing, malicious and intentional misconduct by CNA. They claimed, and somehow the lower court agreed, that

23

Nikki Pool and Guardian Medical were subject to the exclusive remedy doctrine. These are just several examples out of many in the SAC.

The DBA was created to provide a uniform compensation system to protect civilians working outside of the United States at overseas military bases, overseas government contract projects, and in Zones of Special Danger. It allows employers and carriers to establish reasonable rates for insurance coverage, instead of having differing coverage from place to place. At the same time it provides access to similar workers' compensation benefits as to what claimants would receive in the U.S., *see University of Rochester v. Hartman*, 618F.2d 170 (2nd Cir., 1980); *Royal Indemnity Co. v. Puerto Rico Cement Corp.*, 142 F.2d 237(1st Cir.), *cert. denied*, 323 U.S. 756 (1944).

Although the court held that Plaintiffs had not exhausted their administrative remedies, the DBA provides none. No penalties or interest are available for any of these alleged actions. There is no remedy for intentional harm perpetrated after the job ends, after the work related injury. Most of the Plaintiffs have exhausted their remedies and received benefits, and Defendants never contested the propriety of their DBA claims. The harm committed occurred after award of benefits, through intentional fraud and misrepresentation to the DOL and to Plaintiffs and their families, that Defendants were complying and had every intent to do what they

were legally required to – but they do not do so, and intended not to do so, knowing that the longer they waited, the worse the harm to the Plaintiffs.

The DBA provides no mechanism for asserting a claim of, or remedy for, bad faith for failure to provide benefits due to a claimant under the Act.  If a carrier fails to make timely payment of compensation in accordance with an Order, the amount due is augmented by 20 percent, under § 14(f) of the Act. Even where there is not a "compensation order" under § 19(e), enforceable as to periodic compensation under § 18(a), in effect, so that§ 14(f) has no application, if any periodic installment of compensation "payable without an award" is not made timely, its amount is similarly augmented, by *10* percent, under § 14(e).[15] All the carrier need do to stop compensation from being "payable" is file a one-page "Notice of Controversion" under § 14(d); carriers commonly file such forms, raising a laundry list of undefined "issues" or no legal grounds at all, even while instituting and continuing payments in recognition of the claimant's disability. Having done so, they can terminate payments at any time without further notice and without incurring liability under § 14(e). The Benefits Review Board has held that the fact that the notice is pretextual and asserts only defenses the carrier knows

---

[15] These have frequently been referred to as "penalties" for late payment, but as courts have recognized more recently, they are not among the "penalties" that can be levied under the Act, but "additional compensation" for delay.  *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248-51 (4th Cir. 2004); *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953-54 (9th Cir. 2007).

are groundless or legally insufficient is irrelevant to § 14(e) augmentation; the notice gives future immunity for terminating payments for any reason, stated or not. *Hitt v. Newport News Shipbldg. & D.D. Co.*, 38 BRBS 47 (BRB 2004).

The restriction of the DBA to addressing benefits, rather than damages, was recognized in *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808 (5th Cir. 1988). In that case, the court noted that since the DBA "does not distinguish between good faith and bad faith nonpayment of benefits, the apparent intent of the Act is that the penalty provisions provide the exclusive remedy for late payment or nonpayment of benefits," *id.* at 812.

In *Martin v. Travelers' Insurance Co.,* 497 F.2d 329 (1st Cir. 1974), the claimant received and deposited disability benefits from the carrier.  Meanwhile, the carrier issued a stop-payment, causing the check to bounce, and the claimant suffered financial loss and emotional distress.  The First Circuit agreed with the claimant that where the carrier knew or should have known that its actions would cause economic hardship and emotional distress, the claimant was not barred from pursuing a separate tort claim:

> "the crux of the complaint here is the insurer's callous stopping of payment without warning when it should have realized that acute harm might follow. A stop payment on a sizable compensation check which may have been deposited and drawn upon carries the obvious possibility of embarrassment and distress," at 331.

The conduct and harm in that case pales in comparison to the heartlessness and inflictions of harm described above.

In *Kuhlman v. Crawford and Co.*, 2002 U.S. Dist. LEXIS 28223, No. 01-6036-CIV (S.D. Fla. Jan. 23, 2002), a claimant sued for intentional infliction of emotional distress, alleging the carrier knowingly prepared a false labor market survey report, intent on denying or reducing his disability benefits.  Because these actions took place after the injury, the court found that they gave rise to a separate cause of action from the exclusivity provision of the LHWCA.  This, even though the labor market survey itself was commissioned in response to the claim.

A growing number of states recognize an independent state cause of action may be brought for intentional torts arising outside the LHWCA. *See*, *e.g.*, *Bowen v. Aetna Life*, 512 So.2d 248 (Fla. App. 1987).  When there is an intentional act, there is an exception to the exclusivity provision of the DBA.  Thus in *Bowen*, the appeals court permitted the plaintiff to proceed on a claim of intentional infliction of emotional distress, as a result of the carrier's intentional and malicious refusal to pay benefits, which the court held did not fall under the exclusivity provision of the Act.

In *Kane v. Federal Match Corp.*, 5 F. Supp. 507 (D. Pa. 1934), the trial court held that when a claimant suffers an injury not arising from the accident itself, he was not limited to seeking compensation for that injury exclusively under a

workers' compensation act.  In that case, the defense argued that the sole remedy for the claimant was the state workers' compensation act, but the court rejected such a broad, sweeping reading of the act itself:

> The mere fact that the act deals with one phase of the relationship between employer and employee cannot possibly be construed as meaning that every other obligation existing between employer and employee is rendered a nullity. It cannot be that the Workmen's Compensation Act was designed to take away any right of action as respects a claim, like the one here involved… [*Kane* at 508.]

Reading into the statute what is not there was also criticized by the U.S. Supreme Court in *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 86 S. Ct. 657, 15 L.Ed.2d 582 (1966).  In that case, the Supreme Court held that "[t]o the extent…that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated…."

 In this case, there is no question that many of the acts complained of were intentional.  Thus, the decision not to make the payments owed on the wheelchair of a DBA claimant who has no legs, so that the chair was repossessed depriving the claimant of any way to move, is more than mere oversight.  It was not simply an act of bad faith; it was an act of intentional malice as are the other actions described in the SAC.

These employers benefit from contracts they obtain with the Federal government; the insurance companies benefit from the large premiums these companies pay to obtain no-fault coverage. They do not enjoy immunity from suit for causing deliberate, intentional harm to their employees, insured, and their families. They are behaving in an unlawful, malicious, and abusive fashion and it is left unchecked.

B. **The LHWCA/DBA Do Not Preempt Plaintiffs' State Law Or Federal Causes Of Action Because They Are Limited By Their Own Language And Structure.**

Federal "occupation of the field" occurs (field preemption), according to the Supreme Court in *Com. of Pa. v. Nelson*, when there is "no room" left for state regulation.[18] Courts consult certain factors, including the pervasiveness of the federal scheme of regulation, the federal interest at stake, and the danger of frustrating federal goals in making the determination as to whether a challenged state law can stand.[19] However, *Nelson* never said that state law is always preempted; contrarily, when federal goals and interests are not frustrated by an appropriate state law, claims under the state law are not forbidden. Put another way, there is a longstanding proposition from *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta* that a local law only "is nullified to the extent it actually conflicts

---

[18] 350 U.S. 497 (1956).
[19] *Id.* at 502-506.

with federal law."[20]  In this case, there is no conflict in the federal and state law

claims brought vis a vis the DBA.  No Plaintiff is suing for any benefit on "account

of the injury" on the job.  The Plaintiffs pursued their remedies for benefits through

the DOL procedures outlined in the DBA and LHWCA: so much for "conflict"

preemption.  On the issue of field preemption, no court other than the District

Court here has ever found that the DBA and LHWCA so occupy the field of any

claims a contractor can bring against a contracting company or its insurance carrier

as to preempt all claims.  That is plainly contrary to a long history of all types of

claims proceeding against contracting companies and insurance carriers where not

provided for in the DBA or LHWCA.  This conflation of the exclusive remedy

doctrine with field preemption is at the heart of the erroneous rulings of the District

Court.

    In the case of Plaintiffs, a government contract as well as a personal

contract with Plaintiffs was entered into for work overseas that included the rights

afforded under the FARs of the defense contracting, which Defendants were

subject to, requiring they provide DBA insurance and not deprive the Plaintiffs of

those benefits.  The **FAR, § 52.228-7** "Insurance-Liability to Third Persons" shows

a recognition that Contractors would be liable for willful acts on the part of

directors, agents, and others:

---

[20] 458 U.S. 141, 152–53 (1982).

**(e) The Contractor shall not be reimbursed for liabilities (and expenses incidental to such liabilities)—**

**(1) For which the Contractor is otherwise responsible under the express terms of any clause specified in the Schedule or elsewhere in the contract;**

**(2) For which the Contractor has failed to insure or to maintain insurance as required by the Contracting Officer; or**

**(3) That result from willful misconduct or lack of good faith on the part of any of the Contractor's directors, officers, managers, superintendents, or other representatives who have supervision or direction of—**

**(i) All or substantially all of the Contractor's business;**

**(ii) All or substantially all of the Contractor's operations at any one plant or separate location in which this contract is being performed; or**

**(iii) A separate and complete major industrial operation in connection with the performance of this contract.**

Contractors in conspiracy with the carriers caused harm from willful misconduct, and lack of good faith on the part of directors, officers, and agents. The Plaintiffs were beneficiaries of the government contract, in which the government required Defendants to abide by the requirements of federal workers compensation (FAR § 28.305 and § 28.307-2) as well having DBA insurance (§ 28.301). These became part of the contracts between Defendants and Plaintiffs. In bad faith, Defendants breached those rights.

In *Ross v. Dyncorp*, 362 F.Supp.2d 344, 364-65 (D.D.C. 2005), the court found that where plaintiffs demonstrate intentional infliction of emotional distress and outrageous intent or recklessness on the part of the employer in the aftermath of a covered injury or death, the exclusive-remedy provisions do not bar liability for damages. Even though in *Ross* plaintiffs could not establish these, in the present case Plaintiffs sufficiently plead facts, and reasonable inferences from

31

those facts, to present valid claims.   The Plaintiffs have also alleged Intentional

Infliction of Mental and Emotional Distress due to the inhumane treatment of

persons in wheelchairs, burn victims left to die, and other extreme and uncivilized

behavior that society cannot tolerate.

In *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012), the court concluded

that the exclusive remedy bar only applied in the lack of certain factors:

> We are not confronting a situation in which…employer personally assaulted
> an employee. Nor are we confronting a situation in which an employer has
> conspired with a third party to inflict an assault on the employee. Nor does
> this case present a situation in which an employer has subjected his
> employee to the acts of a third party with the specific desire that the third
> party harm the employee.

*Id*. at 620. The 5th Circuit specifically chose not to address the issue of intentional

tort by employers and carriers against claimants, because it was not properly before

them.  However, the court did take the opportunity to point out that a number of

states have found such injuries actionable in civil court:

> It has also been said that such an injury is not the result of a third party's
> willful act because employers are not third parties under the LHWCA.
> Importantly, the cases take a very narrow view of the types of intentional
> injury that lie outside of the LHWCA— the cases consistently require that
> the employer have had a specific intent or desire that the injury occur.

*Id*. at 618.

The 5th Circuit not only relied upon multiple state court decisions on this

point, but also Professor Larson's treatise, supra., § 103.01, at 103-3 (2011), that

intentional acts by employers are not covered under the DBA.  The court further

looked to the *Bechtel* decision, where specific intent is required on the part of the

employer for an employee to bring a tort action outside of the LHWCA, *Bechtel*,

supra., at 1096.

The 5th Circuit noted the decision in *Talik v. Fed. Marine Terminals,* 117

Ohio St.3d 496 (2008),which held:

> Although [LHWCA] covers an intentional tort by third parties against an
> employee, the definition does not include an intentional tort by an employer.
> Thus, courts have held that because Congress did not explicitly include an
> employer intentional tort in the exclusive-remedy provision of Section
> 905(a), an employee may pursue an intentional tort action against the
> employer. We therefore cannot say that Congress has expressly preempted
> the intentional tort standard that Ohio uses.

*Id*. at 503 [citations omitted]

These findings go to the heart of this matter, and why the trial court's decision

below was not only fundamentally flawed, but deeply unjust.

The Plaintiffs are seeking recognition that one cannot read into the DBA

what is not expressly there, thereby broadening the scope of the Act.  It was not

designed to shield employers or carriers from deliberate, intentional acts, such as

harassment and infliction of emotional distress.

As the trial court notes on page 7 of its Dismissal Order [JA 262], the

LHWCA provides a list of penalties for things such as failure to timely pay

benefits, or making a false claim.  Yet not a single one of the seven bullet points

provided by the court spells out what the penalties are for the acts complained of herein.  Are we to assume, therefore, from their absence that such acts are covered by the Act? If there were, in fact, administrative remedies to pursue, and the question was so clear, the trial court would have dismissed this action saying, "You should be filing a complaint under Section XYZ of the LHWCA".  Instead, we have silence, because the court cannot point to where either the LHWCA or the DBA provides an administrative remedy for the claims at issue.

One of the cases relied upon heavily by the trial court, that in *Atkinson, supra.*, has nothing to do with the issues faced by the Plaintiffs herein.  In that case, the plaintiff filed a bad faith claim for wrongful termination of her benefits. None of the Plaintiffs in the present matter have filed such a claim.  Moreover in *Atkinson*, the plaintiff pursued the administrative remedies available to her under the LHWCA, was successful, and the DOL awarded her a 10% penalty, ordering the carrier to resume payment.  She then sought to pursue separate state law claims arising out of the same injury and incident.

Yet as has been shown here, there are no administrative remedies available to the Plaintiffs herein.  The incidents described do not rise out of a work-related injury.  Moreover, there is nothing in either the DBA or LHWCA to indicate what, if any, relief is available for such damages.

34

In an interesting portion of the decision in *Atkinson*, which neither the trial court nor the Defendants noted, the 5th Circuit held that when specific penalties are listed in the text of a statute, one can reasonably assume that the statute covers such potential causes of action.  But what about tortious acts arising independently of the underlying injury, or intentional or malicious harms not part of the structure either of DBA or LHWCA? The plaintiff argued that if her claim was dismissed, she would similarly be precluded from bringing hypothetical suit against a carrier whose agent illegally broke into her home to investigate her LHWCA claim. The 5th Circuit disagreed with the plaintiff's assertion, noting that in such a situation, "plaintiff's entitlement to recover in the tort action is in no way dependent on his having been entitled to compensation benefits or to the defendant's having violated the compensation statute," *Atkinson* at 812.

Another case the court leaned on, *Sample v. Johnson*, 771 F.2d 1335, (9th Cir. 1985), is distinguishable from the case at bar, and actually supports the Plaintiffs.  In that case, plaintiffs sued because the carrier unreasonably delayed benefits under the LHWCA.  However, the plaintiffs did not allege that they had suffered severe emotional distress, or that such distress had been inflicted intentionally or with malice, a very different set of circumstances from the case at bar. The court in *Sample* recognized that while infrequent, <u>it is possible to bring an</u>

intentional tort act as a result of misconduct by the employer where there is a genuine intent to injure. *Id.* at 1347.

In addition, use of third parties in South Africa, Iraq, Afghanistan and elsewhere as pleaded in the SAC shows the intent to harm individuals, conspiring between contractors and carriers to deny transport for saving lives, or permitting testing and operations that would have saved portions of bodies (SAC Clark, Tablai, Swart, Steenberg, Mercadante, Bell, and many others), as well as intentional acts to harm Plaintiffs in their medications, ability to access psychiatrists, obtain reimbursements for medical payments and medications, travel expense that resulted in severe financial consequences, etc.  Government and medical providers were lied to, and there was disruption or prevention of operations, medications, and treatments that led to greater injuries, such as in McLean, Thompson, Steenberg, Mercadante, Clark, [JA 158-61, 136-39, 186-190, 112-32, 99-110, and others.]

Other cases support the availability of remedies here: *Hernandez v. General Adjustment Bureau*, 199 Cal. App.3d 999, 245 Cal. Rptr. 288 (1988) (plaintiff's cause of action not barred where defendant knew of plaintiff's susceptibility to profound mental distress and repeated suicide attempts but intentionally delayed payment of workers' compensation disability benefits); *Correa v. Pennsylvania Manufacturers Association Insurance Co.*, 618 F. Supp 915 (D. Del. 1985)

(employee may maintain suit to redress intentional and bad faith conduct in delay or termination of workers' compensation benefit payments); *Continental Casualty Insurance Co v. McDonald*, 567 So2d 1208 (Ala. 1990) (accord); *Boudoin v. Bradley*, 549 So2d 1265 (La. App. 1989) (accord).  The Defendants' failure to keep promises demonstrates a clear instance where the exclusive remedy bar is not preemptive.  The Fourth Circuit in *Moss v. Dixie Mach. Welding & Metal Works, Inc.* held that it was possible for a state wrongful discharge remedy to coexist with a LHWCA wrongful discharge remedy, meaning the former was not preempted by the latter.[22] In *LaCour v. Lankford Co., Inc.*, the Court found that the exclusive remedy provisions did not bar the Plaintiff's wrongful discharge claim.[23]

Bringing claims for wrongful or retaliatory discharge outside the scope of LHWCA exclusive remedy provisions is not barred. For instance, § 948 provides a nominal remedy for wrongfully terminated claimants, and numerous courts have tolerated such claims against a employer/insurer. In *Reddy v. Cascade General, Inc*, the court held that the remedy offered under § 948 of the LHWCA fell "far short of [the] threshold of 'adequacy'…and, particularly and most importantly, [did] not provide for compensation for any injury or loss other than equitable

---

[22] 617 So.2d 959, 961 (La.Ct.App. 4th Cir.).
[23] 287 S.W.3d 105, 110-11 (Tex. App. 2009).

recoupment of back pay."[24] Similarly, in *Herbert v. Mid South Controls & Services*
it was held that although a claimant had obtained judgment from the Benefits
Review Board under the LHWCA exclusive remedy, the claimant was not barred
from also bringing a retaliatory discharge claim under state law.[25] This
demonstrates the limited nature of the exclusive remedy Defendants rely upon. To
say the exclusive remedy of the DBA/LHWCA is the sole remedy for being
terminated would be to dismiss the discriminatory, wrongful, and intentional
discharge for exercise of rights under the DBA.

Defendants CNA and Ronco demanded that Plaintiff Clark work beyond his
doctor's restrictions, repeatedly misrepresented and lied to DOL officials in
regards to payments for medical treatments surrounding his life-threatening
medical conditions, and discriminated against him by interfering with his doctors'
treatment and *utterly refusing to pay for his treatment* [JA 102, 107]. Plaintiff
Kreesha was *wrongfully terminated* by GLS after Zurich and it stopped his TTD
benefits by falsely insisting he disappeared and they could not contact him [JA
141]. Plaintiff Alsaleh was discriminated against by Zurich by not being sent to an

---

[24] 227 Or.App. 559, 571-72 (Or. App. 2009). This approach was taken recently by
the Supreme Court of Alabama, finding no conflict between LHWCA Sec. 948a
claims and state law retaliatory discharge and refusing to bar such an action as
concurrent with Longshore.  *See Rodriquez-Florez v. U.S. Coatings*, 2013 Wl
3242939 (Ala. June 28, 2013).
[25] 688 So.2d 1171 (La. App. 1996).

experienced doctor for his Leishmaniasis condition, thus experiencing inadequate care, and *his TTD benefits were abruptly cut off* by Zurich [JA 145-46].

Furthermore, as noted by *Fisher* above, conspiring to harm a claimant is also a tort in need of remediation outside the exclusive remedy provision. The DBA and LHWCA do not provide an express remedy for such conduct. Civil conspiracy has four elements in the District of Columbia: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or lawful act in an unlawful manner; [and] (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) … pursuant to, and in furtherance of, the common scheme."[26] In *Riggs*, supra, the court declined to dismiss a claimant's civil conspiracy claim where it was shown defendants conspired together to terminate his employment because he refused to engage in employer's agenda through means prohibited by federal tax laws and DOL regulations.[27] In *Griva v. Davison*, the court observed the four civil conspiracy elements noted in *Halberstam,* supra, and held that civil conspiracy is proven when these four factors are met.[28]

Defendants CNA and Ronco conspired together to fire Plaintiff Clark after he settled his disability claims [JA 108]. Plaintiff Thompson was conspired against by KBR and AIG when they asked their hired doctor to write an email to their own

---

[26] *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).
[27] 203 F.Supp.2d 1 (D.D.C. 2002).
[28] 637 A.2d 830, 847 (D.C.1994).

hired psychologist asking him to redo his report on Thompson because he was

exaggerating symptoms and malingering [JA 137]. ACE and AIG both conspired

with ITT to refuse paying benefits to Plaintiff Ambrose, although ITT never

asserted it was not obligated to pay disability benefits or provide medical care [JA

152-53]. CNA and DynCorp conspired against Plaintiff Steenberg by refusing to

pay his PTD payments required by order [JA 190].  These examples are manifold

in the SAC and show that the LHWCA is not preemptive of other remedies if they

are not for negligence for the physical or psychological injury sustained while on

the job.

When a party to the contract evades the spirit of the contract, willfully

renders imperfect performance, or interferes with performance by the other party,

the breaching party may be held liable for breaching the implied covenant of good

faith and fair dealing.[29] Both the claims for breach of contract and breach of the

implied covenant of good faith and fair dealing are valid here. Therefore, the

express DBA/LHWCA remedies do not occupy the field of claims that can be

brought.[30]

---

[29] *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988).

[30] *See Ladner v. Secretary of H.E.W.*, 304 F.Supp. 474 (S.D. Miss. 1969) (plaintiffs may pursue benefits under SSI/SSD for the same injury/disability in addition to a DBA/LHWCA claim); *Palermo v. Letourneau Tech., Inc.*, 542 F.Supp.2d 499 (S.D. Miss. 2008) (LHWCA does not occupy the field of wrongful discharge and

It also follows that intentional and malicious behavior by insurers may entitle employees to file a claim for punitive damages. The rubric for punitive damages under *Choharis v. State Farm Fire & Cas. Co.* is satisfied when insurers demonstrate malicious and wanton behavior, tinged with intimidation and dishonesty, and behave like thugs by threatening and intimidating claimants for

---

employment so as to preempt state law claim for wrongful discharge for pursuit of workers compensation benefits); *Machado v. National Steel & Shipbuilding Co.*, 9 BRBS 803 (1978) (ALJ lacks power to make findings on breach of contract even if plaintiffs could proceed under LHWCA § 49, 33 U.S.C. § 948a); *Hais*, supra (implied covenant of good faith and fair dealing means "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."); *Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000) ("all contracts contain an implied duty of good faith and fair dealing as enumerated in *Hais v. Smith*..."); *Pettengill v. Curtis*, 584 F. Supp. 2d 348 (D. Mass. 2008) (sexually abused public library worker's claim for negligent infliction of emotional distress not barred by the exclusivity provision of the Massachusetts Workers' Compensation Act); *Lawrence v. U.S.*, 631 F. Supp. 631 (E.D. Pa. 1982) (Federal Employees Compensation Act [5 U.S.C.A. § 8116(c)] did not provide exclusive remedy for mental suffering, humiliation, embarrassment or loss of employment alleged by employee, where such claim did not involve compensatory damages and was not premised upon injuries otherwise covered by FECA remedies); *Leathers v. Aetna Cas. & Sur. Co.*, 500 So.2d 451 (Miss. 1986) (bad faith refusal to pay compensation resulted in a loss of the defense of workers' compensation exclusivity to employee's tort action for bad faith); *Houston v. Bechtel Assoc. Prof'l Corp.*, 522 F. Supp. 1094, 1096 (D.D.C. 1981) (exclusivity provision can be avoided when employee shows employer possessed a 'specific intent to injure' him); *Jones v. Halliburton Co.*, 791 F.Supp.2d 567, 588 (S.D. Tex. 2011) (since "[employee]'s injuries did not arise out of or in the course of her employment agreement, the exclusivity provisions of the LHWCA and the DBA [did] not apply to any of her common law claims, including the intentional tort claims.").

bringing claims.[31] Punitive damages are also recognized under similar circumstances.[32]

Plaintiffs' current claims do not aim to seek the sole remedial aid of the DBA/LHWCA. Rather, Plaintiffs seek compensation based on defendants' behavior that is not remediated under the DBA/LHWCA. Accordingly, the exclusive remedy provisions of these Acts are not preemptive and find no application to this case.

    **C.** **Injuries Sustained Outside The Course Or Scope Of Employment Are Offered No Exclusive Remedy Protection, and Plaintiffs' Causes Of Action Do Not Stem From DBA Injury Claims For Benefits – Requiring Reinterpretation of Hall or Reversal.**

The DBA concerns itself with "**injury or death of any employee engaged in any employment**"[33], and so the "liability of an employer, contractor, [or any affiliated entity…] shall be exclusive and in place of all other liability of such employer…"[34]

In the case of *Hall v. C & P Tele. Co.,* 809 F.2d 924 (D.C. Cir. 1987), on which the Defendants and District Court heavily rely, the court was addressing the applicability of the District of Columbia Workers' Compensation Act of 1928,

---

[31] 961 A.2d 1080, 1090 (D.C. 2008).

[32] *See Houston,* 522 F. Supp. at 1096-97 (when there is aggravated and malicious employer/insurer behavior, claims for punitive damages are possible).

[33] 42 U.S.C. § 1651(a).

[34] 42 U.S.C. § 1651(c).

which applied to workers' compensation cases arising before 1979, and therefore of limited relevance herein.   The issue was whether a claimant who filed a workers' compensation claim pursuant to the 1928 D.C. Act was prohibited from bringing a tort claim against a carrier who refused to timely pay the benefits owed to him.

Defendants do not seem to have read all the way to the end of that opinion. It is true the court found the statute provided the remedy for late payments of benefits owed.  However, while acknowledging that late payment of benefits may fall under the exclusivity portion of the statute, the court also distinguished the action before it from the above-cited *Martin* decision.

In *Martin*, supra., the First Circuit acknowledged that not all potential tort actions against an employer are obviated by the exclusivity provision of the LHWCA.  Thus *Hall*, supra., which was so central to the District Court's decision, is not a case under the LHWCA or DBA, and because the opinion specifically recognized exceptions to exclusivity in the right circumstances, this Court should reverse to allow Plaintiffs to proceed when they have so clearly pleaded outside of the exclusive remedy setting, and where the actions of the Defendants so egregiously fall within the oft-stated tort exceptions for intentional, willful, and malicious injury – especially when such injury is not mere bad-faith claims

adjusting, but serious misconduct in violation of laws designed to protect individuals from personal and property injuries.

Thus in *Hall II*, supra., the particular type of controversy at issue was afforded a particular exclusive remedy, addressed under the LHWCA at Sec. 914(e) and (f). There was a clear administrative path for the plaintiff to take.  At the same time however, this very court distinguished the situation in *Hall II* from that in *Martin, supra*., where the First Circuit allowed a tort action for intentional infliction of emotional distress to proceed because there was no administrative remedy or penalty provided for under the LHWCA.  The trial judge below found that "puzzling", but it is not so.

Search where one will, the Act provides no remedy for or reference to bad-faith claims-handling practices, much less fraudulent schemes as alleged under common law and RICO in this case, and the DOL's Office of Workers' Compensation Programs exercises no authority over such practices, so long as the required forms are filed. There is no administrative remedy, as imagined by both the Defendants and the court below, to invoke in these cases, for the simple reason that there is no mechanism by which to invoke them.  Neither the Defendants nor the trial court could point to a single provision in the LHWCA pointing out how to pursue administrative relief for intentional torts.

44

As this Court should clarify, and specifically hold, neither the DBA nor the LHWCA intended to provide relief for everything tangentially related to a work-related injury, or to supplant state law remedies where appropriate. Even in the setting of DBA premium rates, for example, DOL does not regulate such coverage, but rather leaves the business of such regulation to individual states. The Office of Workers' Compensation Programs only ensures that proper licensing takes place, and grants "carrier" status to insurers entering the market. Thus, not even DOL itself, which administers both the LHWCA and the DBA, anticipates that the Act preempts all aspects of state law. As this Court in *Hall II* explained, there are circumstances in state law workers compensation, as well as LHWCA/DBA, permitting a claim to proceed, as indeed the reference to *Martin* by this Court underscored, given that *Hall and Hall II* concerned a state, non-federal workers compensation scheme.

Other courts have found that workers' compensation statutes with exclusivity provisions were never intended to be used in the way the District Court allowed them to be used here. *See Aguilera v. Inservices, Inc.*, 905 So. 2d 84, 91 (Fla. 2005) ("[Workers compensation statutes] were never designed or structured to be used by employers or insurance carriers as a sword to strike out and cause harm to individual employees during the claim process and then provide a shield from responsibility for an employee's valid intentional tort claim for that conduct

45

through immunity flowing under the law…Minor delays in payments, and conduct amounting to simple bad faith in claim handling procedures of the employee's compensation claim have been captured within the immunity.").

Similarly, courts have found that outrageous behavior on the part of employers and carriers in compensation claims do not bar intentional tort claims for intentional infliction of emotional distress.  To prevail, the plaintiff must show that the conduct was "so outrageous in character and so extreme in degree as to go be-yond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," *Strickland v. Birmingham Bldg. & Remodeling*, 449 So. 2d 1242 (Ala. 1984) (permitting intentional tort of outrage to co-exist with workers compensation when actions are so beyond the bounds of civilized behavior  as to be deemed outrageous);  *Young v. Hartford Accident & Indem. Co.,* 492 A.2d 1270, 1279 (Md. 1985) (upheld cause of action for suicide when plaintiff alleged that insurance carrier forced her to submit to psychiatric exam for the purpose of making her abandon her claim or commit suicide; based on insurer's "deliberate intention to cause injury".); *McCutchen v. Liberty Mut. Ins. Co.,* 699 F. Supp. 701, 711 (N.D. Ind. 1988) (denied motions for summary judgment by workers compensation carrier under exclusive remedy, finding that the insurer's

46

mockery of the plaintiff, while it repeatedly refused to pay for psychiatric

treatment, rose to the level of a separate tort).[35]

## II.    THE RICO ACT IS NOT PREEMPTED BY DBA AND  THE CLAIMS HAVE BEEN STATED WITH PARTICULARITY SHOWING A RICO ENTERPRISE THAT CAUSALLY HARMED PLAINTIFFS

The District Court found that all of the Plaintiffs' state law claims were

barred by its interpretation of the exclusivity provision of the DBA.  In tandem

with this finding, the trial court also found that the Plaintiffs' federal RICO and

ADA claims were barred by the exclusivity provision of the DBA.  With respect to

the Plaintiffs' RICO claims, the court below held that the "to permit Plaintiffs to

convert non-compliance with the DBA -- a statute with its own comprehensive

administrative remedies -- into mail and wire fraud and thereby maintain a civil

RICO action would contradict the purpose and intent of the DBA," [JA 282]. Yet

again, as shown above, there are no administrative remedies for actions which do

_____

[35] Several other cases show Plaintiffs' claims are valid under similar circumstances: *Gallagher v. Bituminous Fire & Marine Insurance Co.*, 303 Md. 201 (Md. App. 1985) (workers' compensation law does not bar common-law action based on intentionally tortious failure to pay benefits); *Crosby v. SAIF Corp*, 73 Or. App. 372 (Or. App. 1985) (accord); *Wolf v. Scott Wetzel Services Inc.*, 113 Wash.2d 665 (1989) (workers' compensation act is not exclusive remedy if insurer injures employee intentionally); *Houston v. Bechtel Assoc. Prof'l Corp.*, 522 F. Supp. 1094, 1095-96 (D.D.C. 1981) (when employer/insurer inflicts intentional or malicious injury on claimant beyond gross negligence, exclusive remedy might not apply, as applies only to claims for injury on the job but not to intentional infliction by employer/insurer.)

not arise out of the workplace injury covered under the DBA.  The LHWCA is not

preemptive of all other remedies, even in the Court's view of the exclusive remedy

and preemption doctrines, when such remedies have no bearing on the operation of

the DBA, See discussion on preemption issue, *supra.*

There is no case law that supports the proposition that the LHWCA or DBA

were intended to occupy the field of all disputes arising between an employee and

an employer on a U.S. base overseas.  RICO is a federal scheme designed to

address this very situation where companies or individuals use apparently

legitimate structures to create a criminal enterprise through fraud, and use of the

mails and wires which causally injuries people.

The Court below cites several examples such as the Service Contract Act or

the Federal Employee Health Benefits Act as examples of federal statutory

schemes that completely occupy the field of disputes relating to wages for public

works or public employee health benefit disputes, [JA 279-82].  These schemes are

comprehensive, and do not have a large body of case law as set forth above making

exceptions for other types of claims, such as ADA, Title VII, breach of covenant of

good faith and fair dealing, contract breach, Social Security benefits, intentional

torts, etc.  In fact, these acts cited by the Court and the cases construing how they

preempt RICO are such that there is nothing allowed outside of them by their

nature.  They do not purport to only govern disputes on account of a service

contract, but any type of claim arising out of that service contract.  However the LHWCA specifically limits its reach, stating that it only applies to claims "on account of the injury" in the course of employment.

Plaintiffs  must satisfy the requirements of standing in section 1964(c) of RICO.[36]  That section confers standing upon Plaintiffs that can show an injury to their business or property as a result of Defendants' conduct in violation of RICO.[37]  The courts have interpreted this language to require that (1) Plaintiffs suffered an injury to their business or property, and (2) that the injury was proximately caused by the behavior of the Defendants.[38]  Defendants' motion to dismiss incorrectly identifies the basis for Defendants' recovery as stemming from the personal injuries that triggered the entitlement to benefits under the DBA in the first place.[39]  Plaintiffs assert their RICO claims stem from injuries that occurred as a result of acts separate from the original injury. Defendants' withholding of benefits to which Defendants deprived Plaintiffs of benefits they admitted they owed the Plaintiffs and then engaged in malicious acts to harm Plaintiffs which lead to the injuries that Plaintiffs suffered in their persons, property, credit, families and other relationships including with creditors, mortgage companies, medical

---

[36] *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).
[37] *See* 18 U.S.C. 1964(c).
[38] *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F. 3d 235, 246 (3d. Cir. 2012).
[39] Doc. No. 80-1, p. 23-25

providers, and banks. In a civil action for violations of RICO, Defendant is liable for treble damages, costs, and attorney's fees where an injury to a person's business or property has been shown.[40]  Therefore, to recover, Plaintiff must show that they sustained an injury to their business or property.

The language of the DBA creates an entitlement to an employee who has been injured or suffered occupational diseases, or death while on foreign soil in support of defense activities under the DBA.  The Act provides that the provisions shall be construed "liberally to provide benefits," and "[c]ompensation shall be payable irrespective of fault as a cause for the injury."[41]  Additionally, the LHWCA attaches a presumption to the allegations in support of the claim, in the absence of "substantial evidence to the contrary."[42]  Based on these terms, it is clear that an injured worker who files a claim for compensation under the DBA is entitled to those benefits immediately after having filed, absent evidence that disputes an injury has occurred.

Additionally, Defendants' misrepresentations to Plaintiffs by saying that benefits had been approved, then denying the disbursement of those benefits, deprives Plaintiffs of benefits which they were promised and therefore had a property interest in.  Plaintiffs herein have filed such claims for benefits, yet have

---

[40] 18 U.S.C. 1964(c).
[41] 33 U.S.C. § 904.
[42] 33 U.S.C. § 901.

not received the benefits to which they are entitled by the DBA, and promised by Defendants, thereby causing a deprivation of property as defined by RICO.

Additionally, employers are obligated to pay compensation—including compensation for permanent total disability, temporary total disability or permanent partial disability—regardless of whether an employee files an administrative claim,[43] and such compensation is to "be paid periodically, promptly, and directly to the person entitled thereto."[44]  Therefore, even when an employee fails to file a compensation claim, that employee is still entitled to those benefits under the language of the DBA, and is therefore deprived of their property interest under RICO when an employer or carrier denies the injured worker compensation, or reduces or delays compensation to an injured employee when such benefits should be paid "promptly."  The language of the DBA is a law or policy that confers benefits while limiting discretion to avoid paying.

## III.    IT WAS ERROR FOR THE COURT TO DISMISS THE ADA CLAIMS FOR FAILURE TO STATE A CLAIM

As to the claims raised under the ADA, the court concluded that the claimants – all of whom were severely disabled enough to have qualified for disability benefits under the DBA, and without the benefit of discovery but page after page cataloguing their obviously qualifying disabilities– had alleged proofs

---

[43] *see* 33 U.S.C. §§ 904(a) and 914(a)
[44] *id.* at § 914(a)

"insufficient for Plaintiffs to meet their burden of demonstrating that their injuries substantially limited a major life activity and thus qualified them as disabled under the ADA," [JA 287-88].

The three Plaintiffs with claims arising under the ADA suffer from serious, well-documented, debilitating injuries, were unable to return to work based on those disabilities, and described what they experienced at the hands of their employer, allegations which were to be substantiated with evidence introduced before the finder of fact.  There was sufficient evidence to allow these counts to proceed, so the bizarre result below can only be explained by the conclusion that the DBA is a type of universal solvent, which dissolves any and all potential legal actions it touches.   In order to bring a claim under the ADA, a plaintiff must demonstrate a clear disability from working; that they are limited in a major life function such as walking, thinking, working, breathing, etc.; and that they have requested reasonable work accommodations which have been denied.  Once demonstrated, the evidentiary burden shifts to the employer.

The court below concluded that the Plaintiffs failed to demonstrate that they were disabled, and that they failed to seek accommodation for their disabilities. Yet there can be no question that these Plaintiffs introduced evidence substantial enough to trigger the burden-shifting required under *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  Nevertheless, the trial court dismissed this prima

facie evidence without considering whether the Plaintiffs had plead sufficient facts.

Appellant Merlin Clark timely filed a complaint with the Equal Employment

Opportunity Commission for discrimination over Appellee Ronco's failure to

provide reasonable accommodation for his disabilities.  Not only had he requested

accommodation, they had reasonably accommodated him until they suddenly fired

him the day after his settlement; there was written evidence they were waiting to

get rid of him after settling his DBA claim.  Subsequently the EEOC issued a Right

to Sue letter to Mr. Clark, indicating there were sufficient grounds to warrant the

investigation of his complaint.  Clark introduced the sworn declaration of his wife

and caregiver pursuant to 28 U.S.C. § 1746, in which Mrs. Clark detailed what she

had witnessed, as well as the findings of the DOL on an Informal Conference held

in his DBA claim, describing the broad extent of the injuries, both physical and

psychological, which he had suffered, the medical treatment he received for these

injuries, and the fact that Mr. Clark was asking his employer to accommodate his

disability.  This initial evidence further included payment of disability benefits on

the part of the Ronco.  All of this information regarding the nature of his disability

and his attempts to return to work were contained in the "Plaintiffs' Memorandum

In Support Of Their Response And Opposition To WSI/Ronco's Motion To

Dismiss The Second Amended Complaint", pp. 21-24.

Nevertheless, the trial court found that Appellant Clark only made "conclusory allegations" regarding his disability.  A reasonable finder of fact could not have reached the conclusion that extensive documentation of Mr. Clark's disability was "conclusory", since it goes into great detail about his injuries, [JA 100-104].  It is difficult to imagine how the EEOC could determine that the Appellant alleged evidence sufficient to sue under the ADA, or that the DOL could find that Mr. Clark was totally disabled under the DBA, yet the court below could dismiss his claim without so much as conducting an evidentiary hearing on his disability.

The same was true of Appellants Kreesha and Alsaleh whose infections and severe PTSD prevented them from working or returning oversees as interpreters. The SAC details their conditions, [JA 139-40, 143-46].  If this was a simple, technical pleading issue, this could easily have been corrected by permitting an amended complaint.  The Supreme Court has already held that receipt of one type of disability benefit does not preclude a plaintiff from pursuing an ADA claim,  In *Cleveland v. Policy Management Systems Corp*., 526 U.S. 795 (1999), a plaintiff who sought and received Social Security Disability benefits from her employer subsequently brought suit against that employer under the ADA.  The lower courts dismissed her action, saying that receipt of SSDI benefits barred her from filing suit.  The Court held, in an unanimous decision, that "despite the appearance of

conflict that arises from the language of the two statutes, the two claims do not inherently conflict to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here. That is because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side," at 802.

Given that the three Plaintiffs alleging ADA violations were not only disabled, and had made out a prima facie case for discrimination under the ADA, this ought to have been weighed by the finder of fact using the burden-shifting requirements given in *McDonnell Douglas Corp. v. Green*, supra.  Instead, the court simply dismissed the ADA count as insufficiently plead, and did so while examining the evidence in the light most favorable to the Defendants.  This was plain, reversible error, and no reasonable finder of fact could have concluded that, based upon this evidence and in the absence of any hearing, the Plaintiffs had failed to meet their initial burden under the ADA.

## IV.   REFUSAL TO ALLOW AMENDMENT OF THE SAC WAS AN ABUSE OF DISCRETION

Under Fed.R.Civ.P. 15(a)(2), the Court below should have given the Plaintiffs leave to file a Third Amended Complaint to cure any defects in their pleadings.  The rule states that "[t]he court should freely give leave [to amend a complaint] when justice so requires", meaning that it was intended by the legislature to have a liberal standard of application in the courts.  This is because

when a dismissal under Fed.R.Civ. 12(b)(6) is being sought, that dismissal can result in any further action being precluded, even if the underlying claims are meritorious in whole or in part. Courts are reluctant to see such a harsh result, when clarification is all that is needed.

In considering whether to grant the amendment, the court is to look to five factors, as given in the leading Supreme Court case on Rule 15 application, *Foman v. Davis*, 371 US 178, (1962). These are: (1) was the amendment filed with undue delay; (2) has the movant has requested the amendment in bad faith or as a dilatory tactic; (3) was the movant allowed to make previous amendments which failed to correct deficiencies of the complaint; (4) will the amendment unduly prejudice the other side; and (5) is amendment ultimately futile. Not all of these are weighted equally by the court, and the mere existence of one or two questionable points does not mean that the motion to amend must be denied, although of all the factors prejudice to the non-movant is considered the most weighty component.

In *Rosen v. TRW, Inc.,* 979 F.2d 191(11th Cir. 1992), the trial court denied the plaintiff leave to amend their ERISA complaint, but the Eleventh Circuit reversed, finding that there was an abuse of discretion on the part of the trial judge, despite previous errors in pleadings on the part of the plaintiff. In that case, the appellate court felt it was still possible to amend the complaint and solve any lack of clarity in the pleadings. Similarly in *United States ex rel. Steury v. Cardinal*

*Health, Inc.,* 625 F.3d 262, 270 (5th Cir. 2010), the Fifth Circuit reversed a trial

court's decision to refuse amendment because there was no undue prejudice shown

to the defendants:

> We have held that a district court abuses its discretion, however, when it gives no reasons for denying a timely motion to amend, at least when the defendant would not be unduly prejudiced by the amendment.

Plaintiffs sought leave to amend their pleadings which, as shown above,

include substantial, documented claims. Numerous motions to dismiss were filed,

and in response, Plaintiffs specifically asked in the alternative should the court find

any pleading defects to permit amendment to correct them. After the court ruled,

and did not state whether dismissal was with or without prejudice to amend, the

Plaintiffs again filed a motion to amend the ADA and other claims that had been

dismissed for failure to properly plead. The court refused to allow amendment.

The issue here is not that there are insufficient facts to state a cause for

relief, but rather the trial court's failure to understand the DBA and ADA in the

context of this case. The exclusivity provision of the DBA, as has been shown, is

not exclusive to any and all potential action which may arise subsequent to the

inception of a claim. Similarly, the ADA is a separate cause of action, independent

of the DBA, which the Plaintiffs plead with sufficient facts to, at the very least,

merit an evidentiary hearing before the finder of fact, who did not even discuss the

evidence before him in issuing his dismissal. Given the liberal intent of Rule

15(a)(2), and the finality of Rule 12(b)(6), the trial court should have granted leave to amend in such a way that the pleadings conformed to any recommendations on the part of the trial court with respect to their specificity, particularly as no prejudice to the Defendants would result.

## <u>CONCLUSION</u>

For the foregoing reasons, the district court erred as a matter of law in dismissing all of Plaintiffs' claims. Its judgment should be vacated, and the case should be remanded for further proceedings.

Respectfully submitted,

/s/ Joshua T. Gillelan II
Joshua T. Gillelan II
Longshore Claimants' National Law Center
Georgetown Place, Suite 500
1101 30th Street, N.W.
Washington, DC 20007
(202) 625-8331
Fax: (202) 787-1920
JGillelan@comcast.net

Scott J. Bloch, Esq.
DC Bar No.  984264
LAW OFFICES OF SCOTT J. BLOCH, PA
1050 17th St., N.W.
Suite 600
Washington, DC  20036
Tel.  (202) 496-1290
Fax. (202) 478-0479
scott@scottblochlaw.com

William J. Skepnek, Esq. (pro hac vice)
THE SKEPNEK LAW FIRM
1 Westwood Road
Lawrence, KS    66044
Telephone: (785) 856-3100
 Fax: (785) 856-3099
bskepnek@skepneklaw.com

Counsel for Plaintiffs


**Certificate of Compliance Pursuant to Fed. R. App. P. 32(a)(7)(C) for Case No. 13-7165**

I certify that:

<u>X</u> 1. Pursuant to Fed. R. App. P. 32 (a)(7)(C), the attached opening Brief is –

Proportionately spaced, has a typeface of 14 points, and contains

13,955 words.

/s/ Joshua T. Gillelan II
JOSHUA T. GILLELAN II

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of April, 2014, the foregoing Opening Brief was electronically filed with the Clerk of Court via the Court's ECF system, and will automatically be served by that system on each of the following, who are registered appellate ECF users:

Robert Bruce Wallace      robert.wallace@wilsonelser.com

Kenneth John Pfaehler      kenneth.pfaehler@dentons.com,
avi.schick@dentons.com, ben.delfin@dentons.com,
nicole.reeber@dentons.com

Randolph D. Moss      randolph.moss@wilmerhale.com,
thomas.dettore@wilmerhale.com, thomas.saunders@wilmerhale.com

Tami Lynn Azorsky      tazorsky@mckennalong.com,
asarria@mckennalong.com, jlomas@mckennalong.com,
lcasazza@mckennalong.com, tehall@mckennalong.com

Leslie Paul Machado      Leslie.machado@leclairryan.com

Raymond B. Biagini      rbiagini@mckennalong.com,
BrinkvKBR@mckennalong.com

Timothy William Bergin      tbergin@winstead.com

Ari Shlomo Zymelman      azymelman@wc.com

Roderick L. Thomas      RThomas@wileyrein.com

Matthew Wesley Carlson      mwc@tomnh.com

Sara Z. Moghadam      sara.moghadam@dlapiper.com

Frank Gregory Bowman      fbowman@wc.com

David I. Ackerman      david.ackerman@dentons.com,
nicole.reeber@dentons.com

Mark Bradley Sweet     msweet@wileyrein.com, mcgreene@wileyrein.com, npeterson@wileyrein.com

Kathleen Hall Warin     kathleen.warin@wilsonelser.com

Kevin Patrick Farrell     kevin.farrell@wilsonelser.com

Geoffrey M. Sigler     gsigler@gibsondunn.com

Thomas M Johnson     tjohnson@gibsondunn.com

Tara M. Lee     tara.lee@dlapiper.com, april.harris@dlapiper.com, michelle.rasmussen@dlapiper.com, shirley.lambert@dlapiper.com

David Randall J. Riskin     driskin@wc.com

Alejandro Luis Sarria     asarria@mckennalong.com

Daniel Patrick Rathbun     DRathbun@gibsondunn.com

Christopher E. Appel     cappel@shb.com, bshelton@shb.com, ceblen@shb.com, kross@shb.com

Brannon C. Dillard     bdillard@winstead.com, rmorgan@winstead.com, sbrown@winstead.com, tdoucette@winstead.com

Andrew L. Fono     afono@winstead.com

Holly P. Smith     hpsmith@shb.com

Michelle J. Dickinson     michelle.dickinson@dlapiper.com

Charles C Platt     charles.platt@wilmerhale.com

Sandra D Hauser     sandra.hauser@dentons.com, docketny@dentons.com


I further certify that on the same date, two copies of the foregoing Brief were served by U.S. Mail, postage prepaid, to each of the following counsel of record who are not registered ECF users:

Avi Schick
SNR DENTON US LLP

61

1221 Avenue of the Americas
New York, NY 10020

Benito Delfin
SNR DENTON US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017

Jennifer A. Harper
JACKSON LEWIS LLP
10701 Parkridge Boulevard
Suite 300
Reston, VA 20191

Richard J. Doren
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071

/s/ Joshua T. Gillelan II
Joshua T. Gillelan II